

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

COMMAND MANAGEMENT )
SERVICES, INC. )
    An Oregon Corporation )
)
        Plaintiff, )
)
        v. )
)
WYNDHAM HOTELS AND RESORTS, )
LLC, a Delaware Limited Liability )
Company, WYNDHAM HOTEL )
MANAGEMENT INC., a Delaware )
Corporation, WYNDHAM )
WORLDWIDE OPERATIONS, INC., a )
Delaware Corporation, MEHP O'HARE, )
LLC, a Delaware Limited Liability )
Company, MEHP O'HARE )
MANAGEMENT, INC., a Delaware )
Corporation and WYNDHAM )
O'HARE )
)
)
        Defendants. )

07cv7017
Judge HIBBLER
Mag. Judge MASON

**FILED**

J.N    DEC 13 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DEC 13 2007

## COMPLAINT

NOW COMES the Plaintiff, Command Management Services, Inc. ("Command"), by its

attorneys, Stahl Cowen Crowley LLC, and for its Complaint against Defendants, Wyndham

Hotels and Resorts, LLC, a Delaware Limited Liability Company, Wyndham Hotel

Management, Inc., a Delaware Corporation, Wyndham Worldwide Operations, Inc., a Delaware

Corporation, MEHP O'Hare, LLC, a Delaware Limited Liability Company, MEHP O'Hare

Management, Inc., a Delaware Corporation, and Wyndham O'Hare (collectively referred to

herein as "Wyndham"), states as follows:

1. This is a breach of contract action arising out of Wyndham's failure to refund payment inadvertently and erroneously paid by Command and intentionally retained by Wyndham for products and services never received by Command.

## THE PARTIES

2. Plaintiff, Command, is an Oregon corporation, with its principal place of business at 411 SW 2nd Avenue, Suite 200, Portland, Oregon, 97204. Command is in the business of providing essential services in the travel and logistical support arena.

3. Defendant, Wyndham Hotels and Resorts, LLC, is a Delaware Limited Liability Company registered to do business in Illinois. Wyndham is in the business of providing hotel and conference facilities and services.

4. Defendant, Wyndham Hotel Management, Inc., is a Delaware Corporation registered to do business in Illinois. Wyndham is in the business of providing hotel and conference facilities and services.

5. Defendant, Wyndham Worldwide Operations, Inc., is a Delaware Corporation registered to do business in Illinois. Wyndham is in the business of providing hotel and conference facilities and services.

6. Defendant, MEHP O'Hare, LLC, is a Delaware Limited Liability Company registered to do business in Illinois. MEHP O'Hare, LLC, doing business as Wyndham, is in the business of providing hotel and conference facilities and services.

7. Defendant, MEHP O'Hare Management, Inc., is a Delaware Corporation registered to do business in Illinois. MEHP O'Hare Management, Inc., doing business as Wyndham, is in the business of providing hotel and conference facilities and services.

2

8.     Defendant, Wyndham O'Hare is in the business of providing hotel and conference facilities and services in Illinois, located at 6810 N. Mannheim Road, Rosemont, Illinois 60018.

## JURISDICTION AND VENUE

9.     This matter is properly before this Court pursuant to 28 U.S.C. Section 1332(a), as there is diversity of citizenship between the parties and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

10.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a).

11.     The activities giving rise to Command's claims were conducted by Wyndham in the State of Illinois. Accordingly, jurisdiction is proper pursuant to 28 U.S.C. Section 1331 and 15 U.S.C. Section 78.

12.     The acts and omissions complained of in this Complaint occurred, and Wyndham is located within, this judicial district. Accordingly, venue is appropriate pursuant to 28 U.S.C. Section 1391(b) and 15 U.S.C. Section 78.

## FACTS COMMON TO ALL COUNTS

13.     On January 21, 2003, Command entered into a written contract (hereinafter the "Contract") with the Radisson Hotel O'Hare ("Radisson"), wherein Radisson, as the subcontractor, agreed to provide hotel and conference facilities and services. (A copy of the Contract is attached as Exhibit A and incorporated herein). Section 14 of the Contract contains a unilateral termination provision that states, "either party may terminate this agreement at the end of each contract year by furnishing 60 days written notice to the other party".

