IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COMMAND MANAGEMENT | ) | |
| SERVICES, INC. | ) | |
|     An Oregon Corporation | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. 07 cv 7017 |
| | ) | |
| MEHP O'HARE OPERATING, LLC, | ) | |
| d/b/a WYNDHAM O'HARE | ) | |
| | ) | |
|     Defendant. | ) | |

## FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff, Command Management Services, Inc. ("Command"), by its attorneys, Stahl Cowen Crowley Addis LLC, and for its First Amended Complaint against Defendant, MEHP O'Hare Operating, LLC, d/b/a Wyndham O'Hare ("Wyndham"), states as follows:

1.    This is a breach of contract action arising out of Wyndham's failure to refund payment inadvertently and erroneously paid by Command and intentionally retained by Wyndham for products and services never received by Command.

## THE PARTIES

2.    Plaintiff, Command, is an Oregon corporation, with its principal place of business at 411 SW 2nd Avenue, Suite 200, Portland, Oregon, 97204. Command is in the business of providing essential services in the travel and logistical support arena.

3.    Defendant, MEHP O'Hare Operating, LLC, is a Delaware limited liability company registered to do business in Illinois. MEHP O'Hare Operating, LLC, doing business as

Wyndham, is in the business of providing hotel and conference facilities and services in Illinois, located at 6810 N. Mannheim Road, Rosemont, Illinois 60018.

## JURISDICTION AND VENUE

4.     This matter is properly before this Court pursuant to 28 U.S.C. Section 1332(a), as there is diversity of citizenship between the parties and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

5.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a).

6.     The activities giving rise to Command's claims were conducted by Wyndham in the State of Illinois.  Accordingly, jurisdiction is proper pursuant to 28 U.S.C. Section 1331 and 15 U.S.C. Section 78.

7.     The acts and omissions complained of in this Complaint occurred, and Wyndham is located within, this judicial district.  Accordingly, venue is appropriate pursuant to 28 U.S.C. Section 1391(b) and 15 U.S.C. Section 78.

## FACTS COMMON TO ALL COUNTS

8.     On January 21, 2003, Command entered into a written contract (hereinafter the "Contract") with the Radisson Hotel O'Hare ("Radisson"), wherein Radisson, as the subcontractor, agreed to provide hotel and conference facilities and services.  (A copy of the Contract is attached as Exhibit A and incorporated herein).  Section 14 of the Contract contains a unilateral termination provision that states, "either party may terminate this agreement at the end of each contract year by furnishing 60 days written notice to the other party".

9.     On January 12, 2004, Command and Radisson entered into a written addendum to the Contract.  (A copy of the addendum is attached as Exhibit B and incorporated herein).  Paragraph two (2) of the addendum states:

> Effective 01 February, 2004, the Contractor [Command] will not be charged for unoccupied rooms or portions of rooms. Contractor will pay the unit price …. for each applicant actually lodged in the hotel.

10.    On or about January 17, 2005, Command received a letter from Radisson stating that as of November 1, 2004, the former Radisson would now be known as Wyndham O'Hare. (See Exhibit C, Wyndham January 17, 2005 letter).

11.    In July of 2006, representatives of Command visited Wyndham O'Hare's facilities located at 6810 North Mannheim Road, Rosemont, IL. The purpose of this visit was to inspect Wyndham's performance in providing hotel and conference facilities in accordance with the terms of the Contract. Command representatives discovered that Wyndham was not providing or maintaining adequate facilities per the terms of the Contract. In particular, Command discovered that Wyndham failed to provide an acceptable level of: housekeeping and maintenance in the sleeping rooms, service in the restaurant, and adequate space in the lounge/conference area.

12.    Accordingly, Command sent Wyndham a letter on July 28, 2006, reporting the deficiencies discovered and requesting that Wyndham fully perform according to the terms of the Contract. (See Exhibit D, Command letter July 28, 2006). Subsequent to this letter, Command continued to renew its requests that Wyndham remedy the deficiencies and fully perform its contractual obligations. Wyndham failed to address and remedy the deficiencies, and therefore, failed to fully perform its obligations under the contract.

13.    On or about November 8, 2006, in response to Command's repeated requests that Wyndham remedy deficiencies and fully perform its contractual obligations, Wyndham sent a letter to Command stating, in relevant part:

> …please accept this letter as Wyndham O'Hare's 60 day written notice of termination of the MEPS contract. **Under Section 14 of the**

3

**Subcontract, either party can terminate the relationship** and we feel that it is in our best interest to do so at this time.

Due to the fact that the arbitrary 30 day period we were given to correct any problems you encountered has passed and that you have not made any room night commitments for 2007, we will have to secure alternative base business elsewhere. This being the case, **I wanted to inform you of our decision to terminate this contractual relationship** ... (See Exhibit E, Wyndham November 8, 2006 letter).

