**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| COMMAND MANAGEMENT SERVICES, INC., an Oregon corporation, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No.: 2007 – C – 7017 ) |
| MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE, | ) ) ) |
| Defendant. | ) |

**ANSWER TO FIRST AMENDED COMPLAINT
AND AFFIRMATIVE DEFENSES**

Defendant, MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE ("Wyndham"), by and through its attorneys, Reno & Zahm LLP, hereby answers Plaintiff's, COMMAND MANAGEMENT SERVICES, INC. ("Command"), First Amended Complaint and in support thereof states as follows:

1. This is a breach of contract action arising out of Wyndham's failure to refund payment inadvertently and erroneously paid by Command and intentionally retained by Wyndham for products and services never received by Command.

**ANSWER:** Wyndham admits that Command's First Amended Complaint alleges a breach of contract, but Wyndham denies many of the substantive allegations set forth therein as more particularly detailed below.

**THE PARTIES**

2. Plaintiff, Command, is an Oregon corporation, with its principal place of business at 411 SW 2nd Avenue, Suite 200, Portland, Oregon, 97204. Command is in the business of providing essential services in the travel and logistical support arena.

**ANSWER:**   Wyndham lacks sufficient knowledge upon which it may admit or deny the allegations contained in paragraph 2 of Command's First Amended Complaint and, therefore, denies the same and demands strict proof thereof.

3.      Defendant, MEHP O'Hare Operating, LLC, is a Delaware limited liability company registered to do business in Illinois. MEHP O'Hare Operating, LLC, doing business as Wyndham, is in the business of providing hotel and conference facilities and services in Illinois, located at 6810 N. Mannheim Road, Rosemont, Illinois 60018.

**ANSWER:**   Wyndham admits the allegations set forth in paragraph 3 of Command's First Amended Complaint.

## JURISDICTION AND VENUE

4.      This matter is properly before this Court pursuant to 28 U.S.C. Section 1332(a), as there is diversity of citizenship between the parties and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

**ANSWER:**   Wyndham admits the allegations set forth in paragraph 4 of Command's First Amended Complaint.

5.      Venue in this judicial district is proper pursuant to 28 U.S.C. 1391(a).

**ANSWER:**   Wyndham admits the allegations set forth in paragraph 5 of Command's First Amended Complaint.

6.      The activities giving rise to Command's claims were conducted by Wyndham in the State of Illinois. Accordingly, jurisdiction is proper pursuant to 28 U.S.C. Section 1331 and 15 U.S.C. Section 78.

**ANSWER:**   Wyndham admits the allegations set forth in paragraph 6 of Command's First Amended Complaint.

7.      The acts and omissions complained of in this Complaint occurred, and Wyndham is located within, this judicial district. Accordingly, venue is appropriate pursuant to 28 U.S.C. Section 139 1(b) and 15 U.S.C. Section 78.

**ANSWER:** Wyndham admits the allegations set forth in paragraph 7 of Command's First Amended Complaint

**FACTS COMMON TO ALL COUNTS**

8. On January 21, 2003, Command entered into a written contract (hereinafter the "Contract") with the Radisson Hotel O'Hare ("Radisson"), wherein Radisson, as the subcontractor, agreed to provide hotel and conference facilities and services. (A copy of the Contract is attached as Exhibit A and incorporated herein). Section 14 of the Contract contains a unilateral termination provision that states, "either party may terminate this agreement at the end of each contract year by furnishing 60 days written notice to the other party".

**ANSWER:** Wyndham admits the allegations set forth in the first sentence of paragraph 8 of Command's First Amended Complaint and further states that the contract language speaks for itself.

9. On January 12, 2004, Command and Radisson entered into a written addendum to the Contract. (A copy of the addendum is attached as Exhibit B and incorporated herein). Paragraph two (2) of the addendum states:

> Effective 01 February, 2004, the Contractor [Command] will not be charged for unoccupied rooms or portions of rooms. Contractor will pay the unit price .... for each applicant actually lodged in the hotel.

**ANSWER:** Wyndham admits the allegations set forth in the first sentence of paragraph 9 of Command's First Amended Complaint and further states that the contract language speaks for itself.

10. On or about January 17, 2005, Command received a letter from Radisson stating that as of November 1, 2004, the former Radisson would now be known as Wyndham O'Hare. (See Exhibit C, Wyndham January 17, 2005 letter).

