IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COMMAND MANAGEMENT SERVICES, INC., an Oregon corporation, | )<br>)<br>) |
| Plaintiff | )<br>) |
| vs. | ) Case No.: 2007 – C – 7017<br>) |
| MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE, | )<br>)<br>) |
| Defendant, | )<br>) |
| MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE, | )<br>)<br>) |
| Counter-Plaintiff, | )<br>) |
| vs. | )<br>) |
| COMMAND MANAGEMENT SERVICES, INC., an Oregon corporation, | )<br>)<br>) |
| Counter-Defendant. | ) |

## COUNTERCLAIM

Defendant/Counter-Plaintiff, MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE ("Wyndham"), by and through its attorneys, Reno & Zahm LLP, for its Counterclaim against Plaintiff/Counter-Defendant, COMMAND MANAGEMENT SERVICES, INC. ("Command"), states as follows:

### PARTIES AND JURISDICTION

1.  Counter-Plaintiff, Wyndham, is a limited liability company organized and in good standing under the laws of the state of Delaware and is duly authorized to transact business within

the state of Illinois. Wyndham is in the business of providing hotel and conference facilities and related goods and services from its facility located at 6810 North Mannheim Road, Rosemont, Illinois 60018, commonly known as the Wyndham O'Hare Hotel.

2.      Counter-Defendant, Command, is believed to be a corporation organized and in good standing under the laws of the state of Oregon, with its principal place of business located at 411 Southwest Second Avenue, Suite 200, Portland, Oregon 97204. Command is in the business of providing essential services in the travel and logistics support arena.

3.      Jurisdiction and venue in this judicial district are proper as alleged in paragraphs 4 through 7 of Command's First Amended Complaint, and this Counterclaim is brought pursuant to 28 U.S.C. § 1367 and Rule 13 of the Federal Rules of Civil Procedure.

**FACTS COMMON TO ALL COUNTS**

4.      On or about January 21, 2003, Command entered into a written contract (the "Contract") with the Radisson Hotel O'Hare ("Radisson") wherein Radisson, as the subcontractor, agreed to provide hotel and conference facilities and related goods and services pursuant to the specific terms and conditions set forth in the Contract. A true and correct copy of the Contract is attached hereto and made a part hereof as Exhibit "A".

5.      Wyndham provided the goods and services under the Contract in furtherance of Command's obligation to arrange for such goods and services for the U.S. Military. As such, the U.S. Military had a degree of oversight regarding Wyndham's provision of said goods and services.

6.      For contract renewal purposes, the parties treated January 31st of each year as the end of the annual term of the Contract.

7.  Paragraph 14 of the Contract specifies how and when the Contract may be terminated as follows "**either party may terminate this agreement at the end of each contract year by furnishing sixty (60) days' written notice to the other party.**" (*Emphasis added*).

8.  Thus, pursuant to paragraph 14, the Contract can only be terminated "at the end of each contract year" and only if preceded by "sixty (60) days' written notice." (*Emphasis added*).

9.  The Contract contains no other language addressing termination, and absent an agreement between Wyndham and Command, it may not be terminated except in accordance with the clear terms of paragraph 14.

10. In early 2005, the Radisson became affiliated with Wyndham Hotel brand, and shortly thereafter, notification was sent to all of the Radisson's vendors, including Command, announcing that the Radisson would now be known as the "Wyndham O'Hare."

11. Thereafter, Wyndham continued to provide goods and services under the Contract, and Command accepted said goods and services.

12. Representatives of the U.S. Military inspected the Wyndham facility on a monthly basis, and never identified substantial issues with the facility; in fact, the Wyndham never failed a U.S. Military inspection.

13. Representatives of Command, namely regional representative Sharron Blanton ("Blanton"), inspected the Wyndham facility every other month and never identified substantial issues with the facility; in fact, the Wyndham never failed one of Blanton's inspections.

14. In the month of May or June 2006, Blanton inspected the Wyndham facility and did not identify any issues with the facility.

15.     In July 2006, shortly after Blanton's inspection, Monica Anderson ("Anderson"), CEO of Command, and Jeff Downes ("Downes"), VP of Command, visited the Wyndham facility for the purpose of conducting an additional inspection of the Wyndham facility.

