IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COMMAND MANAGEMENT SERVICES, INC. An Oregon Corporation | ) ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 07 cv 7017 |
| MEHP O'HARE OPERATING, LLC, d/b/a WYNDHAM O'HARE | ) ) ) | |
| Defendant. | ) ) | |

### FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff, Command Management Services, Inc. ("Command"), by its attorneys, Stahl Cowen Crowley Addis LLC, and for its First Amended Complaint against Defendant, MEHP O'Hare Operating, LLC, d/b/a Wyndham O'Hare ("Wyndham"), states as follows:

1.      This is a breach of contract action arising out of Wyndham's failure to refund payment inadvertently and erroneously paid by Command and intentionally retained by Wyndham for products and services never received by Command.

### THE PARTIES

2.      Plaintiff, Command, is an Oregon corporation, with its principal place of business at 411 SW 2nd Avenue, Suite 200, Portland, Oregon, 97204. Command is in the business of providing essential services in the travel and logistical support arena.

3.      Defendant, MEHP O'Hare Operating, LLC, is a Delaware limited liability company registered to do business in Illinois. MEHP O'Hare Operating, LLC, doing business as


EXHIBIT
A

Wyndham, is in the business of providing hotel and conference facilities and services in Illinois, located at 6810 N. Mannheim Road, Rosemont, Illinois 60018.

## JURISDICTION AND VENUE

4.    This matter is properly before this Court pursuant to 28 U.S.C. Section 1332(a), as there is diversity of citizenship between the parties and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

5.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a).

6.    The activities giving rise to Command's claims were conducted by Wyndham in the State of Illinois.  Accordingly, jurisdiction is proper pursuant to 28 U.S.C. Section 1331 and 15 U.S.C. Section 78.

7.    The acts and omissions complained of in this Complaint occurred, and Wyndham is located within, this judicial district.  Accordingly, venue is appropriate pursuant to 28 U.S.C. Section 1391(b) and 15 U.S.C. Section 78.

## FACTS COMMON TO ALL COUNTS

8.    On January 21, 2003, Command entered into a written contract (hereinafter the "Contract") with the Radisson Hotel O'Hare ("Radisson"), wherein Radisson, as the subcontractor, agreed to provide hotel and conference facilities and services.  (A copy of the Contract is attached as Exhibit A and incorporated herein).  Section 14 of the Contract contains a unilateral termination provision that states, "either party may terminate this agreement at the end of each contract year by furnishing 60 days written notice to the other party".

9.    On January 12, 2004, Command and Radisson entered into a written addendum to the Contract.  (A copy of the addendum is attached as Exhibit B and incorporated herein). Paragraph two (2) of the addendum states:

> Effective 01 February, 2004, the Contractor [Command] will not be charged for unoccupied rooms or portions of rooms. Contractor will pay the unit price …. for each applicant actually lodged in the hotel.

10.    On or about January 17, 2005, Command received a letter from Radisson stating that as of November 1, 2004, the former Radisson would now be known as Wyndham O'Hare. (See Exhibit C, Wyndham January 17, 2005 letter).

11.    In July of 2006, representatives of Command visited Wyndham O'Hare's facilities located at 6810 North Mannheim Road, Rosemont, IL. The purpose of this visit was to inspect Wyndham's performance in providing hotel and conference facilities in accordance with the terms of the Contract.    Command representatives discovered that Wyndham was not providing or maintaining adequate facilities per the terms of the Contract.    In particular, Command discovered that Wyndham failed to provide an acceptable level of: housekeeping and maintenance in the sleeping rooms, service in the restaurant, and adequate space in the lounge/conference area.

12.    Accordingly, Command sent Wyndham a letter on July 28, 2006, reporting the deficiencies discovered and requesting that Wyndham fully perform according to the terms of the Contract. (See Exhibit D, Command letter July 28, 2006). Subsequent to this letter, Command continued to renew its requests that Wyndham remedy the deficiencies and fully perform its contractual obligations. Wyndham failed to address and remedy the deficiencies, and therefore, failed to fully perform its obligations under the contract.

13.    On or about November 8, 2006, in response to Command's repeated requests that Wyndham remedy deficiencies and fully perform its contractual obligations, Wyndham sent a letter to Command stating, in relevant part:

> …please accept this letter as Wyndham O'Hare's 60 day written notice of termination of the  MEPS  contract.  **Under  Section  14  of  the**

**Subcontract, either party can terminate the relationship** and we feel that it
is in our best interest to do so at this time.

Due to the fact that the arbitrary 30 day period we were given to correct
any problems you encountered has passed and that you have not made
any room night commitments for 2007, we will have to secure alternative
base business elsewhere. This being the case, **I wanted to inform you of
our decision to terminate this contractual relationship ...**   (See Exhibit
E, Wyndham November 8, 2006 letter).

14.    On December 21, 2006, Command sent a letter to Wyndham acknowledging

receipt of its November 8, 2006 notice of termination. In the letter, Command further stated, in

relevant part:

...CMS [Command] will discontinue services under the Subcontract
Agreement and permanently relocate to an alternate hotel facility
effective 01 January 2007. **Services under the Subcontract Agreement
will terminate upon completion of the breakfast meal service on Friday,
29 December 2006**. (See Exhibit F, Command letter December 2006).

Accordingly, as of December 31, 2006, Command started booking hotel and conference services

with another Radisson ("new Radisson") at a different location.

15.    On or about February 21, 2007, Command received a bill from the new Radisson

for hotel and conference services for the month of January, 2007, in the amount of $77,307.50.

Command intended to pay this amount to the new Radisson. Nevertheless, due to a system error,

Command had Wyndham and not the new Radisson listed as payee, and on March 12, 2007 a

check was issued inadvertently and erroneously to Wyndham in the amount of $77,307.50. (See

Exhibit G, Invoices and cancelled check).

16.    Command subsequently discovered this mistake and made another payment in the

amount of $77,307.50 to the new Radisson, to remedy the error.

17.    Surprisingly, shortly thereafter, Wyndham issued an invoice for **unused** hotel and

conference services for the month of January, 2007 in the amount of $77,287.14. Remarkably,

this invoice was for an amount very close to the monies it erroneously received from Command. (See Exhibit G). Command did not reserve or use any rooms or conference services in the month of January, 2007 with Wyndham.

18. On or about March 30, 2007, Sam Rosenbaum ("Rosenbaum") of Command telephoned Wyndham and spoke with Amy in the Accounting Department regarding the erroneous payment. Rosenbaum told Amy that Command was billed for unused services for the month of January, 2007, and that the charge was not in accordance with the terms of the Contract. Accordingly, Rosenbaum asked that Command's monies be returned. In response, Amy transferred Rosenbaum to the Controller, Debbie, with whom he left a message regarding the same. In response to his inquiry, on the same day, Rosenbaum received a telephone call back from Amy in the Accounting Department. Amy confirmed receipt of the monies and informed Rosenbaum that Wyndham decided to keep Command's monies. Wyndham stated that because it was under contract with Command until the end of January, 2007, it was entitled to the monies.

19. Subsequently, on May 15, 2007, in response to Command's ongoing inquiries and renewed demands for a refund, counsel for Wyndham, Ian Linnabary of the law firm Reno & Zahm, LLP, wrote a letter to Command's counsel. In the letter, Wyndham does not acknowledge the January 12, 2004 addendum that clearly states that Command will not be charged for unoccupied rooms, or Command's termination letter of December 21, 2006. Instead, Wyndham states that "[O]ver the course of the parties relationship, Wyndham had come to expect that CMS [Command] would reserve and pay for an average of approximately 800 rooms per month". (See Exhibit H, Wyndham May 2007 letter, para.7). Accordingly, Wyndham refused to refund Command the $77,307.50 per its demands.

## COUNT I
## BREACH OF CONTRACT

20.    Command reincorporates and realleges Paragraphs 1-19 as if fully set forth herein.

21.    Command and Wyndham formed a Contract, the terms of which specified that for a monthly fee, Wyndham would provide hotel and conference facilities and services.

22.    As part of that Contract, Command and Wyndham subsequently executed an addendum that states Command would not be charged for unoccupied rooms, and would only be responsible to pay for rooms that Command's applicants actually lodged in.

23.    Section 14 of the Contract clearly states that either party may terminate this agreement.  No where does the Contract provide that once the agreement is terminated by either party that the agreement continues for a specified duration of time.

24.    Command fully performed under the Contract by paying Wyndham for rooms actually lodged in, up until the end of December, 2006.

25.    Command did not reserve or use any of Wyndham's facilities in January, 2007 or at any time thereafter.

26.    Wyndham breached its contractual obligations to Command by ignoring Command's termination of services, intentionally issuing an invoice for unused services in January, 2007, and by collecting and refusing to refund monies erroneously paid and not owed to Wyndham per the terms of the Contract.

27.    As a result of Wyndham's breach of contract, Command has been damaged.

28.    Command has further been damaged by the fact that Wyndham has retained and refused to refund these monies, hindering Command's ability to secure facilities elsewhere.

WHEREFORE, Plaintiff, Command Management Services Inc., respectfully requests that judgment be entered in its favor and against the Defendant in the amount of $77,307.50, plus interests, costs, and all other relief that this Court deems just and equitable.

## COUNT II
## CONVERSION

29.     Command reincorporates and realleges Paragraphs 1-19 as if fully set forth herein.

30.     Wyndham holds Command's monies erroneously paid for the month of January, 2007, in the amount of $77,307.50.

31.     Even though Wyndham has knowledge that the monies do not belong to it, Wyndham has nevertheless converted said funds for its own use.

32.     Demand has been made upon Wyndham for the return of these monies.

33.     Wyndham has refused to turn over Command's monies, with the intent to permanently keep Command's monies.

WHEREFORE, Plaintiff, Command Management Services, Inc., respectfully requests that judgment be entered in its favor and against the Defendant in the amount of $77,307.50, plus interests, costs, fees, and all other relief that this Court deems just and equitable.

Respectfully submitted,

COMMAND MANAGEMENT SERVICES, INC.

