**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| COMMAND MANAGEMENT SERVICES, INC., an Oregon corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )   No.   07 cv 7017<br>) |
| MEHP O'HARE OPERATING LLC, d/b/a WYNDHAM O'HARE, | )<br>)<br>) |
| Defendant. | )<br>) |
| MEHP O'HARE OPERATING LLC, d/b/a WYNDHAM O'HARE, | )<br>)<br>) |
| Counter-Plaintiff, | )<br>) |
| vs. | )<br>) |
| COMMAND MANAGEMENT SERVICES, INC., an Oregon corporation, | )<br>)<br>) |
| Counter-Defendant. | ) |

**PLAINTIFF/COUNTER-DEFENDANT'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIM**

Plaintiff/Counter-Defendant, Command Management Services, Inc. ("Command"), by its attorneys, Ronald A. Damashek, Andrew H. Eres, and Jeremy P. Kreger, of Stahl Cowen Crowley Addis LLC, for its reply memorandum in support of its motion to dismiss the counterclaim of Defendant/Counter-Plaintff, MEHP O'Hare Operating LLC d/b/a Wyndham O'Hare ("Wyndham"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, states as follows:

1

## INTRODUCTION

1.      Command contracts with the U.S. government to, *inter alia*, provide testing facilities, accommodations, and food for applicants to branches of the U.S. military. *See*, Complaint ¶ 2. To fulfill its contract with the government, Command entered into a written subcontract with Wyndham to provide hotel rooms to applicants testing in the Chicago area (the "Contract"). *See*, the Complaint and Answer ¶ 8. The Contract sets forth the pricing for the facilities as well as quality standards imposed on Wyndham by Command as they are imposed on Command by the government. *See*, the Contract, attached to the Complaint as Exhibit A. On January 12, 2004, the parties entered into a written Addendum to Contract, providing that Command is not required to pay for any hotel rooms not actually used and occupied by a military applicant (the "Addendum"). *See*, the Complaint and Answer ¶ 9.

2.      Pursuant to the Contract, Command and government officials regularly conducted inspections of Wyndham's facilities. *See*, the Contract. On July 18, 2006, one such inspection was carried out, raising issues of concern to Command and the inspecting official. *See*, the Complaint and Answer ¶¶ 11-12. Command sent a letter to Wyndham itemizing the issues. *See*, the Complaint and Answer ¶ 12. On November 8, 2006, Wyndham responded with a letter terminating the Contract. *See*, the Complaint and Answer ¶ 13. On December 21, 2006, Command acknowledged receipt of the termination letter and advised Wyndham that it will not require any rooms for the month of January, 2007 – what would have been the last month of the Contract's period had it not been terminated. *See*, the Complaint and Answer ¶ 14.

3. Command utilized another hotel for the month of January 2007, which happened to have the same name that Wyndham did when it first entered into the Contract. *See*, the Complaint and Answer ¶ 15. Instead of paying the new hotel for rooms used in January of 2007, Command inadvertently sent a check in the amount of $77,307.50 to Wyndham. *See*, the Complaint and Answer ¶ 15. Wyndham refused to return the money and issued an invoice for roughly that sum to Command for unused and unoccupied rooms. *See*, the Complaint and Answer ¶¶ 17-19. The amount due per the invoice is strikingly similar to the amount inadvertently paid by Command. This is an action by Command to recover the $77,307.50 that it erroneously paid to Wyndham.

4. As part of its answer to Command's complaint, Wyndham filed a counterclaim against Command, asserting an interest in the sum at issue in two counts: breach of contract and *quantum meruit* (the "Counterclaim"). On April 8, 2008, Command filed its motion to dismiss the Counterclaim because the terms of the Contract preclude Wyndham's causes of action (the "Motion"). Wyndham has responded by arguing that it has properly set forth the causes (the "Response"). For the reasons that follow, Command's Motion must be granted and Wyndham's Counterclaim should be dismissed, with prejudice.

**ARGUMENT**

5. Wyndham correctly states the law concerning pleading standards in federal court, including that it need not plead specific facts, but only those necessary to give its opponent notice of the claim and the grounds upon which it rests. *See*, Wyndham's Response at ¶ 7, *citing Erickson v. Pardus*, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). What Wyndham misses is that "[w]hile it is clear that Federal Rule

3

of Civil Procedure 8(a) requires that a complaint adequately plead facts to put a defendant on notice of the plaintiff's claim, it is equally clear that a complaint that satisfies Rule 8(a)'s pleading requirements might still warrant dismissal under Rule 12(b)(6) if the facts pled cannot result in any plausible relief." *Segal v. Geisha NYC, LLC*, 517 F.3d 501, 505 (7th Cir. 2008) (internal citations omitted).  Moreover, a plaintiff can plead himself out of court by alleging facts that show there is no viable claim.  *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008).