14.     On January 12, 2004, Command and Radisson entered into a written addendum to the Contract. (A copy of the addendum is attached as Exhibit B and incorporated herein). Paragraph two (2) of the addendum states:

> Effective 01 February, 2004, the Contractor [Command] will not be charged for unoccupied rooms or portions of rooms. Contractor will pay the unit price …. for each applicant actually lodged in the hotel.

15.     On or about January 17, 2005, Command received a letter from Radisson stating that as of November 1, 2004, the former Radisson would now be known as Wyndham O'Hare. (See Exhibit C, Wyndham January 17, 2005 letter).

16.     In July of 2006, representatives of Command visited Wyndham's O'Hare facilities located at 6810 North Mannheim Road, Rosemont, IL. The purpose of this visit was to inspect Wyndham's performance in providing hotel and conference facilities in accordance with the terms of the Contract. Command representatives discovered that Wyndham was not providing or maintaining adequate facilities per the terms of the Contract. In particular, Command discovered that Wyndham failed to provide an acceptable level of: housekeeping and maintenance in the sleeping rooms, service in the restaurant, and adequate space in the lounge/conference area.

17.     Accordingly, Command sent Wyndham a letter on July 28, 2006, reporting the deficiencies discovered and requesting that Wyndham fully perform according to the terms of the Contract. (See Exhibit D, Command letter July 28, 2006). Subsequent to this letter, Command continued to renew its requests that Wyndham remedy the deficiencies and fully perform its contractual obligations. Wyndham failed to address and remedy the deficiencies, and therefore, failed to fully perform its obligations under the contract.

18.    On or about November 8, 2006, in response to Command's repeated requests that

Wyndham remedy deficiencies and fully perform its contractual obligations, Wyndham sent a

letter to Command stating, in relevant part:

> ...please accept this letter as Wyndham O'Hare's 60 day written notice
> of termination of the MEPS contract. **Under Section 14 of the
> Subcontract, either party can terminate the relationship** and we feel
> that it is in our best interest to do so at this time.
>
> Due to the fact that the arbitrary 30 day period we were given to correct
> any problems you encountered has passed and that you have not made
> any room night commitments for 2007, we will have to secure alternative
> base business elsewhere. This being the case, **I wanted to inform you
> of our decision to terminate this contractual relationship** ...    (See
> Exhibit E, Wyndham November 8, 2006 letter).

19.    On December 21, 2006, Command sent a letter to Wyndham acknowledging

receipt of its November 8, 2006 notice of termination. In the letter, Command further stated, in

relevant part:

> ...CMS [Command] will discontinue services under the Subcontract
> Agreement and permanently relocate to an alternate hotel facility
> effective 01 January 2007. **Services under the Subcontract
> Agreement will terminate upon completion of the breakfast meal
> service on Friday, 29 December 2006**. (See Exhibit F, Command letter
> December 2006).

Accordingly, as of December 31, 2006, Command started booking hotel and conference services

with another Radisson ("new Radisson") at a different location.

20.    On or about February 21, 2007, Command received a bill from the new Radisson

for hotel and conference services for the month of January, 2007, in the amount of $77,307.50.

Command intended to pay this amount to the new Radisson. Nevertheless, due to a system error,

Command had Wyndham and not the new Radisson listed as payee, and on March 12, 2007 a

check was issued inadvertently and erroneously to Wyndham in the amount of $77,307.50. (See

Exhibit G, Invoices and cancelled check).

21.     Command subsequently discovered this mistake and made another payment in the amount of $77,307.50 to the new Radisson, to remedy the error.

22.     Surprisingly, shortly thereafter, Wyndham issued an invoice for **unused** hotel and conference services for the month of January, 2007 in the amount of $77,287.14. Remarkably, this invoice was for an amount very close to the monies it erroneously received from Command. (See Exhibit G). Command did not reserve or use any rooms or conference services in the month of January, 2007 with Wyndham.