14.    On December 21, 2006, Command sent a letter to Wyndham acknowledging receipt of its November 8, 2006 notice of termination. In the letter, Command further stated, in relevant part:

...CMS [Command] will discontinue services under the Subcontract Agreement and permanently relocate to an alternate hotel facility effective 01 January 2007. **Services under the Subcontract Agreement will terminate upon completion of the breakfast meal service on Friday, 29 December 2006.** (See Exhibit F, Command letter December 2006).

Accordingly, as of December 31, 2006, Command started booking hotel and conference services with another Radisson ("new Radisson") at a different location.

15.    On or about February 21, 2007, Command received a bill from the new Radisson for hotel and conference services for the month of January, 2007, in the amount of $77,307.50. Command intended to pay this amount to the new Radisson. Nevertheless, due to a system error, Command had Wyndham and not the new Radisson listed as payee, and on March 12, 2007 a check was issued inadvertently and erroneously to Wyndham in the amount of $77,307.50. (See Exhibit G, Invoices and cancelled check).

16.    Command subsequently discovered this mistake and made another payment in the amount of $77,307.50 to the new Radisson, to remedy the error.

17.    Surprisingly, shortly thereafter, Wyndham issued an invoice for **unused** hotel and conference services for the month of January, 2007 in the amount of $77,287.14. Remarkably,

4

this invoice was for an amount very close to the monies it erroneously received from Command. (See Exhibit G). Command did not reserve or use any rooms or conference services in the month of January, 2007 with Wyndham.

18.    On or about March 30, 2007, Sam Rosenbaum ("Rosenbaum") of Command telephoned Wyndham and spoke with Amy in the Accounting Department regarding the erroneous payment. Rosenbaum told Amy that Command was billed for unused services for the month of January, 2007, and that the charge was not in accordance with the terms of the Contract. Accordingly, Rosenbaum asked that Command's monies be returned. In response, Amy transferred Rosenbaum to the Controller, Debbie, with whom he left a message regarding the same. In response to his inquiry, on the same day, Rosenbaum received a telephone call back from Amy in the Accounting Department. Amy confirmed receipt of the monies and informed Rosenbaum that Wyndham decided to keep Command's monies. Wyndham stated that because it was under contract with Command until the end of January, 2007, it was entitled to the monies.

19.    Subsequently, on May 15, 2007, in response to Command's ongoing inquiries and renewed demands for a refund, counsel for Wyndham, Ian Linnabary of the law firm Reno & Zahm, LLP, wrote a letter to Command's counsel. In the letter, Wyndham does not acknowledge the January 12, 2004 addendum that clearly states that Command will not be charged for unoccupied rooms, or Command's termination letter of December 21, 2006. Instead, Wyndham states that "[O]ver the course of the parties relationship, Wyndham had come to expect that CMS [Command] would reserve and pay for an average of approximately 800 rooms per month". (See Exhibit H, Wyndham May 2007 letter, para.7). Accordingly, Wyndham refused to refund Command the $77,307.50 per its demands.

## COUNT I
## BREACH OF CONTRACT

20.     Command reincorporates and realleges Paragraphs 1-19 as if fully set forth herein.

21.     Command and Wyndham formed a Contract, the terms of which specified that for a monthly fee, Wyndham would provide hotel and conference facilities and services.

22.     As part of that Contract, Command and Wyndham subsequently executed an addendum that states Command would not be charged for unoccupied rooms, and would only be responsible to pay for rooms that Command's applicants actually lodged in.

23.     Section 14 of the Contract clearly states that either party may terminate this agreement. No where does the Contract provide that once the agreement is terminated by either party that the agreement continues for a specified duration of time.

24.     Command fully performed under the Contract by paying Wyndham for rooms actually lodged in, up until the end of December, 2006.

25.     Command did not reserve or use any of Wyndham's facilities in January, 2007 or at any time thereafter.

26.     Wyndham breached its contractual obligations to Command by ignoring Command's termination of services, intentionally issuing an invoice for unused services in January, 2007, and by collecting and refusing to refund monies erroneously paid and not owed to Wyndham per the terms of the Contract.

27.     As a result of Wyndham's breach of contract, Command has been damaged.

28.     Command has further been damaged by the fact that Wyndham has retained and refused to refund these monies, hindering Command's ability to secure facilities elsewhere.

6

WHEREFORE, Plaintiff, Command Management Services Inc., respectfully requests that judgment be entered in its favor and against the Defendant in the amount of $77,307.50, plus interests, costs, and all other relief that this Court deems just and equitable.

### COUNT II
### CONVERSION

29.    Command reincorporates and realleges Paragraphs 1-19 as if fully set forth herein.

30.    Wyndham holds Command's monies erroneously paid for the month of January, 2007, in the amount of $77,307.50.

31.    Even though Wyndham has knowledge that the monies do not belong to it, Wyndham has nevertheless converted said funds for its own use.