**ANSWER:** Wyndham admits the allegations set forth in paragraph 10 of Command's First Amended Complaint.

11. In July of 2006, representatives of Command visited Wyndham's O'Hare facilities located at 6810 North Mannheim Road, Rosemont, IL. The purpose of this visit was to inspect Wyndham's performance in providing hotel and conference facilities in accordance with the terms of the Contract. Command representatives discovered that Wyndham was not providing or

3

maintaining adequate facilities per the terms of the Contract. In particular, Command discovered that Wyndham failed to provide an acceptable level of: housekeeping and maintenance in the sleeping rooms, service in the restaurant, and adequate space in the lounge/conference area.

**ANSWER:** Wyndham admits that in July of 2006, representatives of Command visited Wyndham's facilities, but Wyndham lacks knowledge upon which it may form a belief as to the purpose of Command's visit or what Command believes it discovered at the facility. Wyndham denies that its facilities were inadequate or that it failed to provide an acceptable level of housekeeping and maintenance in the sleeping rooms, service in the restaurant and adequate space in the lounge/conference area and demands strict proof thereof.

12. Accordingly, Command sent Wyndham a letter on July 28, 2006, reporting the deficiencies discovered and requesting that Wyndham fully perform according to the terms of the Contract. (See Exhibit D, Command letter July 28, 2006). Subsequent to this letter, Command continued to renew its requests that Wyndham remedy the deficiencies and fully perform its contractual obligations. Wyndham failed to address and remedy the deficiencies, and therefore, failed to fully perform its obligations under the contract.

**ANSWER:** Wyndham admits that Command sent Wyndham a letter dated July 28, 2006 and further states that the content of the letter speaks for itself. Wyndham denies the remaining allegations set forth in paragraph 12 of Command's First Amended Complaint and demands strict proof thereof.

13. On or about November 8, 2006, in response to Command's repeated requests that Wyndham remedy deficiencies and fully perform its contractual obligations, Wyndham sent a letter to Command stating, in relevant part:

> ...please accept this letter as Wyndham O'Hare's 60 day written notice of termination of the MEPS contract. **Under Section 14 of the Subcontract, either party can terminate the relationship** and we feel that it is in our best interest to do so at this time.
>
> Due to the fact that the arbitrary 30 day period we were given to correct any problems you encountered has passed and that you have not made any room night commitments for 2007, we will have to secure alternative base business elsewhere. This being the case, **I wanted to inform you of our decision to terminate this**

4

>     **contractual relationship** ... (See Exhibit E, Wyndham November 8,
>     2006 letter).

**ANSWER:**   Wyndham admits that on or about November 8, 2006, it sent a letter to Command, but denies that it was sent "in response to Command's repeated requests that Wyndham remedy deficiencies and fully perform its contractual obligations" and further states that the content of the letter speaks for itself.

14. On December 21, 2006, Command sent a letter to Wyndham acknowledging receipt of its November 8, 2006 notice of termination. In the letter, Command further stated, in relevant part:

>     ... CMS [Command] will discontinue services under the Subcontract Agreement and permanently relocate to an alternate hotel facility effective 01 January 2007. **Services under the Subcontract Agreement will terminate upon completion of the breakfast meal service on Friday, 29 December 2006**. (See Exhibit F, Command letter December 2006).

Accordingly, as of December 31, 2006, Command started booking hotel and conference services with another Radisson ("new Radisson") at a different location.

**ANSWER:**   Wyndham admits that Command sent Wyndham a letter dated December 21, 2006 and further states that the content of the letter speaks for itself. Wyndham lacks sufficient knowledge upon which it may admit or deny the remaining allegations contained in paragraph 14 of Command's First Amended Complaint and, therefore, denies the same and demands strict proof thereof.

15. On or about February 21, 2007, Command received a bill from the new Radisson for hotel and conference services for the month of January, 2007, in the amount of $77,307.50. Command intended to pay this amount to the new Radisson. Nevertheless, due to a system error, Command had Wyndham and not the new Radisson listed as payee, and on March 12, 2007 a check was issued inadvertently and erroneously to Wyndham in the amount of $77,307.50. (See Exhibit G, Invoices and cancelled check).

**ANSWER:**   Wyndham admits it received a check in the amount of $77,307.50 from Command, but lacks sufficient knowledge upon which it may admit or deny the remaining

5

allegations set forth in paragraph 15 of Command's First Amended Complaint and, therefore, denies the same and demands strict proof thereof.

16. Command subsequently discovered this mistake and made another payment in the amount of $77,307.50 to the new Radisson, to remedy the error.

**ANSWER:** Wyndham lacks sufficient knowledge upon which it may admit or deny the allegations contained in paragraph 16 of Command's First Amended Complaint and, therefore, denies the same and demands strict proof thereof.