16.     Anderson and Downes raised concerns regarding the Wyndham facility, and those issues were immediately addressed by Wyndham personnel.

17.     Shortly after the inspection by Anderson and Downes, the Wyndham facility was inspected by a U.S. Army Colonel, and the Wyndham passed his inspection.

18.     Shortly after the inspection by Anderson and Downes, the Wyndham facility was inspected by Blanton, and the Wyndham passed her inspection. In fact, Blanton noted her pleasure with the condition of the Wyndham facility.

19.     Eventually, Wyndham made a business decision to terminate the Contract pursuant to paragraph 14. In doing so, Wyndham complied with the terms of paragraph 14 of the Contract and effected termination by sending sixty (60) days' written notice on November 8, 2006. Wyndham's letter provided, in part, as follows:

> . . .please accept this letter as Wyndham O'Hare's 60 day written notice of termination of the MEPS contract. Under Section 14 of the Subcontract, either party can terminate the relationship and we feel that it is in our best interest to do so at this time.
>
> We cannot continue to hold room nights under the contract beyond [the end of the Contract year] January 31st, 2007. . .

A true and correct copy of Wyndham's November 8, 2006 letter is attached hereto and made a part hereof as Exhibit "B".

20.     Following transmission of Wyndham's November 8, 2006 termination notice, Downes contacted Wyndham in an attempt to convince Wyndham to reconsider its decision to

terminate the Contract. Downes offered Command's commitment to use the Wyndham facility in 2007.

21.  The parties engaged in subsequent discussions regarding the terms of a new contract, but they eventually reached an impasse.

22.  Command then notified Wyndham of its acceptance of the Contract termination by a letter dated November 17, 2006. A true and correct copy of Command's November 17, 2006 letter is attached hereto and made a part hereof as Exhibit "C".

23.  Wyndham immediately began planning for the loss of Command's business after January 31, 2007. Wyndham planned to, and did in fact, proceed in good faith to fulfill its obligations to Command under the Contract until it was rightfully terminated on January 31, 2007.

24.  Based upon the parties' past practices and regular course of dealing, Wyndham planned for the typical requirements of Command for the months of December 2006 and January 2007.

25.  Without warning, shortly before the Christmas holiday, Downes sent written notification to Wyndham dated December 21, 2006 indicating that Command would "discontinue services under the Subcontract Agreement and permanently relocate to an alternate hotel facility effective 01 January 2007." (*Emphasis added*). A true and correct copy of Command's December 21, 2006 letter is attached hereto and made a part hereof as Exhibit "D".

26.  Downes' December 21, 2006 letter, sent in retaliation for Wyndham's refusal to renegotiate a contract with Command, attempted to prematurely terminate the contract on less than ten (10) days' notice.

27.Downes' December 21, 2006 letter violated the express termination language of the Contract which provides for termination "at the end of each contract year" if preceded by "sixty (60) days' written notice."

28.Despite the clear language of paragraph 14, Command purported to terminate the Contract unilaterally and without the consent of Wyndham: (1) before the end of the contract year and (2) without the requisite sixty (60) days' written notice.

29.Command acted in bad faith when it attempted to unilaterally terminate the Contract prematurely and without requisite notice.

30.As a result of Command's unilateral and premature termination of the Contract, Wyndham suffered significant financial harm which could not be mitigated.

## COUNT I
## BREACH OF CONTRACT

1. - 30.Defendant/Counter-Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 3 of Parties and Jurisdiction and paragraphs 4 through 30 of Facts Common to All Counts as and for paragraphs 1 through 30 of this Count I of its Counterclaim.

31.The Contract attached hereto as Exhibit "A" constitutes a valid and binding contract between Wyndham and Command.

32.Wyndham performed, in all material respects, its responsibilities under the Contract from inception through the date of its unilateral termination by Command. Wyndham remained ready, willing and able to perform, in all material respects, in its responsibilities under the Contract through the end of the Contract year and rightful termination date of January 31, 2007.

33.     Command failed to perform its responsibilities under the Contract, namely its responsibility to terminate the Contract pursuant to paragraph 14.

34.     Command's actions constitute a breach of the Contract and were in direct contradiction of its contractual obligation to deal fairly and act in good faith.