By:/s/Angelique Palmer_____
            One of Its Attorneys

Ronald A. Damashek (ARDC # 6183820)
Andrew H. Eres (ARDC #6237032)
Angelique Palmer (ARDC #6282041)
Stahl Cowen Crowley Addis LLC
55 W. Monroe Street, Suite 1200
Chicago, Illinois 60603
Telephone:  (312) 641-0060
Facsimile:  (312) 641-6959

01/23/2003 14:15 FAX 847 297 87°°           RADISSON O'HARE ROSEMONT           ☒002
  01/21/2003  14:41    56322513                CMS MARKETING                  PAGE  02/06



02 Chicago – Radisson Hotel O'Hare .xxx          (Revision 01; 21 January 2003)

## SUBCONTRACT FOR SERVICES
## AGREEMENT

This Subcontract for Services Agreement is made between **COMMAND MANAGEMENT SERVICES, INC., Portland, OR** (hereafter Contractor) and the **RADISSON HOTEL O'HARE, Rosemont, IL** (hereafter Subcontractor). Throughout this document the term "subcontract", "agreement" and "subcontract agreement" are used and are to be considered as referring to this document.

This is an Agreement for the performance of services for applicants processing at the **Chicago, Illinois Military Entrance Processing Station (MEPS)**. Contractor and Subcontractor are bound by the terms and conditions of this Agreement. This Agreement is entirely contingent upon the authorized U.S. Government representatives inspecting and accepting the Subcontractor performance facilities[1] as being suitable for the performance of services. Both parties agree herewith to be bound by this Agreement.

The Contractor and Subcontractor agree as set forth below:

1.    Statement of Work (SOW):

      a.  The Contractor shall do the following:

            (1)    provide all necessary supervision, labor, materials, supplies, and facilities to perform the work as itemized in the Prime Contract statement of work, except as specifically subcontracted in this agreement; and,

            (2)    Pay for the performance of contract work performed by the Subcontractor on the basis of unit price (unit price is inclusive of all applicable taxes and gratuities), as set forth in Appendix A.

      b.  The Subcontractor shall have the following performance responsibilities:

            (1)    Provide all the supervision, labor, equipment, materials and supplies to perform all duties and responsibilities of the subcontract in accordance with the terms and conditions of the subcontract and the Statement of Work (SOW) set out in Appendix B. In addition Subcontractor understands the inclusion of the Department of Labor wage determination and its applicability to this Agreement.

---

[1]"Performance facilities" describes any and all facility(ies) provided by the subcontractor for the purposes of lodging, feeding and/or transporting applicants as defined within the SOW incorporated herein.

PAGE 1 – SUBCONTRACT FOR SVCS



EXHIBIT

A

02 Chicago - Radisson Hotel O'Hare .sca                (Revision 01; 21 January 2003)

       (2)    Perform the specific subcontracted work as detailed herein and for the prices specified in Appendix A. Unit prices shall be inclusive of all applicable taxes and gratuities.

2.    Payment for Services:

    The Contractor shall pay Subcontractor for work performed on a monthly schedule. Payments due the Subcontractor will be payable by Contractor not more than ten (10) days after Contractor has received payment from the Government under the Prime Contract for the particular services period. Payment will be made as follows: Subcontractor shall present an invoice at the end of a month of operation. The invoiced quantities of rooms and meals shall be in agreement with a daily master folio issued from the hotel front desk to the Contractor's on-site representative. Contractor's on-site representative will reconcile the daily lodging totals with Subcontractor to come to an agreement within a short time after the end of the month, usually during the first 5 days. The Contractor shall pay the Subcontractor within 30-45 days after completion of a month's work.

3.    Authorized Representatives: The authorized representatives of the parties to this Subcontract are as follows:

    a. Contractor: The following individuals shall be designated as the representative, and alternate for the Contractor.

        Monica C. Anderson, President/CEO
        T. A. Moore, Executive Vice President (alternate)
        Command Management Services, Inc.
        621 S.W. Alder St. Ste. 810
        Portland, OR 97205
        tele: (503) 224 - 5800
        fax: (503) 224 - 6848

    b. Subcontractor: The following individuals shall be designated as the representative for the Subcontractor.

        Heidi Prosser, Director of Sales & Marketing
        Radisson Hotel O'Hare
        5810 North Mannheim Road
        Rosemont, IL 60018
        tele: (847) 297 - 1234
        tele: (847) 297 - 6144 Direct
        fax: (847) 297 - 8744

4.    If the Government fails to allow location of Contract performance facilities to the facilities proposed by Subcontractor, this Agreement shall lapse, and neither party shall have any further

PAGE 2 - SUBCONTRACT FOR SVCS

01/23/2003 14:15 FAX 847 297 8744        RADISSON O'HARE ROSEMONT              004
   01/21/2003  14:41     50322613              CMS MARKETING                  PAGE  04/06

02 Chicago - Radisson Hotel O'Hare .sca        (Revision 01; 21 January 2003)

obligation or duty to the other. Each party shall stand its own costs or expenses incurred in the proposal process.

5.      Subcontractor agrees to provide up to two (2) room-nights per month for Contractor use in coordinating, training and retraining subcontractor personnel and general oversight of the contract activities. Such room will be provided on a complimentary basis. All other associated room costs such as telephone, food and drink, valet service and all other miscellaneous charges will be borne by the Contractor and Contractor personnel.

6.      Subcontractor shall provide a dedicated room for Contractor use to set up as an applicant lounge. Such provided room shall be of a size to comfortably hold 50 - 60 persons in various configurations. Space must be lockable and cleaned daily. Contractor shall provide large-screen television and accessories, games, etc.; subcontractor shall provide tables, chairs and lounge furniture.

7.      Subcontractor is obligated to provide full and complete performance in accordance with the specifications of this Agreement, to include all provisions for lodging which consistently meet the requirements of the U.S. Government.

8.      Contractor agrees to furnish comprehensive written procedures, in the form of a Standing Operating Procedures (SOP) covering all operational aspects expected under this Agreement. Contractor shall train subcontractor staff in the implementation of the SOP.

9.      In the event that the facility(ies) are subject to sale, transfer, assignment, lease or otherwise subject to a change in ownership or management, the Subcontractor agrees that it will exert its best efforts to include the continuation of this Agreement as part of the transaction.

10.     Subcontractor agrees that it shall not attempt to collect the cost of lodging or meals as described herein directly from the applicants. All invoices will be presented directly to the Contractor for payment.

11.     Subcontractor agrees to provide current proof of insurance to the contractor. Such proof shall name the Contractor and its clients as additionally insured within the insurance umbrella.

12.     Contractor will order rooms daily, based upon requirements received from the Government, and will cancel rooms as necessary until 8:00 p.m. daily. Subcontractor agrees to reserve a minimum of 50 double rooms until 8:00 pm daily (Sunday through Thursday, plus one Friday per month) unless the rooms are canceled earlier by the Contractor.

PAGE 3 - SUBCONTRACT FOR SVCS

01/23/2003 14:16 FAX 847 297 8744        RADISSON O'HARE ROSEMONT        ☒006
  01/21/2003  14:41    50322515            CMS MARKETING                 PAGE  05/06

02 Chicago - Radisson Hotel O'Hare .tos          (Revision 01; 21 January 2003)

**13.**   Subcontractor agrees to replace the safety signage in the swimming pool area; and to monitor the video surveillance camera located in the swimming pool area.

**14.**   Either party may terminate this agreement at the end of each contract year by furnishing 60 days written notice to the other party.

*AGREED TO this* ____1ˢᵗ____ *day of January, 2003.*

SUBCONTRACTOR                     CONTRACTOR
Radisson Hotel O'Hare             Command Management Services, Inc.

BY: _____      BY: _____
    Heidi Prosser  *Andrea Cooper*     Monica Anderson
    Director of Sales & Marketing      President

Appendices:

    APPENDIX A — PRICE AND PAYMENT SCHEDULE

    APPENDIX B — STATEMENT OF WORK (SOW)

    APPENDIX C — US Dept of Labor  WAGE DETERMINATION

PAGE 4 – SUBCONTRACT FOR SVCS

01/23/2004 17:44 FAX 847 297 8744          RADISSON O HARE ROSEMONT

FROM :CMS                          FAX NO. :5034452564              23 2004 10:59AM  P2
CHICAGO MEPS - RADISSON HOTEL CHICAGO                               REVISION PRICING: 01/23/2004

# APPENDIX A
### PRICE AND PAYMENT SCHEDULE

| ITEM | | ESTIMATED QUANTITY (1) | UNIT OF MEASURE | UNIT PRICE (2) | ESTIMATED AMOUNT |
|---|---|---|---|---|---|
| **Base Period:  (for the period: 1 Jan 2004 through 31 Aug 2004)(3)** | | | | | |
| 0001A | Single Lodging Requirements, Per Appendix  B. | 1,000 | Person | N/A | COMPLETED |
| 0001B | Double Lodging Requirements, Per Appendix  B. | 22,000 | Person | N/A | COMPLETED |
| 0001C | Meals Requirements, Per Appendix B. | 23,000 | Person | N/A | COMPLETED |
| 0001D | Applicant Lounge Requirements, Per Appendix B. | 261 | Days | N/A | COMPLETED |
| **Contractor's First Option Period:  (for the period: 1 Feb 2004 through 31 Jan 2005)** | | | | | |
| 0002A | Single Lodging Requirements, Per Appendix  B. | 1,000 | Person | $23.78 | $23,780.00 |
| 0002B | Double Lodging Requirements, Per Appendix  B. | 22,000 | Person | $23.78 | $523,160.00 |
| 0002C | Meals Requirements, Per Appendix B. | 23,000 | Person | $17.39 | $399,970.00 |
| 0002D | Applicant Lounge Requirements, Per Appendix B. | 261 | Days | INCLUDED | INCLUDED |
| **Contractor's Second Option Period:  (for the period: 1 Feb 2005 through 31 Jan 2006)** | | | | | |
| 0003A | Single Lodging Requirements, Per Appendix  B. | 1,000 | Person | $24.49 | $24,490.00 |
| 0003B | Double Lodging Requirements, Per Appendix  B. | 22,000 | Person | $24.49 | $538,780.00 |
| 0003C | Meals Requirements, Per Appendix B. | 23,000 | Person | $17.91 | $411,930.00 |
| 0003D | Applicant Lounge Requirements, Per Appendix B. | 261 | Days | INCLUDED | INCLUDED |
| **Contractor's Third Option Period:  (for the period: 1 Feb 2006 through 31 Jan 2007)** | | | | | |
| 0004A | Single Lodging Requirements, Per Appendix  B. | 1,000 | Person | $25.22 | $25,220.00 |
| 0004B | Double Lodging Requirements, Per Appendix  B. | 22,000 | Person | $25.22 | $554,840.00 |
| 0004C | Meals Requirements, Per Appendix B. | 23,000 | Person | $18.45 | $424,350.00 |
| 0004D | Applicant Lounge Requirements, Per Appendix B. | 261 | Days | INCLUDED | INCLUDED |
| **Contractor's Forth Option Period:  (for the period: 1 Feb 2007 through 31 Jan 2008)** | | | | | |
| 0005A | Single Lodging Requirements, Per Appendix  B. | 1,000 | Person | $25.98 | $25,980.00 |
| 0005B | Double Lodging Requirements, Per Appendix  B. | 22,000 | Person | $25.98 | $571,560.00 |
| 0005C | Meals Requirements, Per Appendix B. | 23,000 | Person | $19.00 | $437,000.00 |
| 0005D | Applicant Lounge Requirements, Per Appendix B. | 261 | Days | INCLUDED | INCLUDED |
| | | | | **TOTAL:** | **$3,951,060.00** |