6.	As with the plaintiff's complaint in *Segal*, Wyndham's Counterclaim should be dismissed because the governing Contract does not permit Wyndham to recover.  Further, by admitting the existence of the governing Contract and relying on Command's purported course of conduct in carrying out that Contract, Wyndham has pled itself out of court by alleging facts showing that it does not have a viable *quantum meruit* claim.

    *I.*    *Count I of the Counterclaim – Wyndham's Breach of Contract Claim – Must Be Dismissed With Prejudice.*

7.	Wyndham argues that its breach of contract count should stand because it has pled the requisite elements of such an action in accordance with applicable notice pleading standards.  *See*, Wyndham's Response at ¶¶ 9-12.  However, Wyndham's only response to the arguments made in the pending Motion is contained in Paragraph 13 of its Response, where it states the true nature of its claimed damages.  According to Wyndham, it was damaged by Command because it "planned for the typical requirements of Command during the months of December 2006 and January 2007", and Command did not reserve any rooms.  *See*, Wyndham's Response at ¶ 13.

8.      Wyndham first claims that Command breached the contract by sending the letter of December 29, 2006.  According to Wyndham, by sending the letter, Command purportedly terminated the Contract unilaterally and without the consent of Wyndham prior to the end of the contract year and without proper notice.  *See*, Response at ¶¶ 11-12. Wyndham's argument is confusing, and without merit, given that it expressly admits sending its own termination letter on November 8, 2006. Again, because Wyndham terminated the Contract *prior* to the date Command sent the letter, Command could not have unilaterally terminated the Contract.  In fact, Command could not have terminated the Contract at all because Wyndham had already done so.

9.      The weakness of Wyndham's position is also highlighted by its absolute failure to address a critical argument in favor of dismissing the Counterclaim: that pursuant to the Addendum executed in 2004, Command was not contractually obligated to pay for any rooms that were not actually used by an applicant during the Contract period.  In fact, the Addendum is conspicuously absent from Wyndham's Response as it addresses the breach of contract count, though its applicability is undisputed and Wyndham curiously mentions it in the *quantum meruit* argument.

10.     It is well-settled that parties to a contract are not locked into its terms forever and may modify it to change, add or cancel some of its terms, leaving the general purpose undisturbed.  *Schwinder v. Austin Bank of Chicago*, 348 Ill. App. 3d 461, 468, 809 N.E.2d 180, 189 (1st Dist. 2004).  "Furthermore, parties to a contract are ordinarily as free to change it after making it as they were to make it in the first instance." *Id*.

11.     Here, the parties modified the Contract under which Wyndham argues it is entitled to relief.  Appendix A to the original Contract provides the estimated price and

payment for each service that Wyndham provides, which includes only lodging and food. Per Paragraph 2 of the original Contract, these are the only contractual services provided by Wyndham and it is not paid for anything but these items. When the parties modified the original Contract, they agreed that:

> Effective 01 February, 2004, the Contractor [Command] will not be charged for unoccupied rooms or portions of rooms. Contractor will pay the unit price in Appendix A of [the Contract] (including lodging, supper, breakfast, and transportation as applicable) for each applicant actually lodged in the hotel.

*See*, the Addendum. As it relates to this Motion, the effect of the Contract as a whole is to set forth the pricing for services provided by Wyndham to Command. In the event that Command did not actually use Wyndham's services, it is not contractually obligated to pay for them. Wyndham fails to mention this modification, likely because it is aware that it operates to bar the relief it requests.

12. By virtue of the above, the undisputed written agreement that governs the parties' relationship (and upon which Wyndham bases its claim) provides that Wyndham is not to be paid unless Command actually lodges and feeds the applicants at the hotel. Wyndham's allegations and the undisputed facts reveal that Command did not lodge and feed any applicants at Wyndham's hotel for the subject period. Accordingly, there are no set of facts that would entitle Wyndham to the requested relief. Count I of the Counterclaim should be dismissed, with prejudice.

    **II.    *Count II of the Counterclaim -- Wyndham's Quantum Meruit Count -- Must be Dismissed, With Prejudice.***

13. Wyndham next argues that its *quantum meruit* action against Command must stand notwithstanding the undisputed existence of a written contract expressly

governing the parties' relationship as it relates to the "services" that Wyndham alleges it provided. In support of this position, Wyndham argues that although it did not expressly plead the cause in the alternative, the *quantum meruit* count is permissively pled in the alternative to the breach of contract count in accordance with the Federal Rules of Civil Procedure. *See*, the Response at ¶¶ 16-19. Further, Wyndham claims that it has pled the requisite elements of the cause by alleging that Command regularly ordered rooms pursuant to the Contract and Wyndham reasonably expected that the rooms would again be reserved for the month in question, even though it was notified in writing that no such reservations would be required. *See*, the Response at ¶¶ 18-19.