23.     On or about March 30, 2007, Sam Rosenbaum ("Rosenbaum") of Command telephoned Wyndham and spoke with Amy in the Accounting Department regarding the erroneous payment. Rosenbaum told Amy that Command was billed for unused services for the month of January, 2007, and that the charge was not in accordance with the terms of the Contract. Accordingly, Rosenbaum asked that Command's monies be returned. In response, Amy transferred Rosenbaum to the Controller, Debbie, with whom he left a message regarding the same. In response to his inquiry, on the same day, Rosenbaum received a telephone call back from Amy in the Accounting Department. Amy confirmed receipt of the monies and informed Rosenbaum that Wyndham decided to keep Command's monies. Wyndham stated that because it was under contract with Command until the end of January, 2007, it was entitled to the monies.

24.     Subsequently, on May 15, 2007, in response to Command's ongoing inquiries and renewed demands for a refund, counsel for Wyndham, Ian Linnabary of the law firm Reno & Zahm, LLP, wrote a letter to Command's counsel.  In the letter, Wyndham does not acknowledge the January 12, 2004 addendum that clearly states that Command will not be charged for unoccupied rooms, or Command's termination letter of December 21, 2006. Instead, Wyndham states that "[O]ver the course of the parties relationship, Wyndham had come to

6

expect that CMS [Command] would reserve and pay for an average of approximately 800 rooms per month". (See Exhibit H, Wyndham May 2007 letter, para.7). Accordingly, Wyndham refused to refund Command the $77,307.50 per its demands.

## COUNT I
## BREACH OF CONTRACT

25.     Command reincorporates and realleges Paragraphs 1-24 as if fully set forth herein.

26.     Command and Wyndham formed a Contract, the terms of which specified that for a monthly fee, Wyndham would provide hotel and conference facilities and services.

27.     As part of that Contract, Command and Wyndham subsequently executed an addendum that states Command would not be charged for unoccupied rooms, and would only be responsible to pay for rooms that Command's applicants actually lodged in.

28.     Section 14 of the Contract clearly states that either party may terminate this agreement. No where does the Contract provide that once the agreement is terminated by either party that the agreement continues for a specified duration of time.

29.     Command fully performed under the Contract by paying Wyndham for rooms actually lodged in, up until the end of December, 2006.

30.     Command did not reserve or use any of Wyndham's facilities in January, 2007 or at any time thereafter.

31.     Wyndham breached its contractual obligations to Command by ignoring Command's termination of services, intentionally issuing an invoice for unused services in January, 2007, and by collecting and refusing to refund monies erroneously paid and not owed to Wyndham per the terms of the Contract.

32. As a result of Wyndham's breach of contract, Command has been damaged.

33. Command has further been damaged by the fact that Wyndham has retained and refused to refund these monies, hindering Command's ability to secure facilities elsewhere.

WHEREFORE, Plaintiff, Command Management Services Inc., respectfully requests that judgment be entered in its favor and against Defendants in the amount of $77,307.50, plus interests, costs, and all other relief that this Court deems just and equitable.

## COUNT II
## CONVERSION

34. Command reincorporates and realleges Paragraphs 1-24 as if fully set forth herein.

35. Wyndham holds Command's monies erroneously paid for the month of January, 2007, in the amount of $77,307.50.

36. Even though Wyndham has knowledge that the monies do not belong to it, Wyndham has nevertheless converted said funds for its own use.

37. Demand has been made upon Wyndham for the return of these monies.

38. Wyndham has refused to turn over Command's monies, with the intent to permanently keep Command's monies.

WHEREFORE, Plaintiff, Command Management Services, Inc., respectfully requests that judgment be entered in its favor and against the Defendants in the amount of $77,307.50, plus interests, costs, fees, and all other relief that this Court deems just and equitable.

Respectfully submitted,

COMMAND MANAGEMENT SERVICES, INC.

By: _____

One of Its Attorneys

Ronald A. Damashek (ARDC # 6183820)
Andrew H. Eres (ARDC #6237032)
Angelique Palmer (ARDC #6282041)
Stahl Cowen Crowley LLC
55 W. Monroe Street, Suite 1200
Chicago, Illinois 60603
Telephone:  (312) 641-0060
Facsimile:  (312) 641-6959