32.    Demand has been made upon Wyndham for the return of these monies.

33.    Wyndham has refused to turn over Command's monies, with the intent to permanently keep Command's monies.

WHEREFORE, Plaintiff, Command Management Services, Inc., respectfully requests that judgment be entered in its favor and against the Defendant in the amount of $77,307.50, plus interests, costs, fees, and all other relief that this Court deems just and equitable.

Respectfully submitted,

COMMAND MANAGEMENT SERVICES, INC.

By: /s/ Angelique Palmer
    One of Its Attorneys

7

Ronald A. Damashek (ARDC # 6183820)
Andrew H. Eres (ARDC #6237032)
Angelique Palmer (ARDC #6282041)
Stahl Cowen Crowley Addis LLC
55 W. Monroe Street, Suite 1200
Chicago, Illinois 60603
Telephone:  (312) 641-0060
Facsimile:  (312) 641-6959

8

01/21/2003 14:15 FAX 847 297 87⁓        RADISSON O'HARE ROSEMONT        ⬚002
01/21/2003  14:41   5032251⁓           CMS MARKETING                   PAGE  02/06

*Chicago*

02 Chicago – Radisson Hotel O'Hare .sub        (Revision 01; 21 January 2003)

## SUBCONTRACT FOR SERVICES AGREEMENT

This Subcontract for Services Agreement is made between **COMMAND MANAGEMENT SERVICES, INC., Portland, OR** (hereafter Contractor) and the **RADISSON HOTEL O'HARE, Rosemont, IL** (hereafter Subcontractor).  Throughout this document the term "subcontract", "agreement" and "subcontract agreement" are used and are to be considered as referring to this document.

This is an Agreement for the performance of services for applicants processing at the Chicago, Illinois Military Entrance Processing Station (MEPS).  Contractor and Subcontractor are bound by the terms and conditions of this Agreement.  This Agreement is entirely contingent upon the authorized U.S. Government representatives inspecting and accepting the Subcontractor performance facilities[1] as being suitable for the performance of services.   Both parties agree herewith to be bound by this Agreement.

The Contractor and Subcontractor agree as set forth below:

1.    Statement of Work (SOW):

    a.  The Contractor shall do the following:

        (1)    provide all necessary supervision, labor, materials, supplies, and facilities to perform the work as itemized in the Prime Contract statement of work, except as specifically subcontracted in this agreement; and,

        (2)    Pay for the performance of contract work performed by the Subcontractor on the basis of unit price <u>(unit price is inclusive of all applicable taxes and gratuities)</u>, as set forth in Appendix A.

    b.  The Subcontractor shall have the following performance responsibilities:

        (1)    Provide all the supervision, labor, equipment, materials and supplies to perform all duties and responsibilities of the subcontract in accordance with the terms and conditions of the subcontract and the Statement of Work (SOW) set out in Appendix B.  In addition Subcontractor understands the inclusion of the Department of Labor wage determination and its applicability to this Agreement.

---

[1]"Performance facilities" describes any and all facility(ies) provided by the subcontractor for the purposes of lodging, feeding and/or transporting applicants as defined within the SOW incorporated herein.

PAGE 1 – SUBCONTRACT FOR SVCS



EXHIBIT

A

02 Chicago - Radisson Hotel O'Hare .sca            (Revision 01; 21 January 2003)

(2)    Perform the specific subcontracted work as detailed herein and for the prices specified in Appendix A.  Unit prices shall be inclusive of all applicable taxes and gratuities.

2.    Payment for Services:

The Contractor shall pay Subcontractor for work performed on a monthly schedule. Payments due the Subcontractor will be payable by Contractor not more than ten (10) days after Contractor has received payment from the Government under the Prime Contract for the particular services period.  Payment will be made as follows:  Subcontractor shall present an invoice at the end of a month of operation.  The invoiced quantities of rooms and meals shall be in agreement with a daily master folio issued from the hotel front desk to the Contractor's on-site representative.  Contractor's on-site representative will reconcile the daily lodging totals with Subcontractor to come to an agreement within a short time after the end of the month, usually during the first 5 days.  The Contractor shall pay the Subcontractor within 30-45 days after completion of a month's work.

3.    Authorized Representatives:   The authorized representatives of the parties to this Subcontract are as follows:

a.  Contractor:  The following individuals shall be designated as the representative, and alternate for the Contractor.

Monica C. Anderson, President/CEO
T. A. Moore, Executive Vice President (alternate)
Command Management Services, Inc.
621 S.W. Alder St.  Ste. 810
Portland, OR 97205
tele: (503) 224 - 5600
fax: (503) 224 - 6848

b.  Subcontractor:  The following individuals shall be designated as the representative for the Subcontractor.