17. Surprisingly, shortly thereafter, Wyndham issued an invoice for **unused** hotel and conference services for the month of January, 2007 in the amount of $77,287.14. Remarkably, this invoice was for an amount very close to the monies it erroneously received from Command. (See Exhibit G). Command did not reserve or use any rooms or conference services in the month of January, 2007 with Wyndham.

**ANSWER:** Wyndham admits the allegations set forth in paragraph 17 of Command's First Amended Complaint.

18. On or about March 30, 2007, Sam Rosenbaum ("Rosenbaum") of Command telephoned Wyndham and spoke with Amy in the Accounting Department regarding the erroneous payment. Rosenbaum told Amy that Command was billed for unused services for the month of January, 2007, and that the charge was not in accordance with the terms of the Contract. Accordingly, Rosenbaum asked that Command's monies be returned. In response, Amy transferred Rosenbaum to the Controller, Debbie, with whom he left a message regarding the same. In response to his inquiry, on the same day, Rosenbaum received a telephone call back from Amy in the Accounting Department. Amy confirmed receipt of the monies and informed Rosenbaum that Wyndham decided to keep Command's monies. Wyndham stated that because it was under contract with Command until the end of January, 2007, it was entitled to the monies.

**ANSWER:** Wyndham admits that Rossenbaum contacted Wyndham personnel regarding the $77,307.50 payment received by Wyndham, and that Wyndham personnel acknowledged receipt of said payment, but Wyndham lacks sufficient knowledge upon which it may admit or deny the remaining allegations contained in paragraph 18 of Command's First Amended Complaint and, therefore, denies the same and demands strict proof thereof.

19. Subsequently, on May 15, 2007, in response to Command's ongoing inquiries and renewed demands for a refund, counsel for Wyndham, Ian Linnabary of the law firm Reno & Zahm, LLP, wrote a letter to Command's counsel. In the letter, Wyndham does not acknowledge the January 12, 2004 addendum that clearly states that Command will not be charged for unoccupied rooms, or Command's termination letter of December 21, 2006. Instead, Wyndham states that "[O]ver the course of the parties relationship, Wyndham had come to expect that CMS [Command] would reserve and pay for an average of approximately 800 rooms per month". (See Exhibit H, Wyndham May 2007 letter, para. 7). Accordingly, Wyndham refused to refund Command the $77,307.50 per its demands.

**ANSWER:** Wyndham admits its counsel sent a letter to Command on May 15, 2007 and further states that the content of the letter speaks for itself.

## COUNT I
## BREACH OF CONTRACT

20. Command reincorporates and realleges paragraphs 1-19 as if fully set forth herein.

**ANSWER:** Wyndham realleges and incorporates by reference its answers to paragraphs 1 through 19 of Command's First Amended Complaint as if fully restated in this Count I.

21. Command and Wyndham formed a Contract, the terms of which specified that for a monthly fee, Wyndham would provide hotel and conference facilities and services.

**ANSWER:** Wyndham admits that Command and Wyndham entered into a contract, a copy of which is attached to Command's First Amended Complaint and the content of which speaks for itself.

22. As part of that Contract, Command and Wyndham subsequently executed an addendum that states Command would not be charged for unoccupied rooms, and would only be responsible to pay for rooms that Command's applicants actually lodged in.

**ANSWER:** Wyndham admits that Command and Wyndham executed an addendum to the contract, a copy of which is attached to Command's First Amended Complaint and the content of which speaks for itself.

23. Section 14 of the Contract clearly states that either party may terminate this agreement. No where does the Contract provide that once the agreement is terminated by either party that the agreement continues for a specified duration of time.

**ANSWER:** Wyndham denies the allegations set forth in paragraph 23 of Command's First Amended Complaint and demands strict proof thereof.

24.  Command fully performed under the Contract by paying Wyndham for rooms actually lodged in, up until the end of December, 2006.

**ANSWER:** Wyndham denies the allegations set forth in paragraph 24 of Command's First Amended Complaint and demands strict proof thereof.

25.  Command did not reserve or use any of Wyndham's facilities in January, 2007 or at any time thereafter.

**ANSWER:** Wyndham admits the allegations set forth in paragraph 25 of Command's First Amended Complaint.

26.  Wyndham breached its contractual obligations to Command by ignoring Command's termination of services, intentionally issuing an invoice for unused services in January, 2007, and by collecting and refusing to refund monies erroneously paid and not owed to Wyndham per the terms of the Contract.

**ANSWER:** Wyndham denies the allegations set forth in paragraph 26 of Command's First Amended Complaint and demands strict proof thereof.

27.  As a result of Wyndham's breach of contract, Command has been damaged.

**ANSWER:** Wyndham denies the allegations set forth in paragraph 27 of Command's First Amended Complaint and demands strict proof thereof.