35.     As a result of Command's actions, Wyndham has suffered significant financial harm which could not be mitigated.

WHEREFORE, Defendant/Counter-Plaintiff, MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE, respectfully requests that this Court enter judgment in its favor and against Plaintiff/Counter-Defendant, COMMAND MANAGEMENT SERVICES, INC., in an amount in excess of $75,000 and for such other relief as this Court deems just and equitable.

## COUNT II
## QUANTUM MERUIT

1. - 30.     Defendant/Counter-Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 3 of Parties and Jurisdiction and paragraphs 4 through 30 of Facts Common to All Counts as and for paragraphs 1 through 30 of this Count II of its Counterclaim.

31.     From January 21, 2003 through and including January 31, 2007, Wyndham (and its predecessor in interest, Radisson) provided goods and services for the benefit of Command. Such goods and services included the provision of lodging and meals for individuals whom Command was obligated to arrange such services for pursuant to Command's agreement with the United States government.

32.     Based upon the parties' past practices and regular course of dealing, Wyndham reasonably assumed and planned for the typical requirements of Command each month, and to

ensure adequate facilities to provide such goods and services for the benefit of Command, Wyndham would regularly forego opportunities to provide the same goods and services to other individuals.

33. From January 1, 2007 through January 31, 2007, Wyndham regularly and customarily reserved its goods and services first for the benefit of Command, and Command regularly and customarily accepted and benefitted from such goods and services.

34. For the month of January 2007, Wyndham reserved its facilities in order to provide the usual and customary goods and services for Command, and Wyndham reasonably expected and deserves to be compensated therefor.

WHEREFORE, Defendant/Counter-Plaintiff, MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE, respectfully requests that this Court enter judgment in its favor and against Plaintiff/Counter-Defendant, COMMAND MANAGEMENT SERVICES, INC., in an amount in excess of $75,000 and for such other relief as this Court deems just and equitable.

Dated this 19th day of March, 2008.

                                                  Defendant/Counter-Plaintiff, MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE, by its attorneys, Reno & Zahm LLP

RENO & ZAHM LLP
By: Ian K. Linnabary, Esq. (#6277908)
2902 McFarland Road, Suite 400         By:   /s/ Ian K. Linnabary
Rockford, IL 61107                                 Ian K. Linnabary, Esq.
Ph. (815) 987-4050
Fax (815) 987-4092
ikl@renozahm.com

## CERTIFICATE OF SERVICE

      I, the undersigned, hereby certify that a copy of the foregoing **Counterclaim** was served electronically upon the registered CM/ECF users as reflected on the Notice of Electronic Filing on the 19th day of March, 2008.

                                                /s/ Ian K. Linnabary  
                                                Ian K. Linnabary, Esq.

RENO & ZAHM LLP  
2902 McFarland Road, Suite 400  
Rockford, IL 61107  
Ph. (815) 987-4050  
Fax (815) 987-4092

02 Chicago - Radisson Hotel O'Hare .sca     (Revision 01; 21 January 2003)

## SUBCONTRACT FOR SERVICES AGREEMENT

This Subcontract for Services Agreement is made between **COMMAND MANAGEMENT SERVICES, INC., Portland, OR** (hereafter Contractor) and the **RADISSON HOTEL O'HARE, Rosemont, IL** (hereafter Subcontractor). Throughout this document the term "subcontract", "agreement" and "subcontract agreement" are used and are to be considered as referring to this document.

This is an Agreement for the performance of services for applicants processing at the Chicago, Illinois Military Entrance Processing Station (MEPS). Contractor and Subcontractor are bound by the terms and conditions of this Agreement. This Agreement is entirely contingent upon the authorized U.S. Government representatives inspecting and accepting the Subcontractor performance facilities[1] as being suitable for the performance of services. Both parties agree herewith to be bound by this Agreement.

The Contractor and Subcontractor agree as set forth below:

1. **Statement of Work (SOW):**

   a. The Contractor shall do the following:

   (1) provide all necessary supervision, labor, materials, supplies, and facilities to perform the work as itemized in the Prime Contract statement of work, except as specifically subcontracted in this agreement; and,

   (2) Pay for the performance of contract work performed by the Subcontractor on the basis of unit price (unit price is inclusive of all applicable taxes and gratuities), as set forth in Appendix A.

   b. The Subcontractor shall have the following performance responsibilities:

   (1) Provide all the supervision, labor, equipment, materials and supplies to perform all duties and responsibilities of the subcontract in accordance with the terms and conditions of the subcontract and the Statement of Work (SOW) set out in Appendix B. In addition Subcontractor understands the inclusion of the Department of Labor wage determination and its applicability to this Agreement.