(1) Service required Sunday through Thursday each week, plus an estimated 1 Friday per month.

(2) Rates are inclusive of all applicable tax and gratuities.

(3) Basis of payment will be month-end reconciliation of daily master folios.

Note 1: Payment will be made for rooms not automatically cancelled by CMS by 8:00p.m., plus meals for applicants actually lodged.

Note 2: This agreement may be terminated at the end of each contract year written notice by either party.

_____          1/23/2004        _____          1/23/2004
Arthur Cooper, Director of Sales                    Monica Anderson, President
RADISSON HOTEL O'HARE                               COMMAND MANAGEMENT SERVICES, INC

01/23/2004 17:45 FAX 847 297 8744          RADISSON O HARE ROSEMONT

FROM :CMS                    FAX NO. :5034452564        Jr  23 2004 10:40AM  P3              *Chicago*

12 January 2004

2004 Chicago Radisson O'Hare
Addendum to Subcontract Agreement

## ADDENDUM TO SUBCONTRACT FOR SERVICES
## AGREEMENT

This addendum to the previously executed Subcontract for Services Agreement is made between COMMAND MANAGEMENT SERVICES, INC., Portland, OR (hereafter Contractor) and the RADISSON HOTEL O'HARE, Rosemont, IL (hereafter Subcontractor).

Effective 01 February, 2004, the Contractor will not be charged for unoccupied rooms or portions of rooms.  Contractor will pay the unit price in Appendix A of the subcontract agreement (including lodging, supper, breakfast, and transportation as applicable) for each applicant actually lodged in the hotel.  Un-issued room keys will be returned to the hotel front desk at the end of the applicant check-in period each night.

Authorized Representatives:

    a.  <u>Contractor</u> :The following individuals shall be designated as the representative, and alternate for the Contractor.

        Monica C. Anderson, President/CEO
        T. A. Moore, Vice President (alternate)
        Command Management Services, Inc.
        411 S.W. 2nd Avenue, Suite. 200
        Portland, OR 97204
        tel: (503) 224-5600
        fax: (503) 224-5848

    b.  <u>Subcontractor</u>.  The following individuals shall be designated as the representative, and alternate for the Subcontractor.

        Arthur Cooper, General Manager
        Radisson Hotel O'Hare
        6810 North Mannheim Road
        Rosemont, IL 60018
        tel:   (847) 297 - 1234
        fax:  (847) 297 - 5287

*AGREED TO this 12th Day of January, 2004.*

SUBCONTRACTOR                              CONTRACTOR
Radisson Hotel O'Hare                      Command Management Services, Inc.

BY: _____             BY: _____
    Arthur Cooper                              Monica Anderson
    General Manager                            President

EXHIBIT
*B*
Bunting No. 5209

01/17/2005 14:08 FAX 847 297 8744

Beata Chmielewska
Sales & Internet Administrator
Wyndham O'Hare
6810 N Mannheim Rd
Rosemont Il, 60018
Phone 847-297-1234
Direct 847-759-6145
Fax 847-297-8744

Dear Jean Houston

I'm Happy to announce that former Radisson O'Hare is now Wyndham O'Hare. The conversion was completed on Nov 01, 2004.

We do apologize for any inconvienience we may cause you.

Sincerely
*Beata Chmielewska*
Beata Chmielewska

01-17-05
Bud for contract file.

EXHIBIT
C

APR. 22. 2007   4:20PM    COMMAND MANAGEMENT SERVICES                    NO. 0113.   P.  23

July 28, 2006

Andrea Meyer, General Manager
Wyndham O'Hare
6810 North Mannheim Road
Rosemont, IL 60018

Re:    MEPS Contract

Dear Ms. Meyer:

It was a pleasure to meet you on July 18 during the inspection by the USMEPCOM
Eastern Sector Commander, and we sincerely appreciate the courtesy we received from
you and your staff during our visit to Chicago.

During our stay at the Wyndham, we were told you were unavailable, so we met with
Jeremy Schaffer to discuss several issues regarding the level of services furnished under
our subcontract agreement in support of our MEPS contract. We discussed the
maintenance condition of the sleeping rooms in detail, the inadequate size of the
applicant lounge, and meal service in the restaurant. Hopefully, Jeremy has subsequently
had the opportunity to discuss these issues with you.

Jeremy explained that new windows are on order for the older section of the sleeping
areas and that the room entry doors are scheduled to be replaced in the sleeping rooms
where the male applicants are routinely lodged. Jeremy also shared with us your plans
for replacement of the floor and major equipment in the kitchen.

The concern we expressed to Jeremy, however, was the routine level of general
housekeeping and maintenance we noted in the sleeping rooms in preparation for the
USMEPCOM inspection. As you know, our contract liaison inspects a minimum of five
rooms each day after she receives the keys from the front desk. The first room we
checked had not been cleaned from the previous occupancy. Had we not checked the
room, we would have assigned two applicants to the room and would have undoubtedly
received a formal complaint from our client. The other rooms we checked had peeling
wallpaper, mildew on the grout, loose carpet, carpet that was not vacuumed, cracked
sinks, damaged ceilings, and personal items between the mattress and box springs and
under the beds.



APR. 22. 2007  4:21PM    COMMAND MANAGEMENT SERVICES              NO. 0113   P. 26

Sent 11-8-06
Ams

November 8, 2006

Monica Anderson
CMS Corporation
411 SW 2nd Avenue
Portland, Oregon 97204

RE: MEPS Contract and Subcontract Issues

Dear Ms. Anderson,

In my letter dated August 31, 2006, I explained how we have addressed the concerns you had after your July inspection. Since that date, I have regretfully not heard from you or your corporation. Therefore, please accept this letter as Wyndham O'Hare's 60 day written notice of termination of the MEPS contract. Under Section 14 of the Subcontract, either party can terminate the relationship and we feel that it is in our best interest to due so at this time.

We cannot continue to hold room nights under the contract beyond January 31st, 2007 while waiting for your response. Due to the fact that the arbitrary 30 day period we were given to correct any problems you encountered has passed and that you have not made any room night commitments for 2007, we will have to secure alternative base business elsewhere. This being the case, I wanted to inform you of our decision to terminate this contractual relationship with the current terms in advance of the ending date so that both parties could pursue other avenues if needed. However, should you desire to continue our relationship we would welcome discussion to that end. We would be pleased to negotiate new terms for contract that would come into effect on February 1st, 2007.

Please contact me via email or written response at your earliest to discuss the options I have laid out above. Thank you in advance for your time attention to this matter.

Sincerely,

Andrea J. Mayer
General Manager



EXHIBIT

E

APR. 22. 2007  4:21PM    COMMAND MANAGEMENT SERVICES                NO. 0113   P. 28

December 21, 2006

Andrea Mayer, General Manager
        Or;
Current General Manager
Wyndham O'Hare
6810 North Mannheim Road
Rosemont, IL 60018

Re:    Notice of Subcontract Termination and Relocation

Dear Ms. Mayer:

Based upon your November 8, 2006 written notice of termination of our Subcontract
Agreement to furnish lodging and meals for applicants processing through the Chicago
Military Entrance Processing Station (MEPS), CMS will discontinue services under the
Subcontract Agreement and permanently relocate to an alternate hotel facility effective
01 January 2007. Services under the Subcontract Agreement will terminate upon
completion of the breakfast meal service on Friday, 29 December 2006.