14. Wyndham's argument fails because: (1) the allegations of the existence of a governing express contract have been incorporated into the subject count; (2) the existence of the governing contract is *undisputed*; and (3) the "services" that Wyndham purportedly provided are not sufficient to state a cause for *quantum meruit* damages.

15. Wyndham's primary argument in favor of this count's survival rests on its assertion that "Wyndham's *quantum meruit* count does not refer to, or incorporate by reference, Wyndham's breach of contract count." *See*, the Response ¶ 16. This statement is stunningly false. Though the paragraphs stated under the Count I (breach of contract) heading are not specifically incorporated, its operative allegations, including all allegations concerning the existence and nature of the Contract, are explicitly incorporated. *See*, the Counterclaim, Count II ¶¶ 1-30. Interestingly, Wyndham even incorporates by reference the statements in its Response where it acknowledges the existence of the governing Contract. *See*, the Response ¶ 15.

16.     Because the allegations concerning the Contract are improperly incorporated into the claim, Count II must be dismissed. *See*, *Cole-Haddon, Ltd. v. Drew Philips Corp.,* 454 F. Supp. 2d 772, 777 (N.D. Ill. 2006) (quasi-contract claim dismissed because the plaintiff incorporated by reference the allegations concerning the existence of a contract, even when pled in the alternative).

17.     More importantly, Wyndham's *quantum meruit* action should be dismissed, with prejudice, because it is undisputed that a written contract governs the nature of the parties' relationship. As previously noted, *quantum meruit* is an equitable remedy unavailable to litigants when an express contract exists and its subject matter concerns the factual allegations of the *quantum meruit* claim. *Strategic Reimbursement, Inc. v. HCA, Inc.*, 2007 U.S. Dist. LEXIS 57052, at *10 (N.D. Ill. 2007). Each of the cases cited by Wyndham in support of its alternative pleading theory are distinguishable due to one simple characteristic: unlike here, those cases do not involve a claim where the counterclaimant has admitted the existence of the governing contract in its answer to the plaintiff's complaint.

18.     One simple but profound statement contained in the Response demonstrates why Count II should be dismissed, with prejudice: "Wyndham admits that Command did not reserve any rooms during January 2007 and admits that the parties' Contract provides that Command will not be charged for unused rooms …." *See*, the Response ¶ 21. From this statement and Wyndham's answer, it is clear that Wyndham does not dispute that it entered into a written agreement with Command. It is also clear that Wyndham does not dispute that the parties executed a written agreement modifying the terms of the original Contract. By virtue of its admissions, Wyndham cannot dispute

8

that the Contract and Addendum actually govern the terms of their relationship as it relates to Wyndham providing rooms and being paid for those services. Because the terms of the Contract directly relate to the allegations contained in the *quantum meruit* count and Wyndham admits the Contract's application, Count II must be dismissed, with prejudice.

19. Finally, Count II should be dismissed, with prejudice, because Wyndham did not actually provide any compensable services to Command. As admitted by Wyndham, to succeed on a *quantum meruit* claim, a party must plead and prove that it performed services and the defendant received the benefit of those services. *See*, the Response ¶ 20, *citing Midcoast Aviation, Inc. v. General Elec. Credit Corp.*, 907 F.2d 732, 737 (7th Cir. 1990).

20. In the Motion, Command argues that Wyndham admits Command did not reserve rooms or other services and, therefore, Wyndham did not provide any services to Command's benefit. *See*, the Response ¶ 22. In response, Wyndham simply "disputes" that it did not provide services of which Command received the benefit, without stating the nature of the services it provided. Once again, Wyndham's silence highlights the weakness of its argument. If Command did not reserve rooms or facilities and Wyndham did not actually lodge and feed applicants, what services did Wyndham provide to Command's benefit? Simply, none.

21. As a result, Count II should be dismissed, with prejudice, as Wyndham has pled its way out of court and there is no set of facts under which it can recover.

WHEREFORE, the Plaintiff/Counter-Defendant, Command Management Services, Inc., respectfully requests that this Court dismiss the Counterclaim, with prejudice, and for such further relief this Court deems just and appropriate.

        Respectfully submitted,

        COMMAND MANAGEMENT
        SERVICES, INC.

        By: /s/ Jeremy P. Kreger
            One of its Attorneys

Ronald A. Damashek (ARDC # 6183820)
Andrew H. Eres (ARDC # 6237032)
Jeremy P. Kreger (ARDC # 6280403)
Stahl Cowen Crowley Addis LLC
55 West Monroe Street, Suite 1200
Chicago, Illinois 60603
(312) 641-0060