Heidi Prosser, Director of Sales & Marketing
Radisson Hotel O'Hare
6810 North Mannheim Road
Rosemont, IL 60018
tele:    (847) 297 - 1234
tele:    (847) 297 - 8144 Direct
fax:    (847) 297 - 8744

4.    If the Government fails to allow location of Contract performance facilities to the facilities proposed by Subcontractor, this Agreement shall lapse, and neither party shall have any further

PAGE 2 - SUBCONTRACT FOR SVCS

02 Chicago - Radisson Hotel O'Hare .aca            (Revision 01; 21 January 2003)

obligation or duty to the other. Each party shall stand its own costs or expenses incurred in the proposal process.

5.    Subcontractor agrees to provide up to two (2) room-nights per month for Contractor use in coordinating, training and retaining subcontractor personnel and general oversight of the contract activities. Such room will be provided on a complimentary basis. All other associated room costs such as telephone, food and drink, valet service and all other miscellaneous charges will be borne by the Contractor and Contractor personnel.

6.    Subcontractor shall provide a dedicated room for Contractor use to set up as an applicant lounge. Such provided room shall be of a size to comfortably hold 50 - 60 persons in various configurations. Space must be lockable and cleaned daily. Contractor shall provide large-screen television and accessories, games, etc.; subcontractor shall provide tables, chairs and lounge furniture.

7.    Subcontractor is obligated to provide full and complete performance in accordance with the specifications of this Agreement, to include all provisions for lodging which consistently meet the requirements of the U.S. Government.

8.    Contractor agrees to furnish comprehensive written procedures, in the form of a Standing Operating Procedures (SOP) covering all operational aspects expected under this Agreement. Contractor shall train subcontractor staff in the implementation of the SOP.

9.    In the event that the facility(ies) are subject to sale, transfer, assignment, lease or otherwise subject to a change in ownership or management, the Subcontractor agrees that it will exert its best efforts to include the continuation of this Agreement as part of the transaction.

10.    Subcontractor agrees that it shall not attempt to collect the cost of lodging or meals as described herein directly from the applicants. All invoices will be presented directly to the Contractor for payment.

11.    Subcontractor agrees to provide current proof of insurance to the contractor. Such proof shall name the Contractor and its clients as additionally insured within the insurance umbrella.

12.    Contractor will order rooms daily, based upon requirements received from the Government, and will cancel rooms as necessary until 8:00 p.m. daily. Subcontractor agrees to reserve a minimum of 50 double rooms until 8:00 pm daily (Sunday through Thursday, plus one Friday per month) unless the rooms are canceled earlier by the Contractor.

PAGE 3 - SUBCONTRACT FOR SVCS

01/23/2003 14:16 FAX 847 297 8744          RADISSON O'HARE ROSEMONT                    ☐005
   01/21/2003  14:41    5032261              CMS MARKETING                        PAGE  05/06

02 Chicago - Radisson Hotel O'Hare .tce          (Revision 01; 21 January 2003)

13.    Subcontractor agrees to replace the safety signage in the swimming pool
       area; and to monitor the video surveillance camera located in the
       swimming pool area.

14.    Either party may terminate this agreement at the end of each contract year by
       furnishing 60 days written notice to the other party.

AGREED TO this _____ day of January, 2003.

SUBCONTRACTOR                        CONTRACTOR
Radisson Hotel O'Hare                Command Management Services, Inc.

BY: _____          BY: _____
Heidi Prosser                            Monica Anderson
Director of Sales & Marketing            President

Appendices:

     APPENDIX A — PRICE AND PAYMENT SCHEDULE

     APPENDIX B — STATEMENT OF WORK (SOW)

     APPENDIX C — US Dept of Labor  WAGE DETERMINATION

PAGE 4 - SUBCONTRACT FOR SVCS

01/23/2004 17:44 FAX 847 297 8744          RADISSON O HARE ROSEMONT

FROM :CMS                          FAX NO. :5034452564              23 2004 10:59AM  P2
CHICAGO MEPS - RADISSON HOTEL CHICAGO                              REVISION PRICING: 01/23/2004