28.  Command has further been damaged by the fact that Wyndham has retained and refused to refund these monies, hindering Command's ability to secure facilities elsewhere.

**ANSWER:** Wyndham denies the allegations set forth in paragraph 28 of Command's First Amended Complaint and demands strict proof thereof.

WHEREFORE, Defendant, MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE, respectfully requests that Count I of Plaintiff's, COMMAND MANAGEMENT

SERVICES, INC., Complaint be dismissed with prejudice and for such other and further relief as this Court deems just and equitable.

### AFFIRMATIVE DEFENSES TO COUNT I (BREACH OF CONTRACT) OF COMMAND'S FIRST AMENDED COMPLAINT

#### FIRST AFFIRMATIVE DEFENSE (FAILURE TO STATE A CAUSE OF ACTION)

The claims asserted in Count I of Command's First Amended Complaint are barred in whole or part because Command has failed to allege facts sufficient to state a cause of action for breach of contract.

#### SECOND AFFIRMATIVE DEFENSE (ESTOPPEL)

The claims asserted in Count I of Command's First Amended Complaint are barred in whole or part under the doctrine of equitable estoppel / estoppel in pais.

#### THIRD AFFIRMATIVE DEFENSE (UNCLEAN HANDS)

The claims asserted in Count I of Command's First Amended Complaint are barred in whole or part by the doctrine of unclean hands.

#### FOURTH AFFIRMATIVE DEFENSE (OFFSET)

The claims asserted in Count I of Command's First Amended Complaint are offset in whole or part pursuant to Counts I and II of Wyndham's Counterclaim.

### COUNT II
### CONVERSION

29. Command reincorporates and realleges paragraphs 1-19 as if fully set forth herein.

**ANSWER:** Wyndham realleges and incorporates by reference its answers to paragraphs 1 through 19 of Command's First Amended Complaint as if fully restated in this Count II.

30. Wyndham holds Command's monies erroneously paid for the month of January, 2007, in the amount of $77,307.50.

**ANSWER:**   Wyndham denies the allegations set forth in paragraph 30 of Command's First Amended Complaint and demands strict proof thereof.

31.   Even though Wyndham has knowledge that the monies do not belong to it, Wyndham has nevertheless converted said funds for its own use.

**ANSWER:**   Wyndham denies the allegations set forth in paragraph 31 of Command's First Amended Complaint and demands strict proof thereof.

32.   Demand has been made upon Wyndham for the return of these monies.

**ANSWER:**   Wyndham admits the allegations set forth in paragraph 32 of Command's First Amended Complaint.

33.   Wyndham has refused to turn over Command's monies, with the intent to permanently keep Command's monies.

**ANSWER:**   Wyndham admits that it has refused to turn over $77,307.50 demanded by Command, but denies the remaining allegations set forth in paragraph 33 of Command's First Amended Complaint and demands strict proof thereof.

WHEREFORE, Defendant, MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE, respectfully requests that Count II of Plaintiff's, COMMAND MANAGEMENT SERVICES, INC., Complaint be dismissed with prejudice and for such other and further relief as this Court deems just and equitable.

### AFFIRMATIVE DEFENSES TO COUNT II (CONVERSION) OF COMMAND'S FIRST AMENDED COMPLAINT

### FIRST AFFIRMATIVE DEFENSE (ESTOPPEL)

The claims asserted in Count II of Command's First Amended Complaint are barred in whole or part under the doctrine of equitable estoppel / estoppel in pais.

### SECOND AFFIRMATIVE DEFENSE (UNCLEAN HANDS)

The claims asserted in Count II of Command's First Amended Complaint are barred in whole or part by the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE (OFFSET)

The claims asserted in Count II of Command's First Amended Complaint are offset in whole or part pursuant to Counts I and II of Wyndham's Counterclaim.

Dated this 19th day of March, 2008.

Defendant, MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE, by its attorneys, Reno & Zahm LLP

RENO & ZAHM LLP
By: Ian K. Linnabary, Esq. (#6277908)
2902 McFarland Road, Suite 400
Rockford, IL 61107
Ph. (815) 987-4050
Fax (815) 987-4092
ikl@renozahm.com

By:  /s/ Ian K. Linnabary
Ian K. Linnabary, Esq.

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a copy of the foregoing **Answer to First Amended Complaint and Affirmative Defenses** was served electronically upon the registered CM/ECF users as reflected on the Notice of Electronic Filing on the 19th day of March, 2008.

/s/ Ian K. Linnabary
Ian K. Linnabary, Esq.

RENO & ZAHM LLP
2902 McFarland Road, Suite 400
Rockford, IL 61107
Ph. (815) 987-4050
Fax (815) 987-4092