---

[1] "Performance facilities" describes any and all facility(ies) provided by the subcontractor for the purposes of lodging, feeding and/or transporting applicants as defined within the SOW incorporated herein.

PAGE 1 - SUBCONTRACT FOR SVCS

EXHIBIT "A"

(2)    Perform the specific subcontracted work as detailed herein and for the prices specified in Appendix A. Unit prices shall be inclusive of all applicable taxes and gratuities.

2.    Payment for Services:

The Contractor shall pay Subcontractor for work performed on a monthly schedule. Payments due the Subcontractor will be payable by Contractor not more than ten (10) days after Contractor has received payment from the Government under the Prime Contract for the particular services period. Payment will be made as follows: Subcontractor shall present an invoice at the end of a month of operation. The invoiced quantities of rooms and meals shall be in agreement with a daily master folio issued from the hotel front desk to the Contractor's on-site representative. Contractor's on-site representative will reconcile the daily lodging totals with Subcontractor to come to an agreement within a short time after the end of the month, usually during the first 5 days. The Contractor shall pay the Subcontractor within 30-45 days after completion of a month's work.

3.    Authorized Representatives:    The authorized representatives of the parties to this Subcontract are as follows:

a. Contractor: The following individuals shall be designated as the representative, and alternate for the Contractor.

> Monica C. Anderson, President/CEO
> T. A. Moore, Executive Vice President (alternate)
> Command Management Services, Inc.
> 621 S.W. Alder St. Ste. 510
> Portland, OR 97205
> tele: (503) 224 - 5600
> fax: (503) 224 - 6848

b. Subcontractor: The following individuals shall be designated as the representative for the Subcontractor.

> Heidi Prosser, Director of Sales & Marketing
> Radisson Hotel O'Hare
> 6810 North Mannheim Road
> Rosemont, IL 60018
> tele:    (847) 297 - 1234
> tele:    (847) 297 - 6144 Direct
> fax:     (847) 297 - 8744

4.    If the Government fails to allow location of Contract performance facilities to the facilities proposed by Subcontractor, this Agreement shall lapse, and neither party shall have any further

02 Chicago - Radisson Hotel O'Hare .sca           (Revision 01; 21 January 2003)

obligation or duty to the other. Each party shall stand its own costs or expenses incurred in the proposal process.

5.   Subcontractor agrees to provide up to two (2) room-nights per month for Contractor use in coordinating, training and retraining subcontractor personnel and general oversight of the contract activities. Such room will be provided on a complimentary basis. All other associated room costs such as telephone, food and drink, valet service and all other miscellaneous charges will be borne by the Contractor and Contractor personnel.

6.   Subcontractor shall provide a dedicated room for Contractor use to set up as an applicant lounge. Such provided room shall be of a size to comfortably hold 50 - 60 persons in various configurations. Space must be lockable and cleaned daily. Contractor shall provide large-screen television and accessories, games, etc.; subcontractor shall provide tables, chairs and lounge furniture.

7.   Subcontractor is obligated to provide full and complete performance in accordance with the specifications of this Agreement, to include all provisions for lodging which consistently meet the requirements of the U.S. Government.

8.   Contractor agrees to furnish comprehensive written procedures, in the form of a Standing Operating Procedures (SOP) covering all operational aspects expected under this Agreement. Contractor shall train subcontractor staff in the implementation of the SOP.

9.   In the event that the facility(ies) are subject to sale, transfer, assignment, lease or otherwise subject to a change in ownership or management, the Subcontractor agrees that it will exert its best efforts to include the continuation of this Agreement as part of the transaction.

10.  Subcontractor agrees that it shall not attempt to collect the cost of lodging or meals as described herein directly from the applicants. All invoices will be presented directly to the Contractor for payment.

11.  Subcontractor agrees to provide current proof of insurance to the contractor. Such proof shall name the Contractor and its clients as additionally insured within the insurance umbrella.