Sincerely,


Jeff Downes
Vice President



EXHIBIT

F

APR. 22. 2007 4:21PM COMMAND MANAGEMENT SERVICES 18472972439    NO. 0113    P. 312

1450 E. Touhy Avenue
Des Plaines, IL 60018

# *Radisson*

RADISSON HOTEL CHICAGO O'HARE

Invoice No.    131

46.35 / 36.85 / 10.30

# INVOICE

### Customer

| | |
|---|---|
| Name | Command Management Services, Inc. |
| Address | 411 SW 2nd Ave, Suite 200 |
| City | Portland    State OR    ZIP 97204 |
| Phone | |

Jan-07

| Qty | Description | Unit Price | TOTAL |
|---|---|---|---|
| 821 | Double occupancy rooms | $90.00 | $73,890.00 |
| 41 | Single occupancy rooms | $55.00 | $2,255.00 |
| 10 | Unreturned/vacant rooms | $70.00 | $700.00 |
| 4 | Overflow meals | $10.00 | $40.00 |
| 1 | Photocopy charges Feb. 10th, 16th, 18th | $52.50 | $52.50 |
| 1 | Damaged duvet cover & duvet insert (per Sharon 2/07/07) | $250.00 | $250.00 |
| 2 | Phone lines charges | $60.00 | $120.00 |

ENTERED FEB 28 2007

| | |
|---|---|
| Subtotal | $77,307.50 |
| Less Deposit | |
| CHARGED | |
| TOTAL | $77,307.50 |

### Payment Details

○ Cash
◉ Check
○ Credit Card

Name
CC #
Expires

Office Use Only

*If you have any questions, please contact Accounting*

*Thank you for your business!*

RECEIVED
FEB 2 1 2007
BY: -------------------



EXHIBIT
G

APR. 22. 2007  4:21PM    COMMAND MANAGEMENT SERVICES          NO. 0113  P. 33

Page 1 of 1

nt Preview

## Stops - Images - Search®

Image

Image Front:                                                        27969

COMMAND MANAGEMENT SERVICES, INC.
411 SW 2ND AVENUE, SUITE 200
PORTLAND, OR 97204-3403
(503) 224-5500

WELLS FARGO BANK, N.A.
WWW.WELLSFARGO.COM
24-4441/1250

3/12/2007

PAY TO THE
ORDER OF    WYNDHAM O'HARE                               $ **77,307.50**

Seventy-Seven Thousand Three Hundred Seven and 50/100********************** DOLLARS

WYNDHAM O'HARE
5810 N. MANNHEIM RD
ROSEMONT, IL 60018

MEMO:

⑈027969⑈ ⑆123006800⑈0 105007678⑈          ⑈000 7730750⑈

Image Back:

Item Details

Amount: $77,307.50
Check Number: 27969
Posting Date: 03/21/2007
As Of Date: 03/21/2007

Account Name: COMMAND MANAGEME
Account Number: 105007678
Routing Number: 123006800
Type Code/Description: 475/CHECK PAID
Item Sequence Number: 008848979081

© Copyright 2007 Wells Fargo. All rights reserved.

3/30/200

APR. 22. 2007  4:21PM    COMMAND MANAGEMENT SERVICES              NO. 0113   P. 34

MEPS
411 S.W. 2nd Avenue
Suite 200
Portland, OR 97204-3403

Arrival:      01/01/07                    Room:        9005
Departure     01/31/07                    Cashier:       19
                                          Page:          1
                                          Departure Time: 6:43

INVOICE   NO. 2693622    WYNDHAM HOTEL O'HARE

| Date | Text | Room | Charges | Credits |
|------|------|------|---------|---------|
| | January-07 | | | |
| 1/1 | 700 Double Rooms @ $87.34 | | 61,138.00 | |
| 1/1 | 120 Odd Double Rooms @ 68.89 | | 8,276.80 | |
| 1/1 | 100 Rooms not used @ 50.44 | | 5,044.00 | |
| 1/1 | 22 Triple Rooms @ 128.47 | | 2,826.34 | |
| 1/1 | 0 Dinners  @ $12.50 | | | |
| 1/1 | 0 Breakfasts @ $5.95 | | | |

                                Total     77,287.14

                        Balance Direct Bill    77,287.14   USD

Thank you for choosing Wyndham Hotel O'Hare.


For your next stay with us,  please call (847) 297-8464.

RENO & ZAHM LLP

ATTORNEYS AND COUNSELORS AT LAW

IAN K. LINNABARY
IKL@RENOZAHM.COM

May 15, 2007

**Via Email: jhamilton@bjllp.com**

Jessica T. Hamilton, Esq.
Ball Janick LLP
101 Southwest Main Street, Suite 1100
Portland, OR 97204-3219

Re:     **Wyndham O'Hare/Command Management Services, Inc.**

Dear Ms. Hamilton:

I am in receipt of your letter dated April 27, 2007, and I understand that you represent Command Management Services, Inc. ("CMS"). Please allow this letter to respond to your client's renewed demand for payment of $77,307.50.

CMS erroneously assumes that my client ("Wyndham") believes it is entitled to retain the subject funds "for services that were never provided. . ." This is simply not the case. Wyndham is entitled to retain the money as partial compensation for the damages it suffered as a result of your client's breach of contract.

The parties' contract specifically provides at paragraph 14 "either party may terminate this agreement at the end of each contract year by furnishing 60 days written notice to the other party." The contract language is quite clear. The agreement could be terminated by either party upon appropriate notice "at the end of each contract year." Nothing in the contract provides for earlier termination.

Absent an express agreement between the parties to terminate the contract prematurely, the contract could only be terminated at the end of its natural term on January 31st. Where the terms of a contract are clear and unambiguous, they will be given effect as written, and Illinois courts will not impose requirements inconsistent with the express, unambiguous contract language.

CMS believes Wyndham intended to modify the contract and terminate the parties' contract in advance of the January 31st expiration date. However, nothing in Wyndham's letter conveys an

EXHIBIT

H

Jessica T. Hamilton, Esq.
May 15, 2007
Page 2

intent to terminate the contract on a date other than the one set forth therein, January 31, 2007. CMS misconstrues the plain language of Wyndham's November 8, 2006 letter which provided that Wyndham would no longer provide services "under the contract beyond January 31, 2007." That date was not chosen arbitrarily. Wyndham reviewed the contract and understood that it could only be terminated at the conclusion of its natural term. Therefore, Wyndham sent an appropriate termination notice sixty days in advance of January 31, 2007 as required by paragraph 14 of the parties' contract.

There was no "meeting of the minds" sufficient to modify the plain language of the contract. Wyndham did not intend to terminate the contract before January 31, 2007. Rather, CMS unilaterally terminated the contract on December 29, 2006 without Wyndham's consent. There is no evidence to demonstrate the parties' mutual intent to circumvent the express language of the contract and terminate the contract prematurely, and absent such intent, Wyndham is entitled to the full benefit of its bargain.

Over the course of the parties' relationship, Wyndham had come to expect that CMS would reserve and pay for an average of approximately 800 rooms per month. This reasonable expectation is grounded firmly in the parties' prior course of dealing. From January though December 2005, CMS reserved an average of 785 rooms per month with the lowest room reservations occurring in April at 576 and the greatest occurring in August at 1,126. From January through November 2006, CMS reserved an average of 757 rooms per month with a low of 557 rooms in April and a high of 1,027 rooms in August. The number of room reservations and CMS's subsequent payments to Wyndham established a clear course of dealing between the parties upon which Wyndham relied. When CMS unilaterally terminated the contract prematurely in December 2006, Wyndham was given only eight days notice and was understandably unable to mitigate its damages.

Despite suffering significant financial harm as a result of CMS's contract breach, Wyndham remains amenable to discussing a reasonable resolution of this matter. However, they will not pay CMS the $77,307.50 it demands. If your client is unwilling to move from its position, I invite you to file suit. I will accept service on behalf of my client.

Sincerely,

Ian K. Linnabary

IKL:sae
cc:        Mr. Jeremy Schaeffer (via Email)

@PFDesktop\. DDMA/WORLDOX/F/DOCS/WYNDHAM/CMS/06066929.WPD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COMMAND MANAGEMENT SERVICES, INC., an Oregon corporation, | ) )  ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No.: 2007 – C – 7017 |
| MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE, | ) ) ) | |
| Defendant. | ) ) | |

**ANSWER TO FIRST AMENDED COMPLAINT**
**AND AFFIRMATIVE DEFENSES**

Defendant, MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE

("Wyndham"), by and through its attorneys, Reno & Zahm LLP, hereby answers Plaintiff's,

COMMAND MANAGEMENT SERVICES, INC. ("Command"), First Amended Complaint and

in support thereof states as follows:

1.     This is a breach of contract action arising out of Wyndham's failure to refund
payment inadvertently and erroneously paid by Command and intentionally retained by Wyndham
for products and services never received by Command.

**ANSWER:**     Wyndham admits that Command's First Amended Complaint alleges a breach

of contract, but Wyndham denies many of the substantive allegations set forth therein as more

particularly detailed below.

**THE PARTIES**

2.     Plaintiff, Command, is an Oregon corporation, with its principal place of business at
411 SW 2nd Avenue, Suite 200, Portland, Oregon, 97204. Command is in the business of providing
essential services in the travel and logistical support arena.


EXHIBIT
*B*

**ANSWER:**    Wyndham lacks sufficient knowledge upon which it may admit or deny the allegations contained in paragraph 2 of Command's First Amended Complaint and, therefore, denies the same and demands strict proof thereof.

3.    Defendant, MEHP O'Hare Operating, LLC, is a Delaware limited liability company registered to do business in Illinois.  MEHP O'Hare Operating, LLC, doing business as Wyndham, is in the business of providing hotel and conference facilities and services in Illinois, located at 6810 N. Mannheim Road, Rosemont, Illinois 60018.

**ANSWER:**    Wyndham admits the allegations set forth in paragraph 3 of Command's First Amended Complaint.

### JURISDICTION AND VENUE

4.    This matter is properly before this Court pursuant to 28 U.S.C. Section 1332(a), as there is diversity of citizenship between the parties and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

**ANSWER:**    Wyndham admits the allegations set forth in paragraph 4 of Command's First Amended Complaint.

5.    Venue in this judicial district is proper pursuant to 28 U.S.C. 1391(a).

**ANSWER:**    Wyndham admits the allegations set forth in paragraph 5 of Command's First Amended Complaint.

6.    The activities giving rise to Command's claims were conducted by Wyndham in the State of Illinois.  Accordingly, jurisdiction is proper pursuant to 28 U.S.C. Section 1331 and 15 U.S.C. Section 78.

**ANSWER:**    Wyndham admits the allegations set forth in paragraph 6 of Command's First Amended Complaint.

7.    The acts and omissions complained of in this Complaint occurred, and Wyndham is located within, this judicial district.  Accordingly, venue is appropriate pursuant to 28 U.S.C. Section 139 1(b) and 15 U.S.C. Section 78.

2

**ANSWER:**     Wyndham admits the allegations set forth in paragraph 7 of Command's First

Amended Complaint

## FACTS COMMON TO ALL COUNTS

8.     On January 21, 2003, Command entered into a written contract (hereinafter the "Contract") with the Radisson Hotel O'Hare ("Radisson"), wherein Radisson, as the subcontractor, agreed to provide hotel and conference facilities and services.  (A copy of the Contract is attached as Exhibit A and incorporated herein).  Section 14 of the Contract contains a unilateral termination provision that states, "either party may terminate this agreement at the end of each contract year by furnishing 60 days written notice to the other party".