# APPENDIX A
## PRICE AND PAYMENT SCHEDULE

| ITEM | ESTIMATED QUANTITY (1) | UNIT OF MEASURE | UNIT PRICE (2) | ESTIMATED AMOUNT |
|---|---|---|---|---|
| Base Period: (for the period: 1 Jan 2004 through 31 Aug 2004)(3) | | | | |
| 0001A  Single Lodging Requirements, Per Appendix B. | 1,000 | Person | N/A | COMPLETED |
| 0001B  Double Lodging Requirements, Per Appendix B. | 22,000 | Person | N/A | COMPLETED |
| 0001C  Meals Requirements, Per Appendix B. | 23,000 | Person | N/A | COMPLETED |
| 0001D  Applicant Lounge Requirements, Per Appendix B. | 261 | Days | N/A | COMPLETED |
| Contractor's First Option Period: (for the period: 1 Feb 2004 through 31 Jan 2005) | | | | |
| 0002A  Single Lodging Requirements, Per Appendix B. | 1,000 | Person | $23.78 | $23,780.00 |
| 0002B  Double Lodging Requirements, Per Appendix B. | 23,000 | Person | $23.78 | $523,160.00 |
| 0002C  Meals Requirements, Per Appendix B. | 23,000 | Person | $17.39 | $399,970.00 |
| 0002D  Applicant Lounge Requirements, Per Appendix B. | 261 | Days | INCLUDED | INCLUDED |
| Contractor's Second Option Period: (for the period: 1 Feb 2005 through 31 Jan 2006) | | | | |
| 0003A  Single Lodging Requirements, Per Appendix B. | 1,000 | Person | $24.49 | $24,490.00 |
| 0003B  Double Lodging Requirements, Per Appendix B. | 22,000 | Person | $24.49 | $538,780.00 |
| 0003C  Meals Requirements, Per Appendix B. | 23,000 | Person | $17.91 | $411,930.00 |
| 0003D  Applicant Lounge Requirements, Per Appendix B. | 261 | Days | INCLUDED | INCLUDED |
| Contractor's Third Option Period: (for the period: 1 Feb 2006 through 31 Jan 2007) | | | | |
| 0004A  Single Lodging Requirements, Per Appendix B. | 1,000 | Person | $25.22 | $25,220.00 |
| 0004B  Double Lodging Requirements, Per Appendix B. | 22,000 | Person | $25.22 | $554,840.00 |
| 0004C  Meals Requirements, Per Appendix B. | 23,000 | Person | $18.45 | $424,350.00 |
| 0004D  Applicant Lounge Requirements, Per Appendix B. | 261 | Days | INCLUDED | INCLUDED |
| Contractor's Forth Option Period: (for the period: 1 Feb 2007 through 31 Jan 2008) | | | | |
| 0005A  Single Lodging Requirements, Per Appendix B. | 1,000 | Person | $25.98 | $25,980.00 |
| 0005B  Double Lodging Requirements, Per Appendix B. | 22,000 | Person | $25.98 | $571,560.00 |
| 0005C  Meals Requirements, Per Appendix B. | 23,000 | Person | $19.00 | $437,000.00 |
| 0005D  Applicant Lounge Requirements, Per Appendix B. | 261 | Days | INCLUDED | INCLUDED |
| | | | TOTAL: | $3,961,060.00 |

(1) Service required Sunday through Thursday each week, plus an estimated 1 Friday per month.

(2) Rates are inclusive of all applicable tax and gratuities.

(3) Basis of payment will be month-end reconciliation of daily roster follow.

Note 1: Payment will be made for rooms not automatically cancelled by CMS by 8:00pm, plus meals for applicants actually lodged.

Note 2: This agreement may be terminated at the end of each contract year written notice by either party.

Arthur Cooper, Director of Sales          1/28/2004       Monica Anderson, President          1/23/2004
RADISSON HOTEL O'HARE                                     COMMAND MANAGEMENT SERVICES, INC

01/28/2004 17:46 FAX 847 297 8744     RADISSON O HARE ROSEMONT

FROM :CMS                         FAX NO. :5034452564          JY    23 2004 10:40AM  P3

12 January 2004

2004 Chicago Radisson O'Hare
Addendum to Subcontract Agreement

## ADDENDUM TO SUBCONTRACT FOR SERVICES AGREEMENT

This addendum to the previously executed Subcontract for Services Agreement is made between COMMAND MANAGEMENT SERVICES, INC., Portland, OR (hereafter Contractor) and the RADISSON HOTEL O'HARE, Rosemont, IL (hereafter Subcontractor).

Effective 01 February, 2004, the Contractor will not be charged for unoccupied rooms or portions of rooms. Contractor will pay the unit price in Appendix A of the subcontract agreement (including lodging, supper, breakfast, and transportation as applicable) for each applicant actually lodged in the hotel. Un-issued room keys will be returned to the hotel front desk at the end of the applicant check-in period each night.

Authorized Representatives:

    a.  Contractor:  The following individuals shall be designated as the representative, and alternate for the Contractor.

        Monica C. Anderson, President/CEO
        T. A. Moore, Vice President (alternate)
        Command Management Services, Inc.
        411 S.W. 2nd Avenue, Suite. 200
        Portland, OR 97204
        tel.: (503) 224-5600
        fax: (503) 224-5846

    b.  Subcontractor:  The following individuals shall be designated as the representative, and alternate for the Subcontractor.

        Arthur Cooper, General Manager
        Radisson Hotel O'Hare
        8810 North Mannheim Road
        Rosemont, IL 60018
        tel:   (847) 297 – 1234
        fax:   (847) 297 - 5287

AGREED TO this 12th Day of January, 2004.

SUBCONTRACTOR                              CONTRACTOR
Radisson Hotel O'Hare                      Command Management Services, Inc.