12.  Contractor will order rooms daily, based upon requirements received from the Government, and will cancel rooms as necessary until 8:00 p.m. daily. Subcontractor agrees to reserve a minimum of 50 double rooms until 8:00 pm daily (Sunday through Thursday, plus one Friday per month) unless the rooms are canceled earlier by the Contractor.

PAGE 3 - SUBCONTRACT FOR SVCS

02 Chicago - Radisson Hotel O'Hare .bcs         (Revision 01; 21 January 2003)

13. Subcontractor agrees to replace the safety signage in the swimming pool area; and to monitor the video surveillance camera located in the swimming pool area.

14. Either party may terminate this agreement at the end of each contract year by furnishing 60 days written notice to the other party.

AGREED TO this _21st_ day of January, 2003.

SUBCONTRACTOR                           CONTRACTOR
Radisson Hotel O'Hare                   Command Management Services, Inc.

BY: _____               BY: _____
Heidi Prosser  Artrua Cooper                Monica Anderson
Director of Sales & Marketing               President

Appendices:

   APPENDIX A — PRICE AND PAYMENT SCHEDULE

   APPENDIX B — STATEMENT OF WORK (SOW)

   APPENDIX C — US Dept of Labor WAGE DETERMINATION

PAGE 4 - SUBCONTRACT FOR SVCS

FROM : CMS  FAX NO. : 5034452564  Jan. 23 2004 03:33PM P3
CHICAGO MEPS - RADISSON HOTEL CHICAGO  REVISION PRICING: 01/23/2004

## APPENDIX A
### PRICE AND PAYMENT SCHEDULE

| ITEM | | ESTIMATED QUANTITY (1) | UNIT OF MEASURE | UNIT PRICE (2) | ESTIMATED AMOUNT |
|---|---|---|---|---|---|
| Base Period: (for the period: 1 Jan 2004 through 31 Aug 2004)(3) | | | | | |
| 0001A | Single Lodging Requirements, Per Appendix B. | 1,000 | Person | N/A | COMPLETED |
| 0001B | Double Lodging Requirements, Per Appendix B. | 22,000 | Person | N/A | COMPLETED |
| 0001C | Meals Requirements, Per Appendix B. | 23,000 | Person | N/A | COMPLETED |
| 0001D | Applicant Lounge Requirements, Per Appendix B. | 261 | Days | N/A | COMPLETED |
| Contractor's First Option Period: (for the period: 1 Feb 2004 through 31 Jan 2005) | | | | | |
| 0002A | Single Lodging Requirements, Per Appendix B. | 1,000 | Person | $23.78 | $23,780.00 |
| 0002B | Double Lodging Requirements, Per Appendix B. | 22,000 | Person | $23.78 | $523,160.00 |
| 0002C | Meals Requirements, Per Appendix B. | 23,000 | Person | $17.39 | $399,970.00 |
| 0002D | Applicant Lounge Requirements, Per Appendix B. | 261 | Days | INCLUDED | INCLUDED |
| Contractor's Second Option Period: (for the period 1 Feb 2005 through 31 Jan 2006) | | | | | |
| 0003A | Single Lodging Requirements, Per Appendix B. | 1,000 | Person | $24.49 | $24,490.00 |
| 0003B | Double Lodging Requirements, Per Appendix B. | 22,000 | Person | $24.49 | $538,780.00 |
| 0003C | Meals Requirements, Per Appendix B. | 23,000 | Person | $17.91 | $411,930.00 |
| 0003D | Applicant Lounge Requirements, Per Appendix B. | 261 | Days | INCLUDED | INCLUDED |
| Contractor's Third Option Period: (for the period: 1 Feb 2006 through 31 Jan 2007) | | | | | |
| 0004A | Single Lodging Requirements, Per Appendix B. | 1,000 | Person | $25.22 | $25,220.00 |
| 0004B | Double Lodging Requirements, Per Appendix B. | 22,000 | Person | $25.22 | $554,840.00 |
| 0004C | Meals Requirements, Per Appendix B. | 23,000 | Person | $18.45 | $424,350.00 |
| 0004D | Applicant Lounge Requirements, Per Appendix B. | 261 | Days | INCLUDED | INCLUDED |
| Contractor's Fourth Option Period: (for the period: 1 Feb 2007 through 31 Jan 2008) | | | | | |
| 0005A | Single Lodging Requirements, Per Appendix B. | 1,000 | Person | $25.98 | $25,980.00 |
| 0005B | Double Lodging Requirements, Per Appendix B. | 22,000 | Person | $25.98 | $571,560.00 |
| 0005C | Meals Requirements, Per Appendix B. | 23,000 | Person | $19.00 | $437,000.00 |
| 0005D | Applicant Lounge Requirements, Per Appendix B. | 261 | Days | INCLUDED | INCLUDED |
| | | | | TOTAL | $3,961,060.00 |