**ANSWER:**     Wyndham admits the allegations set forth in the first sentence of paragraph

8 of Command's First Amended Complaint and further states that the contract language speaks for

itself.

9.     On January 12, 2004, Command and Radisson entered into a written addendum to the Contract. (A copy of the addendum is attached as Exhibit B and incorporated herein).  Paragraph two (2) of the addendum states:

> Effective 01 February, 2004, the Contractor [Command] will not be charged for unoccupied rooms or portions of rooms. Contractor will pay the unit price .... for each applicant actually lodged in the hotel.

**ANSWER:**     Wyndham admits the allegations set forth in the first sentence of paragraph

9 of Command's First Amended Complaint and further states that the contract language speaks for

itself.

10.     On or about January 17, 2005, Command received a letter from Radisson stating that as of November 1, 2004, the former Radisson would now be known as Wyndham O'Hare.  (See Exhibit C, Wyndham January 17, 2005 letter).

**ANSWER:**     Wyndham admits the allegations set forth in paragraph 10 of Command's First

Amended Complaint.

11.     In July of 2006, representatives of Command visited Wyndham's O'Hare facilities located at 6810 North Mannheim Road, Rosemont, IL.  The purpose of this visit was to inspect Wyndham's performance in providing hotel and conference facilities in accordance with the terms of the Contract.  Command representatives discovered that Wyndham was not providing or

maintaining adequate facilities per the terms of the Contract.  In particular, Command discovered that Wyndham failed to provide an acceptable level of: housekeeping and maintenance in the sleeping rooms, service in the restaurant, and adequate space in the lounge/conference area.

**ANSWER:**    Wyndham admits that in July of 2006, representatives of Command visited

Wyndham's facilities, but Wyndham lacks knowledge upon which it may form a belief as to the

purpose of Command's visit or what Command believes it discovered at the facility.  Wyndham

denies that its facilities were inadequate or that it failed to provide an acceptable level of

housekeeping and maintenance in the sleeping rooms, service in the restaurant and adequate space

in the lounge/conference area and demands strict proof thereof.

12.    Accordingly, Command sent Wyndham a letter on July 28, 2006, reporting the deficiencies discovered and requesting that Wyndham fully perform according to the terms of the Contract. (See Exhibit D, Command letter July 28, 2006).  Subsequent to this letter, Command continued to renew its requests that Wyndham remedy the deficiencies and fully perform its contractual obligations.  Wyndham failed to address and remedy the deficiencies, and therefore, failed to fully perform its obligations under the contract.

**ANSWER:**    Wyndham admits that Command sent Wyndham a letter dated July 28, 2006

and further states that the content of the letter speaks for itself.  Wyndham denies the remaining

allegations set forth in paragraph 12 of Command's First Amended Complaint and demands strict

proof thereof.

13.    On or about November 8, 2006, in response to Command's repeated requests that Wyndham remedy deficiencies and fully perform its contractual obligations, Wyndham sent a letter to Command stating, in relevant part:

> ...please accept this letter as Wyndham O'Hare's 60 day written notice of termination of the MEPS contract. **Under Section 14 of the Subcontract, either party can terminate the relationship** and we feel that it is in our best interest to do so at this time.
>
> Due to the fact that the arbitrary 30 day period we were given to correct any problems you encountered has passed and that you have not made any room night commitments for 2007, we will have to secure alternative base business elsewhere.  This being the case, **I wanted to inform you of our decision to terminate this**

4

**contractual relationship** ... (See Exhibit E, Wyndham November 8, 2006 letter).

**ANSWER:**   Wyndham admits that on or about November 8, 2006, it sent a letter to Command, but denies that it was sent "in response to Command's repeated requests that Wyndham remedy deficiencies and fully perform its contractual obligations" and further states that the content of the letter speaks for itself.

14.   On December 21, 2006, Command sent a letter to Wyndham acknowledging receipt of its November 8, 2006 notice of termination. In the letter, Command further stated, in relevant part:

> ... CMS [Command] will discontinue services under the Subcontract Agreement and permanently relocate to an alternate hotel facility effective 01 January 2007. **Services under the Subcontract Agreement will terminate upon completion of the breakfast meal service on Friday, 29 December 2006.** (See Exhibit F, Command letter December 2006).

Accordingly, as of December 31,2006, Command started booking hotel and conference services with another Radisson ("new Radisson") at a different location.

**ANSWER:**   Wyndham admits that Command sent Wyndham a letter dated December 21, 2006 and further states that the content of the letter speaks for itself. Wyndham lacks sufficient knowledge upon which it may admit or deny the remaining allegations contained in paragraph 14 of Command's First Amended Complaint and, therefore, denies the same and demands strict proof thereof.

15.   On or about February 21, 2007, Command received a bill from the new Radisson for hotel and conference services for the month of January, 2007, in the amount of $77,307.50. Command intended to pay this amount to the new Radisson. Nevertheless, due to a system error, Command had Wyndham and not the new Radisson listed as payee, and on March 12, 2007 a check was issued inadvertently and erroneously to Wyndham in the amount of $77,307.50. (See Exhibit G, Invoices and cancelled check).

**ANSWER:**   Wyndham admits it received a check in the amount of $77,307.50 from Command, but lacks sufficient knowledge upon which it may admit or deny the remaining

5

allegations set forth in paragraph 15 of Command's First Amended Complaint and, therefore, denies

the same and demands strict proof thereof.

16.    Command subsequently discovered this mistake and made another payment in the amount of $77,307.50 to the new Radisson, to remedy the error.

**ANSWER:**    Wyndham lacks sufficient knowledge upon which it may admit or deny the

allegations contained in paragraph 16 of Command's First Amended Complaint and, therefore,

denies the same and demands strict proof thereof.

17.    Surprisingly, shortly thereafter, Wyndham issued an invoice for **unused** hotel and conference services for the month of January, 2007 in the amount of $77,287.14. Remarkably, this invoice was for an amount very close to the monies it erroneously received from Command. (See Exhibit G). Command did not reserve or use any rooms or conference services in the month of January, 2007 with Wyndham.

**ANSWER:**    Wyndham admits the allegations set forth in paragraph 17 of Command's First

Amended Complaint.

18.    On or about March 30, 2007, Sam Rosenbaum ("Rosenbaum") of Command telephoned Wyndham and spoke with Amy in the Accounting Department regarding the erroneous payment. Rosenbaum told Amy that Command was billed for unused services for the month of January, 2007, and that the charge was not in accordance with the terms of the Contract. Accordingly, Rosenbaum asked that Command's monies be returned. In response, Amy transferred Rosenbaum to the Controller, Debbie, with whom he left a message regarding the same. In response to his inquiry, on the same day, Rosenbaum received a telephone call back from Amy in the Accounting Department. Amy confirmed receipt of the monies and informed Rosenbaum that Wyndham decided to keep Command's monies. Wyndham stated that because it was under contract with Command until the end of January, 2007, it was entitled to the monies.

**ANSWER:**    Wyndham admits that Rossenbaum contacted Wyndham personnel regarding

the $77,307.50 payment received by Wyndham, and that Wyndham personnel acknowledged receipt

of said payment, but Wyndham lacks sufficient knowledge upon which it may admit or deny the

remaining allegations contained in paragraph 18 of Command's First Amended Complaint and,

therefore, denies the same and demands strict proof thereof.

19.     Subsequently, on May 15, 2007, in response to Command's ongoing inquiries and renewed demands for a refund, counsel for Wyndham, Ian Linnabary of the law firm Reno & Zahm, LLP, wrote a letter to Command's counsel.  In the letter, Wyndham does not acknowledge the January 12, 2004 addendum that clearly states that Command will not be charged for unoccupied rooms, or Command's termination letter of December 21, 2006.  Instead, Wyndham states that "[O]ver the course of the parties relationship, Wyndham had come to expect that CMS [Command] would reserve and pay for an average of approximately 800 rooms per month".  (See Exhibit H, Wyndham May 2007 letter, para. 7).  Accordingly, Wyndham refused to refund Command the $77,307.50 per its demands.

**ANSWER:**     Wyndham admits its counsel sent a letter to Command on May 15, 2007 and

further states that the content of the letter speaks for itself.

## COUNT I
## BREACH OF CONTRACT

20.     Command reincorporates and realleges paragraphs 1-19 as if fully set forth herein.

**ANSWER:**     Wyndham realleges and incorporates by reference its answers to paragraphs

1 through 19 of Command's First Amended Complaint as if fully restated in this Count I.

21.     Command and Wyndham formed a Contract, the terms of which specified that for a monthly fee, Wyndham would provide hotel and conference facilities and services.

**ANSWER:**     Wyndham admits that Command and Wyndham entered into a contract, a

copy of which is attached to Command's First Amended Complaint and the content of which speaks

for itself.

22.     As part of that Contract, Command and Wyndham subsequently executed an addendum that states Command would not be charged for unoccupied rooms, and would only be responsible to pay for rooms that Command's applicants actually lodged in.

**ANSWER:**     Wyndham admits that Command and Wyndham executed an addendum to the

contract, a copy of which is attached to Command's First Amended Complaint and the content of

which speaks for itself.

23.     Section 14 of the Contract clearly states that either party may terminate this agreement.  No where does the Contract provide that once the agreement is terminated by either party that the agreement continues for a specified duration of time.

7

**ANSWER:**    Wyndham denies the allegations set forth in paragraph 23 of Command's First Amended Complaint and demands strict proof thereof.

24.    Command fully performed under the Contract by paying Wyndham for rooms actually lodged in, up until the end of December, 2006.

**ANSWER:**    Wyndham denies the allegations set forth in paragraph 24 of Command's First Amended Complaint and demands strict proof thereof.

25.    Command did not reserve or use any of Wyndham's facilities in January, 2007 or at any time thereafter.

**ANSWER:**    Wyndham admits the allegations set forth in paragraph 25 of Command's First Amended Complaint.

26.    Wyndham breached its contractual obligations to Command by ignoring Command's termination of services, intentionally issuing an invoice for unused services in January, 2007, and by collecting and refusing to refund monies erroneously paid and not owed to Wyndham per the terms of the Contract.