BY: _____        BY: _____
    Arthur Cooper                          Monica Anderson
    General Manager                        President

EXHIBIT
B

01/17/2005 14:08 FAX 847 297 8744    WYNDHAM O'HARE

Beata Chmielewska
Sales & Internet Administrator
Wyndham O'Hare
6810 N Mannheim Rd
Rosemont Il, 60018
Phone 847-297-1234
Direct 847-759-6145
Fax 847-297-8744

Dear Jean Houston

I'm Happy to announce that former Radisson O'Hare is now Wyndham O'Hare. The conversion was completed on Nov 01, 2004.

We do apologize for any inconvienience we may cause you.

Sincerely
*Beata Chmielewska*
Beata Chmielewska

01-17-05
Buel for contract file.


EXHIBIT
C

July 28, 2006

Andrea Meyer, General Manager
Wyndham O'Hare
6810 North Mannheim Road
Rosemont, IL 60018

Re:    MEPS Contract

Dear Ms. Meyer:

It was a pleasure to meet you on July 18 during the inspection by the USMEPCOM
Eastern Sector Commander, and we sincerely appreciate the courtesy we received from
you and your staff during our visit to Chicago.

During our stay at the Wyndham, we were told you were unavailable, so we met with
Jeremy Schaffer to discuss several issues regarding the level of services furnished under
our subcontract agreement in support of our MEPS contract. We discussed the
maintenance condition of the sleeping rooms in detail, the inadequate size of the
applicant lounge, and meal service in the restaurant. Hopefully, Jeremy has subsequently
had the opportunity to discuss these issues with you.

Jeremy explained that new windows are on order for the older section of the sleeping
areas and that the room entry doors are scheduled to be replaced in the sleeping rooms
where the male applicants are routinely lodged. Jeremy also shared with us your plans
for replacement of the floor and major equipment in the kitchen.

The concern we expressed to Jeremy, however, was the routine level of general
housekeeping and maintenance we noted in the sleeping rooms in preparation for the
USMEPCOM inspection. As you know, our contract liaison inspects a minimum of five
rooms each day after she receives the keys from the front desk. The first room we
checked had not been cleaned from the previous occupancy. Had we not checked the
room, we would have assigned two applicants to the room and would have undoubtedly
received a formal complaint from our client. The other rooms we checked had peeling
wallpaper, mildew on the grout, loose carpet, carpet that was not vacuumed, cracked
sinks, damaged ceilings, and personal items between the mattress and box springs and
under the beds.



APR. 22. 2007  4:21PM     COMMAND MANAGEMENT SERVICES                    NO. 0113     P. 26

Sent 11-8-06
AMS

November 8, 2006

Monica Anderson
CMS Corporation
411 SW 2nd Avenue
Portland, Oregon 97204

RE: MEPS Contract and Subcontract Issues

Dear Ms. Anderson,

In my letter dated August 31, 2006, I explained how we have addressed the concerns you had after your July inspection. Since that date, I have regretfully not heard from you or your corporation. Therefore, please accept this letter as Wyndham O'Hare's 60 day written notice of termination of the MEPS contract. Under Section 14 of the Subcontract, either party can terminate the relationship and we feel that it is in our best interest to due so at this time,

We cannot continue to hold room nights under the contract beyond January 31st, 2007 while waiting for your response. Due to the fact that the arbivary 30 day period we were given to correct any problems you encountered has passed and that you have not made any room night commitments for 2007, we will have to secure alternative base business elsewhere. This being the case, I wanted to inform you of our decision to terminate this contractual relationship with the current terms in advance of the ending date so that both parties could pursue other avenues if needed. However, should you desire to continue our relationship we would welcome discussion to that end. We would be pleased to negotiate new terms for contract that would come into effect on February 1st, 2007.

Please contact me via email or written response at your earliest to discuss the options I have laid out above. Thank you in advance for your time attention to this matter,

refer to –
8/31/06
letter ?



Sincerely,

Andrea J. Mayer
General Manager

EXHIBIT
E

December 21, 2006

Andrea Mayer, General Manager
            Or;
Current General Manager
Wyndham O'Hare
6810 North Mannheim Road
Rosemont, IL 60018

Re:    Notice of Subcontract Termination and Relocation

Dear Ms. Mayer:

Based upon your November 8, 2006 written notice of termination of our Subcontract
Agreement to furnish lodging and meals for applicants processing through the Chicago
Military Entrance Processing Station (MEPS), CMS will discontinue services under the
Subcontract Agreement and permanently relocate to an alternate hotel facility effective
01 January 2007. Services under the Subcontract Agreement will terminate upon
completion of the breakfast meal service on Friday, 29 December 2006.