(1) Service required Sunday through Thursday each week, plus an estimated 1 Friday per month.
(2) Rates are inclusive of all applicable tax and gratuities.
(3) Basis of payment will be month-end reconciliation of daily master folios.

Note 1: Payment will be made for rooms not automatically cancelled by CMS by 6:00pm, plus meals for applicants actually lodged.

Note 2: This agreement may be terminated at the end of each contract year written notice by either party.

_____  1/23/2004
Arthur Cooper, Director of Sales
RADISSON HOTEL O'HARE

_____  1/23/2004
Monica Anderson, President
COMMAND MANAGEMENT SERVICES, INC

*Sent 11-8-06 AMS*

November 8, 2006

Monica Anderson
CMS Corporation
411 SW 2nd Avenue
Portland, Oregon 97204

RE: MEPS Contract and Subcontract Issues

Dear Ms. Anderson,

In my letter dated August 31, 2006, I explained how we have addressed the concerns you had after your July inspection. Since that date, I have regretfully not heard from you or your corporation. Therefore, please accept this letter as Wyndham O'Hare's 60 day written notice of termination of the MEPS contract. Under Section 14 of the Subcontract, either party can terminate the relationship and we feel that it is in our best interest to due so at this time.

We cannot continue to hold room nights under the contract beyond January 31st, 2007 while waiting for your response. Due to the fact that the arbitrary 30 day period we were given to correct any problems you encountered has passed and that you have not made any room night commitments for 2007, we will have to secure alternative base business elsewhere. This being the case, I wanted to inform you of our decision to terminate this contractual relationship with the current terms in advance of the ending date so that both parties could pursue other avenues if needed. However, should you desire to continue our relationship we would welcome discussion to that end. We would be pleased to negotiate new terms for contract that would come into effect on February 1st, 2007.

Please contact me via email or written response at your earliest to discuss the options I have laid out above. Thank you in advance for your time attention to this matter.

Sincerely,


Andrea J. Mayer
General Manager

**EXHIBIT "B"**



November 17, 2006

Andrea Mayer, General Manager
Wyndham O'Hare
6810 North Mannheim Road
Rosemont, IL 60018

Re:   Notice of Subcontract Termination

Dear Ms. Mayer:



Command Management Services, Inc. (CMS) is in receipt of your November 8, 2006 written notice of termination of our subcontract agreement to furnish lodging and meals for applicants processing through the Chicago Military Entrance Processing Station (MEPS).

CMS accepts your termination notice and will begin the process of relocation to alternate hotel and restaurant facilities immediately.

Sincerely,

Jeff Downes
Vice President

Main: 503.224.5600 · Fax: 503.224.6848 · www.cms-corp.com · 411 SW Second Avenue, Suite 200 · P

EXHIBIT "C"

APR. 22. 2007  4:21PM    COMMAND MANAGEMENT SERVICES                    NO. 0113   P. 28

December 21, 2006

Andrea Mayer, General Manager
    Or;
Current General Manager
Wyndham O'Hare
6810 North Mannheim Road
Rosemont, IL 60018

Re:    Notice of Subcontract Termination and Relocation

Dear Ms. Mayer:

Based upon your November 8, 2006 written notice of termination of our Subcontract Agreement to furnish lodging and meals for applicants processing through the Chicago Military Entrance Processing Station (MEPS), CMS will discontinue services under the Subcontract Agreement and permanently relocate to an alternate hotel facility effective 01 January 2007. Services under the Subcontract Agreement will terminate upon completion of the breakfast meal service on Friday, 29 December 2006.

Sincerely,


Jeff Downes
Vice President



EXHIBIT "D"