**ANSWER:**    Wyndham denies the allegations set forth in paragraph 26 of Command's First Amended Complaint and demands strict proof thereof.

27.    As a result of Wyndham's breach of contract, Command has been damaged.

**ANSWER:**    Wyndham denies the allegations set forth in paragraph 27 of Command's First Amended Complaint and demands strict proof thereof.

28.    Command has further been damaged by the fact that Wyndham has retained and refused to refund these monies, hindering Command's ability to secure facilities elsewhere.

**ANSWER:**    Wyndham denies the allegations set forth in paragraph 28 of Command's First Amended Complaint and demands strict proof thereof.

WHEREFORE, Defendant, MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE, respectfully requests that Count I of Plaintiff's, COMMAND MANAGEMENT

8

SERVICES, INC., Complaint be dismissed with prejudice and for such other and further relief as this Court deems just and equitable.

### AFFIRMATIVE DEFENSES TO COUNT I (BREACH OF CONTRACT) OF COMMAND'S FIRST AMENDED COMPLAINT

#### FIRST AFFIRMATIVE DEFENSE (FAILURE TO STATE A CAUSE OF ACTION)

The claims asserted in Count I of Command's First Amended Complaint are barred in whole or part because Command has failed to allege facts sufficient to state a cause of action for breach of contract.

#### SECOND AFFIRMATIVE DEFENSE (ESTOPPEL)

The claims asserted in Count I of Command's First Amended Complaint are barred in whole or part under the doctrine of equitable estoppel / estoppel in pais.

#### THIRD AFFIRMATIVE DEFENSE (UNCLEAN HANDS)

The claims asserted in Count I of Command's First Amended Complaint are barred in whole or part by the doctrine of unclean hands.

#### FOURTH AFFIRMATIVE DEFENSE (OFFSET)

The claims asserted in Count I of Command's First Amended Complaint are offset in whole or part pursuant to Counts I and II of Wyndham's Counterclaim.

### COUNT II CONVERSION

29. Command reincorporates and realleges paragraphs 1-19 as if fully set forth herein.

**ANSWER:**   Wyndham realleges and incorporates by reference its answers to paragraphs 1 through 19 of Command's First Amended Complaint as if fully restated in this Count II.

30.     Wyndham holds Command's monies erroneously paid for the month of January, 2007, in the amount of $77,307.50.

9

**ANSWER:**    Wyndham denies the allegations set forth in paragraph 30 of Command's First Amended Complaint and demands strict proof thereof.

31.    Even though Wyndham has knowledge that the monies do not belong to it, Wyndham has nevertheless converted said funds for its own use.

**ANSWER:**    Wyndham denies the allegations set forth in paragraph 31 of Command's First Amended Complaint and demands strict proof thereof.

32.    Demand has been made upon Wyndham for the return of these monies.

**ANSWER:**    Wyndham admits the allegations set forth in paragraph 32 of Command's First Amended Complaint.

33.    Wyndham has refused to turn over Command's monies, with the intent to permanently keep Command's monies.

**ANSWER:**    Wyndham admits that it has refused to turn over $77,307.50 demanded by Command, but denies the remaining allegations set forth in paragraph 33 of Command's First Amended Complaint and demands strict proof thereof.

WHEREFORE, Defendant, MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE, respectfully requests that Count II of Plaintiff's, COMMAND MANAGEMENT SERVICES, INC., Complaint be dismissed with prejudice and for such other and further relief as this Court deems just and equitable.

### AFFIRMATIVE DEFENSES TO COUNT II (CONVERSION) OF COMMAND'S FIRST AMENDED COMPLAINT

### FIRST AFFIRMATIVE DEFENSE (ESTOPPEL)

The claims asserted in Count II of Command's First Amended Complaint are barred in whole or part under the doctrine of equitable estoppel / estoppel in pais.

### SECOND AFFIRMATIVE DEFENSE (UNCLEAN HANDS)

The claims asserted in Count II of Command's First Amended Complaint are barred in whole or part by the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE (OFFSET)

The claims asserted in Count II of Command's First Amended Complaint are offset in whole or part pursuant to Counts I and II of Wyndham's Counterclaim.

Dated this 19th day of March, 2008.

Defendant, MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE, by its attorneys, Reno & Zahm LLP

RENO & ZAHM LLP
By: Ian K. Linnabary, Esq. (#6277908)
2902 McFarland Road, Suite 400
Rockford, IL 61107
Ph. (815) 987-4050
Fax (815) 987-4092
ikl@renozahm.com

By:    /s/ Ian K. Linnabary
Ian K. Linnabary, Esq.

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a copy of the foregoing **Answer to First Amended Complaint and Affirmative Defenses** was served electronically upon the registered CM/ECF users as reflected on the Notice of Electronic Filing on the 19th day of March, 2008.

/s/ Ian K. Linnabary
Ian K. Linnabary, Esq.

RENO & ZAHM LLP
2902 McFarland Road, Suite 400
Rockford, IL 61107
Ph. (815) 987-4050
Fax (815) 987-4092

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| COMMAND MANAGEMENT SERVICES, INC., an Oregon corporation,       ) ) ) | |
|      Plaintiff     ) ) | |
| vs.     ) ) | Case No.: 2007 – C – 7017 |
| MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE,     ) ) ) | |
|      Defendant,     ) ) | |
| MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE,     ) ) ) | |
|      Counter-Plaintiff,     ) ) | |
| vs.     ) ) | |
| COMMAND MANAGEMENT SERVICES, INC., an Oregon corporation,     ) ) ) | |
|      Counter-Defendant.     ) | |

## COUNTERCLAIM

Defendant/Counter-Plaintiff, MEHP O'HARE OPERATING LLC d/b/a WYNDHAM

O'HARE ("Wyndham"), by and through its attorneys, Reno & Zahm LLP, for its Counterclaim

against Plaintiff/Counter-Defendant, COMMAND MANAGEMENT SERVICES, INC.

("Command"), states as follows:

### PARTIES AND JURISDICTION

1.    Counter-Plaintiff, Wyndham, is a limited liability company organized and in good

standing under the laws of the state of Delaware and is duly authorized to transact business within


EXHIBIT
C

the state of Illinois. Wyndham is in the business of providing hotel and conference facilities and related goods and services from its facility located at 6810 North Mannheim Road, Rosemont, Illinois 60018, commonly known as the Wyndham O'Hare Hotel.

2.    Counter-Defendant, Command, is believed to be a corporation organized and in good standing under the laws of the state of Oregon, with its principal place of business located at 411 Southwest Second Avenue, Suite 200, Portland, Oregon 97204. Command is in the business of providing essential services in the travel and logistics support arena.

3.    Jurisdiction and venue in this judicial district are proper as alleged in paragraphs 4 through 7 of Command's First Amended Complaint, and this Counterclaim is brought pursuant to 28 U.S.C. § 1367 and Rule 13 of the Federal Rules of Civil Procedure.

## FACTS COMMON TO ALL COUNTS

4.    On or about January 21, 2003, Command entered into a written contract (the "Contract") with the Radisson Hotel O'Hare ("Radisson") wherein Radisson, as the subcontractor, agreed to provide hotel and conference facilities and related goods and services pursuant to the specific terms and conditions set forth in the Contract. A true and correct copy of the Contract is attached hereto and made a part hereof as Exhibit "A".

5.    Wyndham provided the goods and services under the Contract in furtherance of Command's obligation to arrange for such goods and services for the U.S. Military. As such, the U.S. Military had a degree of oversight regarding Wyndham's provision of said goods and services.

6.    For contract renewal purposes, the parties treated January 31st of each year as the end of the annual term of the Contract.

2

7.      Paragraph 14 of the Contract specifies how and when the Contract may be terminated as follows **"either party may terminate this agreement at the end of each contract year by furnishing sixty (60) days' written notice to the other party."** (*Emphasis added*).

8.      Thus, pursuant to paragraph 14, the Contract can only be terminated "at the end of each contract year" and only if preceded by "sixty (60) days' written notice." (*Emphasis added*).

9.      The Contract contains no other language addressing termination, and absent an agreement between Wyndham and Command, it may not be terminated except in accordance with the clear terms of paragraph 14.

10.      In early 2005, the Radisson became affiliated with Wyndham Hotel brand, and shortly thereafter, notification was sent to all of the Radisson's vendors, including Command, announcing that the Radisson would now be known as the "Wyndham O'Hare."

11.      Thereafter, Wyndham continued to provide goods and services under the Contract, and Command accepted said goods and services.

12.      Representatives of the U.S. Military inspected the Wyndham facility on a monthly basis, and never identified substantial issues with the facility; in fact, the Wyndham never failed a U.S. Military inspection.

13.      Representatives of Command, namely regional representative Sharron Blanton ("Blanton"), inspected the Wyndham facility every other month and never identified substantial issues with the facility; in fact, the Wyndham never failed one of Blanton's inspections.

14.      In the month of May or June 2006, Blanton inspected the Wyndham facility and did not identify any issues with the facility.

3

15.    In July 2006, shortly after Blanton's inspection, Monica Anderson ("Anderson"), CEO of Command, and Jeff Downes ("Downes"), VP of Command, visited the Wyndham facility for the purpose of conducting an additional inspection of the Wyndham facility.

16.    Anderson and Downes raised concerns regarding the Wyndham facility, and those issues were immediately addressed by Wyndham personnel.

17.    Shortly after the inspection by Anderson and Downes, the Wyndham facility was inspected by a U.S. Army Colonel, and the Wyndham passed his inspection.

18.    Shortly after the inspection by Anderson and Downes, the Wyndham facility was inspected by Blanton, and the Wyndham passed her inspection.  In fact, Blanton noted her pleasure with the condition of the Wyndham facility.

19.    Eventually, Wyndham made a business decision to terminate the Contract pursuant to paragraph 14.  In doing so, Wyndham complied with the terms of paragraph 14 of the Contract and effected termination by sending sixty (60) days' written notice on November 8, 2006. Wyndham's letter provided, in part, as follows:

> . . .please accept this letter as Wyndham O'Hare's 60 day written notice of termination of the MEPS contract. Under Section 14 of the Subcontract, either party can terminate the relationship and we feel that it is in our best interest to do so at this time.
>
> We cannot continue to hold room nights under the contract beyond [the end of the Contract year] January 31st, 2007. . .