Sincerely,


Jeff Downes
Vice President



eb  APR. 22. 2007  4:21PM  ChiCOMMAND MANAGEMENT SERVICES  12472572438   NO. 0113   P. 312

1450 E. Touhy Avenue
Des Plaines, IL. 60018

# *Radisson*

RADISSON HOTEL CHICAGO O'HARE

Invoice No.                131

46.35 / 36.85 / 10. 20

## INVOICE

| Customer | |
|---|---|
| Name | Command Management Services, Inc. |
| Address | 411 SW 2nd Ave, Suite 200 |
| City | Portland    State OR    ZIP 97204 |
| Phone | |

Jan-07

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| 821 | Double occupancy rooms | $90.00 | $73,890.00 |
| 41 | Single occupancy rooms | $55.00 | $2,255.00 |
| 10 | Unreturned/vacant rooms | $70.00 | $700.00 |
| 4 | Overflow meals | $10.00 | $40.00 |
| 1 | Photocopy charges Feb. 10th, 16th, 18th | $52.50 | $52.50 |
| 1 | Damaged duvet cover & duvet insert (per Sharon 2/07/07) | $250.00 | $250.00 |
| 2 | Phone lines charges | $60.00 | $120.00 |

6 ENTERED FEB 2 8 2007

| | |
|---|---|
| Subtotal | $77,307.50 |
| Less Deposit | |
| CHARGED | |
| TOTAL | $77,307.50 |

### Payment Details
- ○ Cash
- ◉ Check
- ○ Credit Card

Name _____
CC # _____
        Expires _____

| Office Use Only |
|---|
| |

*If you have any questions, please contact Accounting*

*Thank you for your business!*



RECEIVED
FEB 2 1 2007
BY: _____



EXHIBIT
G

APR. 22. 2007  4:21PM   COMMAND MANAGEMENT SERVICES          NO. 0113 ⑨  P. 33

'Print Preview'                                                                Page 1 of 1



## Stops - Images - Search®

Close

- Bill Hart Revenue Asst Controller
- Debi - Controller
- Amy - Acct
- Bill
- GM - Jeremy

Image

Image Front:                                                                    27969

COMMAND MANAGEMENT SERVICES, INC.
411 SW 2ND AVENUE, SUITE 200
PORTLAND, OR 97204-3103
(503) 224-5800

WELLS FARGO BANK, N.A.
WWW.WELLSFARGO.COM
24-4/1250

3/12/2007

PAY TO THE
ORDER OF   WYNDHAM O'HARE                                    $ **77,307.50

Seventy-Seven Thousand Three Hundred Seven and 50/100************************   DOLLARS

WYNDHAM O'HARE
6610 N. MANNHEIM RD
ROSEMONT, IL 60018

MEMO:

⑆"027969⑆ ⑆:123006800⑆: 105007678⑆  ⑆"00077307 50⑆

Image Back:

Item Details
Amount: $ 77,307.50
Check Number: 27969
Posting Date: 03/21/2007
As Of Date: 03/21/2007

Account Name: COMMAND MANAGEME
Account Number: 105007678
Routing Number: 123006800
Type Code/Description: 475/CHECK PAID
Item Sequence Number: 005848879081

© Copyright 2007 Wells Fargo. All rights reserved.

3/30/200

APR. 22. 2007  4:21PM    COMMAND MANAGEMENT SERVICES         NO. 0113   P. 34

MEPS
411 S.W. 2nd Avenue
Suite 200
Portland,OR 97204-3403

| | | | Room: | 9005 |
|---|---|---|---|---|
| Arrival: | 01/01/07 | | Cashier: | 19 |
| Departure | 01/31/07 | | Page: | 1 |
| | | | Departure Time: | 6:43 |

INVOICE   NO. 2693622   WYNDHAM HOTEL O'HARE

| Date | Text | Room | Charges | Credits |
|---|---|---|---|---|
| | January-07 | | | |
| 1/1 | 700 Double Rooms @ $87.34 | | 61,138.00 | |
| 1/1 | 120 Odd Double Rooms @ 68.99 | | 8,278.80 | |
| 1/1 | 100 Rooms not used @ 50.44 | | 5,044.00 | |
| 1/1 | 22 Triple Rooms @ 128.47 | | 2,826.34 | |
| 1/1 | 0 Dinners   @ $12.50 | | | |
| 1/1 | 0 Breakfasts @ $5.95 | | | |

| | | | Total | 77,287.14 | |
|---|---|---|---|---|---|
| | | Balance Direct Bill | | 77,287.14 | USD |

Thank you for choosing Wyndham Hotel O'Hare.


For your next stay with us,  please call (847) 297-8464.

RENO & ZAHM LLP
ATTORNEYS AND COUNSELORS AT LAW

IAN K. LINNABARY
IKL@RENOZAHM.COM

May 15, 2007

Via Email: jhamilton@bjllp.com

Jessica T. Hamilton, Esq.
Ball Janick LLP
101 Southwest Main Street, Suite 1100
Portland, OR 97204-3219

Re:    Wyndham O'Hare/Command Management Services, Inc.