A true and correct copy of Wyndham's November 8, 2006 letter is attached hereto and made a part hereof as Exhibit "B".

20.    Following transmission of Wyndham's November 8, 2006 termination notice, Downes contacted Wyndham in an attempt to convince Wyndham to reconsider its decision to

terminate the Contract. Downes offered Command's commitment to use the Wyndham facility in 2007.

22.    The parties engaged in subsequent discussions regarding the terms of a new contract, but they eventually reached an impasse.

22.    Command then notified Wyndham of its acceptance of the Contract termination by a letter dated November 17, 2006. A true and correct copy of Command's November 17, 2006 letter is attached hereto and made a part hereof as Exhibit "C".

23.    Wyndham immediately began planning for the loss of Command's business after January 31, 2007. Wyndham planned to, and did in fact, proceed in good faith to fulfill its obligations to Command under the Contract until it was rightfully terminated on January 31, 2007.

24.    Based upon the parties' past practices and regular course of dealing, Wyndham planned for the typical requirements of Command for the months of December 2006 and January 2007.

25.    Without warning, shortly before the Christmas holiday, Downes sent written notification to Wyndham dated December 21, 2006 indicating that Command would "discontinue services under the Subcontract Agreement and permanently relocate to an alternate hotel facility effective 01 January 2007." (*Emphasis added*). A true and correct copy of Command's December 21, 2006 letter is attached hereto and made a part hereof as Exhibit "D".

26.    Downes' December 21, 2006 letter, sent in retaliation for Wyndham's refusal to renegotiate a contract with Command, attempted to prematurely terminate the contract on less than ten (10) days' notice.

5

27.    Downes' December 21, 2006 letter violated the express termination language of the Contract which provides for termination "at the end of each contract year" if preceded by "sixty (60) days' written notice."

28.    Despite the clear language of paragraph 14, Command purported to terminate the Contract unilaterally and without the consent of Wyndham: (1) before the end of the contract year and (2) without the requisite sixty (60) days' written notice.

29.    Command acted in bad faith when it attempted to unilaterally terminate the Contract prematurely and without requisite notice.

30.    As a result of Command's unilateral and premature termination of the Contract, Wyndham suffered significant financial harm which could not be mitigated.

## COUNT I
## BREACH OF CONTRACT

1. - 30.    Defendant/Counter-Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 3 of Parties and Jurisdiction and paragraphs 4 through 30 of Facts Common to All Counts as and for paragraphs 1 through 30 of this Count I of its Counterclaim.

31.    The Contract attached hereto as Exhibit "A" constitutes a valid and binding contract between Wyndham and Command.

32.    Wyndham performed, in all material respects, its responsibilities under the Contract from inception through the date of its unilateral termination by Command. Wyndham remained ready, willing and able to perform, in all material respects, in its responsibilities under the Contract through the end of the Contract year and rightful termination date of January 31, 2007.

6

33.    Command failed to perform its responsibilities under the Contract, namely its responsibility to terminate the Contract pursuant to paragraph 14.

34.    Command's actions constitute a breach of the Contract and were in direct contradiction of its contractual obligation to deal fairly and act in good faith.

35.    As a result of Command's actions, Wyndham has suffered significant financial harm which could not be mitigated.

WHEREFORE, Defendant/Counter-Plaintiff, MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE, respectfully requests that this Court enter judgment in its favor and against Plaintiff/Counter-Defendant, COMMAND MANAGEMENT SERVICES, INC., in an amount in excess of $75,000 and for such other relief as this Court deems just and equitable.

## COUNT II
## QUANTUM MERUIT

1. - 30.    Defendant/Counter-Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 3 of Parties and Jurisdiction and paragraphs 4 through 30 of Facts Common to All Counts as and for paragraphs 1 through 30 of this Count II of its Counterclaim.

31.    From January 21, 2003 through and including January 31, 2007, Wyndham (and its predecessor in interest, Radisson) provided goods and services for the benefit of Command. Such goods and services included the provision of lodging and meals for individuals whom Command was obligated to arrange such services for pursuant to Command's agreement with the United States government.

32.    Based upon the parties' past practices and regular course of dealing, Wyndham reasonably assumed and planned for the typical requirements of Command each month, and to

7

ensure adequate facilities to provide such goods and services for the benefit of Command, Wyndham would regularly forego opportunities to provide the same goods and services to other individuals.

33.    From January 1, 2007 through January 31, 2007, Wyndham regularly and customarily reserved its goods and services first for the benefit of Command, and Command regularly and customarily accepted and benefitted from such goods and services.

34.    For the month of January 2007, Wyndham reserved its facilities in order to provide the usual and customary goods and services for Command, and Wyndham reasonably expected and deserves to be compensated therefor.

WHEREFORE, Defendant/Counter-Plaintiff, MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE, respectfully requests that this Court enter judgment in its favor and against Plaintiff/Counter-Defendant, COMMAND MANAGEMENT SERVICES, INC., in an amount in excess of $75,000 and for such other relief as this Court deems just and equitable.

Dated this 19th day of March, 2008.

<div style="margin-left: 50%;">

Defendant/Counter-Plaintiff, MEHP O'HARE OPERATING LLC d/b/a WYNDHAM O'HARE, by its attorneys, Reno & Zahm LLP

</div>

RENO & ZAHM LLP
By: Ian K. Linnabary, Esq. (#6277908)
2902 McFarland Road, Suite 400          By:  /s/ Ian K. Linnabary
Rockford, IL 61107                            Ian K. Linnabary, Esq.
Ph. (815) 987-4050
Fax (815) 987-4092
ikl@renozahm.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a copy of the foregoing **Counterclaim** was served electronically upon the registered CM/ECF users as reflected on the Notice of Electronic Filing on the 19th day of March, 2008.

/s/ Ian K. Linnabary
Ian K. Linnabary, Esq.

RENO & ZAHM LLP
2902 McFarland Road, Suite 400
Rockford, IL 61107
Ph. (815) 987-4050
Fax (815) 987-4092

9

02 Chicago – Radisson Hotel O'Hare .sca          (Revision 01; 21 January 2002)

# SUBCONTRACT FOR SERVICES
# AGREEMENT

This Subcontract for Services Agreement is made between **COMMAND MANAGEMENT SERVICES, INC., Portland, OR** (hereafter Contractor) and the **RADISSON HOTEL O'HARE, Rosemont, IL** (hereafter Subcontractor). Throughout this document the term "subcontract", "agreement" and "subcontract agreement" are used and are to be considered as referring to this document.

This is an Agreement for the performance of services for applicants processing at the Chicago, Illinois Military Entrance Processing Station (MEPS). Contractor and Subcontractor are bound by the terms and conditions of this Agreement. This Agreement is entirely contingent upon the authorized U.S. Government representatives inspecting and accepting the Subcontractor performance facilities[1] as being suitable for the performance of services. Both parties agree herewith to be bound by this Agreement.

The Contractor and Subcontractor agree as set forth below:

1.   Statement of Work (SOW):

    a. The Contractor shall do the following:

        (1)   provide all necessary supervision, labor, materials, supplies, and facilities to perform the work as itemized in the Prime Contract statement of work, except as specifically subcontracted in this agreement; and,

        (2)   Pay for the performance of contract work performed by the Subcontractor on the basis of unit price (unit price is inclusive of all applicable taxes and gratuities), as set forth in Appendix A.

    b. The Subcontractor shall have the following performance responsibilities:

        (1)   Provide all the supervision, labor, equipment, materials and supplies to perform all duties and responsibilities of the subcontract in accordance with the terms and conditions of the subcontract and the Statement of Work (SOW) set out in Appendix B. In addition Subcontractor understands the inclusion of the Department of Labor wage determination and its applicability to this Agreement.

---

[1]"Performance facilities" describes any and all facility(ies) provided by the subcontractor for the purposes of lodging, feeding and/or transporting applicants as defined within the SOW incorporated herein.

PAGE 1 – SUBCONTRACT FOR SVCS



EXHIBIT

"A"

02 Chicago - Radisson Hotel O'Hare .sca          (Revision 01; 21 January 2003)

      (2)    Perform the specific subcontracted work as detailed herein and for the prices specified in Appendix A.  Unit prices shall be inclusive of all applicable taxes and gratuities.

2.    Payment for Services:

    The Contractor shall pay Subcontractor for work performed on a monthly schedule. Payments due the Subcontractor will be payable by Contractor not more than ten (10) days after Contractor has received payment from the Government under the Prime Contract for the particular services period.  Payment will be made as follows:  Subcontractor shall present an invoice at the end of a month of operation.  The invoiced quantities of rooms and meals shall be in agreement with a daily master folio issued from the hotel front desk to the Contractor's on-site representative.  Contractor's on-site representative will reconcile the daily lodging totals with Subcontractor to come to an agreement within a short time after the end of the month, usually during the first 5 days.  The Contractor shall pay the Subcontractor within 30-45 days after completion of a month's work.

3.    Authorized Representatives:  The authorized representatives of the parties to this Subcontract are as follows:

    a.  Contractor:  The following individuals shall be designated as the representative, and alternate for the Contractor.

        Monica C. Anderson, President/CEO
        T. A. Moore, Executive Vice President (alternate)
        Command Management Services, Inc.
        621 S.W. Alder St. Ste. 810
        Portland, OR 97205
        tele:  (503) 224 - 5500
        fax:  (503) 224 - 6848

    b.  Subcontractor:  The following individuals shall be designated as the representative for the Subcontractor.

        Heidi Prosser, Director of Sales & Marketing
        Radisson Hotel O'Hare
        5810 North Mannheim Road
        Rosemont, IL 60018
        tele:  (847) 297 - 1234
        tele:  (847) 297 - 6144 Direct
        fax:  (847) 297 - 8744

4.    If the Government fails to allow location of Contract performance facilities to the facilities proposed by Subcontractor, this Agreement shall lapse, and neither party shall have any further

APR 11-2001   Case 1:07-cv-07017   Document 31-2   Filed 04/08/2008   Page 46 of 51
01/28/2008 14:11 108 111 0711   CMS MARKETING   PAGE 04/06
01/21/2003 14:11   Case 1:07-cv-07017   Document 28   Filed 03/19/2008   Page 12 of 17

02 Chicago - Radisson Hotel O'Hare ...ca          (Revision 01; 21 January 2003)

obligation or duty to the other.  Each party shall stand its own costs or expenses incurred in the proposal process.