Dear Ms. Hamilton:

I am in receipt of your letter dated April 27, 2007, and I understand that you represent Command Management Services, Inc. ("CMS"). Please allow this letter to respond to your client's renewed demand for payment of $77,307.50.

CMS erroneously assumes that my client ("Wyndham") believes it is entitled to retain the subject funds "for services that were never provided. . ." This is simply not the case. Wyndham is entitled to retain the money as partial compensation for the damages it suffered as a result of your client's breach of contract.

The parties' contract specifically provides at paragraph 14 "either party may terminate this agreement at the end of each contract year by furnishing 60 days written notice to the other party." The contract language is quite clear. The agreement could be terminated by either party upon appropriate notice "at the end of each contract year." Nothing in the contract provides for earlier termination.

Absent an express agreement between the parties to terminate the contract prematurely, the contract could only be terminated at the end of its natural term on January 31st. Where the terms of a contract are clear and unambiguous, they will be given effect as written, and Illinois courts will not impose requirements inconsistent with the express, unambiguous contract language.

CMS believes Wyndham intended to modify the contract and terminate the parties' contract in advance of the January 31st expiration date. However, nothing in Wyndham's letter conveys an

2902 McFarland Road, Suite 400, Rockford, IL 61107
(815) 987-4050
Fax (815) 987-4092
RENOZAHM.COM

EXHIBIT
H

Jessica T. Hamilton, Esq.
May 15, 2007
Page 2

intent to terminate the contract on a date other than the one set forth therein, January 31, 2007. CMS misconstrues the plain language of Wyndham's November 8, 2006 letter which provided that Wyndham would no longer provide services "under the contract beyond January 31, 2007." That date was not chosen arbitrarily. Wyndham reviewed the contract and understood that it could only be terminated at the conclusion of its natural term. Therefore, Wyndham sent an appropriate termination notice sixty days in advance of January 31, 2007 as required by paragraph 14 of the parties' contract.

There was no "meeting of the minds" sufficient to modify the plain language of the contract. Wyndham did not intend to terminate the contract before January 31, 2007. Rather, CMS unilaterally terminated the contract on December 29, 2006 without Wyndham's consent. There is no evidence to demonstrate the parties' mutual intent to circumvent the express language of the contract and terminate the contract prematurely, and absent such intent, Wyndham is entitled to the full benefit of its bargain.

Over the course of the parties' relationship, Wyndham had come to expect that CMS would reserve and pay for an average of approximately 800 rooms per month. This reasonable expectation is grounded firmly in the parties' prior course of dealing. From January though December 2005, CMS reserved an average of 785 rooms per month with the lowest room reservations occurring in April at 576 and the greatest occurring in August at 1,126. From January through November 2006, CMS reserved an average of 757 rooms per month with a low of 557 rooms in April and a high of 1,027 rooms in August. The number of room reservations and CMS's subsequent payments to Wyndham established a clear course of dealing between the parties upon which Wyndham relied. When CMS unilaterally terminated the contract prematurely in December 2006, Wyndham was given only eight days notice and was understandably unable to mitigate its damages.

Despite suffering significant financial harm as a result of CMS's contract breach, Wyndham remains amenable to discussing a reasonable resolution of this matter. However, they will not pay CMS the $77,307.50 it demands. If your client is unwilling to move from its position, I invite you to file suit. I will accept service on behalf of my client.

Sincerely,

Ian K. Linnabary

IKL:sae
cc:    Mr. Jeremy Schaeffer (via Email)

@PFDeskop\. ODMA/WORLDOX/F:/DDCS/WYNDHAM/CMS/05050920.WPD

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COMMAND MANAGEMENT          )
SERVICES, INC.              )
    An Oregon Corporation   )
                            )
    Plaintiff,              )
                            )        Case No. 07 cv 7017
                            )
MEHP O'HARE OPERATING, LLC, )
d/b/a WYNDHAM O'HARE        )
                            )
    Defendant.              )

## NOTICE OF FILING

On February 20, 2008, I electronically filed in the Northern District of Illinois,

Plaintiff's First Amended Complaint, a copy of which is electronically served upon you

herewith.

          Respectfully submitted,

          COMMAND MANAGEMENT
          SERVICES, INC.


          By:   /s/Angelique Palmer
               One of its attorneys

Ronald A. Damashek (ARDC # 6183820)
Andrew H. Eres (ARDC #6237032)
Angelique Palmer (ARDC #6282041)
Stahl Cowen Crowley Addis LLC
55 W. Monroe Street, Suite 1200
Chicago, Illinois 60603
Telephone:  (312) 641-0060
Facsimile:  (312) 641-6959

## CERTIFICATE OF SERVICE

Under penalties as provided by law pursuant to 735 ILCS 5/1-109, the undersigned certifies that she served the **above-referenced documents**, by sending the same to the parties via electronic filing before the hour of 5:00 p.m. on February 20, 2008.