5.      Subcontractor agrees to provide up to two (2) room-nights per month for Contractor use in coordinating, training and retraining subcontractor personnel and general oversight of the contract activities.  Such room will be provided on a complimentary basis.  All other associated room costs such as telephone, food and drink, valet service and all other miscellaneous charges will be borne by the Contractor and Contractor personnel.

6.      Subcontractor shall provide a dedicated room for Contractor use to set up as an applicant lounge.  Such provided room shall be of a size to comfortably hold 50 - 60 persons in various configurations.  Space must be lockable and cleaned daily.  Contractor shall provide large-screen television and accessories, games, etc.; subcontractor shall provide tables, chairs and lounge furniture.

7.      Subcontractor is obligated to provide full and complete performance in accordance with the specifications of this Agreement, to include all provisions for lodging which consistently meet the requirements of the U.S. Government.

8.      Contractor agrees to furnish comprehensive written procedures, in the form of a Standing Operating Procedures (SOP) covering all operational aspects expected under this Agreement. Contractor shall train subcontractor staff in the implementation of the SOP.

9.      In the event that the facility(ies) are subject to sale, transfer, assignment, lease or otherwise subject to a change in ownership or management, the Subcontractor agrees that it will exert its best efforts to include the continuation of this Agreement as part of the transaction.

10.     Subcontractor agrees that it shall not attempt to collect the cost of lodging or meals as described herein directly from the applicants.  All invoices will be presented directly to the Contractor for payment.

11.     Subcontractor agrees to provide current proof of insurance to the contractor. Such proof shall name the Contractor and its clients as additionally insured within the insurance umbrella.

12.     Contractor will order rooms daily, based upon requirements received from the Government, and will cancel rooms as necessary until 8:00 p.m. daily.  Subcontractor agrees to reserve a minimum of 50 double rooms until 8:00 pm daily (Sunday through Thursday, plus one Friday per month) unless the rooms are canceled earlier by the Contractor.

PAGE 3 - SUBCONTRACT FOR SVCS

02 Chicago - Radisson Hotel O'Hare .scs                    (Revision 01; 21 January 2003)

13.    Subcontractor agrees to replace the safety signage in the swimming pool area; and to monitor the video surveillance camera located in the swimming pool area.

14.    Either party may terminate this agreement at the end of each contract year by furnishing 60 days written notice to the other party.

AGREED TO this 21ˢᵗ day of January, 2003.

SUBCONTRACTOR                        CONTRACTOR
Radisson Hotel O'Hare                 Command Management Services, Inc.

BY: _____        BY: _____
Heidi Prosser  Arthua Cooper              Monica Anderson
Director of Sales & Marketing              President

Appendices:

APPENDIX A – PRICE AND PAYMENT SCHEDULE

APPENDIX B – STATEMENT OF WORK (SOW)

APPENDIX C – US Dept of Labor  WAGE DETERMINATION

PAGE 4 - SUBCONTRACT FOR SVCS

FROM :CMS
FAX NO. :5634452564
REVISION PRICING: 01/23/2004

CHICAGO MEPS – RADISSON HOTEL CHICAGO

# APPENDIX A
## PRICE AND PAYMENT SCHEDULE

| ITEM | | ESTIMATED QUANTITY (1) | UNIT OF MEASURE | UNIT PRICE (2) | ESTIMATED AMOUNT |
|------|------|------|------|------|------|
| **Base Period: (for the period: 1 Jan 2004 through 31 Aug 2004)(3)** | | | | N/A | COMPLETED |
| 0001A | Single Lodging Requirements, Per Appendix B. | 1,000 | Person | N/A | COMPLETED |
| 0001B | Double Lodging Requirements, Per Appendix B. | 22,000 | Person | N/A | COMPLETED |
| 0001C | Meals Requirements, Per Appendix B. | 23,000 | Person | N/A | COMPLETED |
| 0001D | Applicant Lounge Requirements, Per Appendix B. | 261 | Days | | |
| **Contractor's First Option Period: (for the period: 1 Feb 2004 through 31 Jan 2005)** | | | | $23.79 | $23,790.00 |
| 0002A | Single Lodging Requirements, Per Appendix B. | 1,000 | Person | $23.78 | $523,160.00 |
| 0002B | Double Lodging Requirements, Per Appendix B. | 22,000 | Person | $17.39 | $399,970.00 |
| 0002C | Meals Requirements, Per Appendix B. | 23,000 | Person | INCLUDED | INCLUDED |
| 0002D | Applicant Lounge Requirements, Per Appendix B. | 261 | Days | | |
| **Contractor's Second Option Period: (for the period 1 Feb 2005 through 31 Jan 2006)** | | | | $24.49 | $24,490.00 |
| 0003A | Single Lodging Requirements, Per Appendix B. | 1,000 | Person | $24.49 | $538,780.00 |
| 0003B | Double Lodging Requirements, Per Appendix B. | 22,000 | Person | $17.91 | $411,930.00 |
| 0003C | Meals Requirements, Per Appendix B. | 23,000 | Person | INCLUDED | INCLUDED |
| 0003D | Applicant Lounge Requirements, Per Appendix B. | 261 | Days | | |
| **Contractor's Third Option Period: (for the period: 1 Feb 2006 through 31 Jan 2007)** | | | | $25.22 | $25,220.00 |
| 0004A | Single Lodging Requirements, Per Appendix B. | 1,000 | Person | $25.22 | $554,840.00 |
| 0004B | Double Lodging Requirements, Per Appendix B. | 22,000 | Person | $18.45 | $424,350.00 |
| 0004C | Meals Requirements, Per Appendix B. | 23,000 | Person | INCLUDED | INCLUDED |
| 0004D | Applicant Lounge Requirements, Per Appendix B. | 261 | Days | | |
| **Contractor's Forth Option Period: (for the period: 1 Feb 2007 through 31 Jan 2008)** | | | | $25.98 | $25,980.00 |
| 0005A | Single Lodging Requirements, Per Appendix B. | 1,000 | Person | $25.98 | $571,560.00 |
| 0005B | Double Lodging Requirements, Per Appendix B. | 22,000 | Person | $19.00 | $437,000.00 |
| 0005C | Meals Requirements, Per Appendix B. | 23,000 | Person | INCLUDED | INCLUDED |
| 0005D | Applicant Lounge Requirements, Per Appendix B. | 261 | Days | | |
| | | | | **TOTAL:** | **$3,961,060.00** |

[1] Service required Sunday through Thursday each week, plus an estimated 1 Friday per month.

(2) Rates are inclusive of all applicable tax and gratuities.

[3] Basis of payment will be month-end reconciliation of daily master folios.

Note 1: Payment will be made for rooms not automatically cancelled by CMS by 6:00pm, plus meals for applicants actually lodged.

Note 2: This agreement may be terminated at the end of each contract year written notice by either party.

Arthur Cooper, Director of Sales          1/23/2004
RADISSON HOTEL O'HARE

Monica Anderson, President          1/23/2004
COMMAND MANAGEMENT SERVICES, INC

*Sent 11-8-06*
*AMS*

November 8, 2006

Monica Anderson
CMS Corporation
411 SW 2nd Avenue
Portland, Oregon 97204

RE: MEPS Contract and Subcontract Issues

Dear Ms. Anderson,

In my letter dated August 31, 2006, I explained how we have addressed the concerns you had after your July inspection. Since that date, I have regretfully not heard from you or your corporation. Therefore, please accept this letter as Wyndham O'Hare's 60 day written notice of termination of the MEPS contract. Under Section 14 of the Subcontract, either party can terminate the relationship and we feel that it is in our best interest to due so at this time.

We cannot continue to hold room nights under the contract beyond January 31st, 2007 while waiting for your response. Due to the fact that the arbitrary 30 day period we were given to correct any problems you encountered has passed and that you have not made any room night commitments for 2007, we will have to secure alternative base business elsewhere. This being the case, I wanted to inform you of our decision to terminate this contractual relationship with the current terms in advance of the ending date so that both parties could pursue other avenues if needed. However, should you desire to continue our relationship we would welcome discussion to that end. We would be pleased to negotiate new terms for contract that would come into effect on February 1st, 2007.

Please contact me via email or written response at your earliest to discuss the options I have laid out above. Thank you in advance for your time attention to this matter.

Sincerely,

Andrea J. Mayer
General Manager



EXHIBIT

"B"



November 17, 2006

Andrea Mayer, General Manager
Wyndham O'Hare
6810 North Mannheim Road
Rosemont, IL 60018

Re:     Notice of Subcontract Termination

Dear Ms. Mayer:

Command Management Services, Inc. (CMS) is in receipt of your November 8, 2006 written notice of termination of our subcontract agreement to furnish lodging and meals for applicants processing through the Chicago Military Entrance Processing Station (MEPS).

CMS accepts your termination notice and will begin the process of relocation to alternate hotel and restaurant facilities immediately.

Sincerely,

Jeff Downes
Vice President



EXHIBIT

"C"

APR. 22. 2007  4:21PM   COMMAND MANAGEMENT SERVICES          NO. 0113   P. 28

December 21, 2006

Andrea Mayer, General Manager
        Or;
Current General Manager
Wyndham O'Hare
6810 North Mannheim Road
Rosemont, IL 60018

Re:    Notice of Subcontract Termination and Relocation

Dear Ms. Mayer:

Based upon your November 8, 2006 written notice of termination of our Subcontract
Agreement to furnish lodging and meals for applicants processing through the Chicago
Military Entrance Processing Station (MEPS), CMS will discontinue services under the
Subcontract Agreement and permanently relocate to an alternate hotel facility effective
01 January 2007. Services under the Subcontract Agreement will terminate upon
completion of the breakfast meal service on Friday, 29 December 2006.

Sincerely,


Jeff Downes
Vice President

