## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| COMMAND MANAGEMENT SERVICES, INC., an Oregon corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No.    07 cv 7017 |
| MEHP O'HARE OPERATING LLC, d/b/a WYNDHAM O'HARE, | ) ) ) | |
| Defendant. | ) ) | |
| | ) | |
| MEHP O'HARE OPERATING LLC, d/b/a WYNDHAM O'HARE, | ) ) ) | |
| Counter-Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| COMMAND MANAGEMENT SERVICES, INC., an Oregon corporation, | ) ) ) | |
| Counter-Defendant. | ) ) | |

## ANSWER AND AFFIRMATIVE DEFENSES TO
## COUNT I OF THE COUNTERCLAIM AND REPLY TO
## THE AFFIRMATIVE DEFENSES OF MEHP O'HARE OPERATING LLC

Command Management Services, Inc. ("Command"), by its attorneys, Ronald A.
Damashek, Andrew H. Eres, and Jeremy P. Kreger of Stahl Cowen Crowley Addis LLC, for its
Answer and Affirmative Defenses to Count I of the Counterclaim of MEHP O'Hare Operating
LLC d/b/a Wyndham O'Hare ("Wyndham"), states as follows:

### PARTIES AND JURISDICTION

1.      Counter-Plaintiff, Wyndham, is a limited liability company organized and in good
standing under the laws of the state of Delaware and is duly authorized to transact business
within the state of Illinois. Wyndham is in the business of providing hotel and conference

facilities and related goods and services from its facility located at 6810 North Mannheim Road, Rosemont, Illinois 60018, commonly known as the Wyndham O'Hare Hotel.

**ANSWER**:    Upon information and belief, Command admits the allegations pled in

Paragraph 1.

2.    Counter-Defendant, Command, is believed to be a corporation organized and in good standing under the laws of the state of Oregon, with its principal place of business located at 411 Southwest Second Avenue, Suite 200, Portland, Oregon 97204. Command is in the business of providing essential services in the travel and logistics support arena.

**ANSWER**:    Command admits the allegations pled in Paragraph 2.

3.    Jurisdiction and venue in this judicial district are proper as alleged in paragraphs 4 through 7 of Command's First Amended Complaint, and this Counterclaim is brought pursuant to 28 U.S.C. § 1367 and Rule 13 of the Federal Rules of Civil Procedure.

**ANSWER**:    Command admits the allegations pled in Paragraph 3.

## FACTS COMMON TO ALL COUNTS

4.    On or about January 21, 2003, Command entered into a written contract (the "Contract") with the Radisson Hotel O'Hare ("Radisson") wherein Radisson, as the subcontractor, agreed to provide hotel and conference facilities and related goods and services pursuant to the specific terms and conditions set forth in the Contract. A true and correct copy of the Contract is attached hereto and made a part hereof as Exhibit "A".

**ANSWER**:    Command admits that a true and correct copy of a written contract executed by representatives of Command and Radisson is attached to the Counterclaim as Exhibit A.   Further answering, the Contract is a written instrument that speaks for itself and Command denies any allegations pled in Paragraph 4 that conflict therewith.

5.    Wyndham provided the goods and services under the Contract in furtherance of Command's obligation to arrange for such goods and services for the U.S. Military. As such, the U.S. Military had a degree of oversight regarding Wyndham's provision of said goods and services.

**ANSWER**:    Command admits that Wyndham, at certain times, provided goods and services under the Contract and in furtherance of Command's obligation to arrange for such goods and services for the U.S. Military. Further answering, Command admits that the U.S.

Military had a degree of oversight regarding Wyndham's provision of said goods and services. Further answering, Command denies any remaining allegations pled in Paragraph 5.

6.      For contract renewal purposes, the parties treated January 31st of each year as the end of the annual term of the Contract.

**ANSWER**:    The allegations pled in Paragraph 6 constitute a legal conclusion, not allegations of fact to which Command is required to respond and, therefore, Command denies the same.

7.      Paragraph 14 of the Contract specifies how and when the Contract may be terminated as follows "**either party may terminate this agreement at the end of each contract year by furnishing sixty (60) days' written notice to the other party**." *(Emphasis added).*

**ANSWER**:    Command admits that the quoted language contained in Paragraph 7 is an accurate, but partial, recitation of the language contained in the Contract.  Further answering, the Contract is a written instrument that speaks for itself and Command denies any allegations pled in Paragraph 4 that conflict therewith.

8.      Thus, pursuant to paragraph 14, the Contract can only be terminated "at the end of each contract year" and only if preceded by "sixty (60) days' written notice." *(Emphasis added).*

**ANSWER**:    Command admits that the quoted language contained in Paragraph 8 is an accurate, but partial, recitation of the language contained in the Contract.  Further answering, the remaining allegations pled in Paragraph 6 constitute a legal conclusion, not allegations of fact to which Command is required to respond and, therefore, Command denies the same.

9.      The Contract contains no other language addressing termination, and absent an agreement between Wyndham and Command, it may not be terminated except in accordance with the clear terms of paragraph 14.

**ANSWER**:    The allegations pled in Paragraph 9 constitute a legal conclusion, not allegations of fact to which Command is required to respond and, therefore, Command denies the same.

10.     In early 2005, the Radisson became affiliated with Wyndham Hotel brand, and shortly thereafter, notification was sent to all of the Radisson's vendors, including Command, announcing that the Radisson would now be known as the "Wyndham O'Hare."

**ANSWER**:    Upon information and belief, Command admits that the Radisson affiliated with Wyndham Hotel brand, and shortly thereafter, notification was sent to all of the Radisson's vendors.  Further responding, Command admits the remaining allegations pled in Paragraph 10.

11.     Thereafter, Wyndham continued to provide goods and services under the Contract, and Command accepted said goods and services.

**ANSWER**:    Command admits that Wyndham, at certain times, provided goods and services under the Contract and Command accepted certain of those goods and services.  Further answering, Command denies any remaining allegations pled in Paragraph 11.

12.     Representatives of the U.S. Military inspected the Wyndham facility on a monthly basis, and never identified substantial issues with the facility; in fact, the Wyndham never failed a U.S. Military inspection.

**ANSWER**:    Command admits that representatives of the U.S. Military inspected the Wyndham facility at certain times, but denies the remaining allegations pled in Paragraph 12.

13.     Representatives of Command, namely regional representative Sharron Blanton ("Blanton"), inspected the Wyndham facility every other month and never identified substantial issues with the facility; in fact, the Wyndham never failed one of Blanton's inspections.

**ANSWER**:    Command admits that its representatives, including Sharron Blanton, inspected the Wyndham facility at certain times, but denies the remaining allegations pled in Paragraph 13.

14.     In the month of May or June 2006, Blanton inspected the Wyndham facility and did not identify any issues with the facility.

**ANSWER**:    Command admits that its representatives, including Sharron Blanton, inspected the Wyndham facility at certain times, but denies the remaining allegations pled in Paragraph 14.

4

15.    In July 2006, shortly after Blanton's inspection, Monica Anderson ("Anderson"), CEO of Command, and Jeff Downes ("Downes"), VP of Command, visited the Wyndham facility for the purpose of conducting an additional inspection of the Wyndham facility.

**ANSWER**:    Command admits that its representatives, including Monica Anderson and

Jeff Downes, inspected the Wyndham facility at certain times, but denies the remaining

allegations pled in Paragraph 15.

16.    Anderson and Downes raised concerns regarding the Wyndham facility, and those issues were immediately addressed by Wyndham personnel.

**ANSWER**:    Command denies the allegations pled in Paragraph 16.

17.    Shortly after the inspection by Anderson and Downes, the Wyndham facility was inspected by a U.S. Army Colonel, and the Wyndham passed his inspection.

**ANSWER**:    Command admits that a certain member of the U.S. armed forces

inspected the Wyndham facility, but denies the remaining allegations pled in Paragraph 17.

18.    Shortly after the inspection by Anderson and Downes, the Wyndham facility was inspected by Blanton, and the Wyndham passed her inspection. In fact, Blanton noted her pleasure with the condition of the Wyndham facility.

**ANSWER**:    Command admits that Blanton inspected the Wyndham facility at certain

times, but denies the remaining allegations pled in Paragraph 18.

19.    Eventually, Wyndham made a business decision to terminate the Contract pursuant to paragraph 14. In doing so, Wyndham complied with the terms of paragraph 14 of the Contract and effected termination by sending sixty (60) days' written notice on November 8, 2006. Wyndham's letter provided, in part, as follows:

> . . . please accept this letter as Wyndham O'Hare's 60 day written notice of termination of the MEPS contract. Under Section 14 of the Subcontract, either party can terminate the relationship and we feel that it is in our best interest to do so at this time.
>
> We cannot continue to hold room nights under the contract beyond [the end of the Contract year] January 31st, 2007. . .

A true and correct copy of Wyndham's November 8, 2006 letter is attached hereto and made a

part hereof as Exhibit "B".

**ANSWER**:    Command admits that it received the letter dated November 8, 2006, a true

and correct copy of which is attached to the Counterclaim as Exhibit B.  Further answering,

Exhibit B is a document that speaks for itself and Command denies any allegations contained in

Paragraph 19 that conflict therewith.  Further answering, the remaining allegations constituted a

legal conclusion, not allegations of fact to which Command his required to respond and,

therefore, Command denies the same.

20.    Following transmission of Wyndham's November 8, 2006 termination notice,
Downes contacted Wyndham in an attempt to convince Wyndham to reconsider its decision to
terminate the Contract. Downes offered Command's commitment to use the Wyndham facility in
2007.

**ANSWER**:    Command admits that Downes spoke with representatives of Wyndham

subsequent to November 8, 2006, but denies the remaining allegations pled in Paragraph 20.

21.    The parties engaged in subsequent discussions regarding the terms of a new
contract, but they eventually reached an impasse.

**ANSWER**:    Command admits that the parties spoke subsequent to November 8, 2006,

but denies the remaining allegations.

22.    Command then notified Wyndham of its acceptance of the Contract termination
by a letter dated November 17, 2006. A true and correct copy of Command's November 17,
2006 letter is attached hereto and made a part hereof as Exhibit "C".

**ANSWER**:    Command admits that it sent a certain letter dated November 17, 2006, a

true and accurate copy of which is attached to the Counterclaim as Exhibit C.  Further answering,

Exhibit C is a document that speaks for itself and Command denies any allegations contained in

Paragraph 22 that conflict therewith.

23.    Wyndham immediately began planning for the loss of Command's business after
January 31, 2007. Wyndham planned to, and did in fact, proceed in good faith to fulfill its
obligations to Command under the Contract until it was rightfully terminated on January 31,
2007.

**ANSWER**:    Command denies the allegations pled in Paragraph 23.

24.    Based upon the parties' past practices and regular course of dealing, Wyndham planned for the typical requirements of Command for the months of December 2006 and January 2007.

**ANSWER**:    Command denies the allegations pled in Paragraph 24.

25.    Without warning, shortly before the Christmas holiday, Downes sent written notification to Wyndham dated December 21, 2006 indicating that Command would "discontinue services under the Subcontract Agreement and permanently relocate to an alternate hotel facility effective 01 January 2007." *(Emphasis added)*. A true and correct copy of Command's December 21, 2006 letter is attached hereto and made a part hereof as Exhibit "D".

**ANSWER**:    Command admits that it sent a certain letter dated December 21, 2006, a true and correct copy of which is attached to the Counterclaim as Exhibit D.  Further answering, Command admits that the language quoted in Paragraph 25 is an accurate, but partial, recitation of the language contained in Exhibit D.  Further answering, Exhibit D is a document which speaks for itself and Command denies any allegations pled in Paragraph 25 that conflict therewith.  Further answering, Command denies the remaining allegations pled in Paragraph 25.

26.    Downes' December 21, 2006 letter, sent in retaliation for Wyndham's refusal to renegotiate a contract with Command, attempted to prematurely terminate the contract on less than ten (10) days' notice.

**ANSWER**:    Command denies the allegations pled in Paragraph 26.

27.    Downes' December 21, 2006 letter violated the express termination language of the Contract which provides for termination "at the end of each contract year" if preceded by "sixty (60) days' written notice."

**ANSWER**:    Command denies the allegations pled in Paragraph 27.

28.    Despite the clear language of paragraph 14, Command purported to terminate the Contract unilaterally and without the consent of Wyndham: (1) before the end of the contract year and (2) without the requisite sixty (60) days' written notice.

**ANSWER**:    Command denies the allegations pled in Paragraph 28.

29.    Command acted in bad faith when it attempted to unilaterally terminate the

Contract prematurely and without requisite notice.

**ANSWER**:    Command denies the allegations pled in Paragraph 29.

30.    As a result of Command's unilateral and premature termination of the Contract, Wyndham suffered significant financial harm which could not be mitigated.

**ANSWER**:    Command denies the allegations pled in Paragraph 30.

## COUNT I
## BREACH OF CONTRACT

1-30.   Defendant/Counter-Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 30 of Parties and Jurisdiction and paragraphs 4 through 30 of Facts Common to All Counts as and for paragraphs 1 through 30 of this Count I of its Counterclaim.

**ANSWER**:    Command repeats its answers to Paragraphs 1 through 30, above, as its

answers to Paragraphs 1 through 3 of this, Count I, as though fully stated herein.

31.    The Contract attached hereto as Exhibit "A" constitutes a valid and binding contract between Wyndham and Command.

**ANSWER**:    Command admits the allegations pled in Paragraph 31.

32.    Wyndham performed, in all material respects, its responsibilities wider the Contract from inception through the date of its unilateral termination by Command. Wyndham remained ready, willing and able to perform, in all material respects, in its responsibilities under the Contract through the end of the Contract year and rightful termination date of January 31, 2007.

**ANSWER**:    Command denies the allegations pled in Paragraph 32.

33.    Command failed to perform its responsibilities under the Contract, namely its responsibility to terminate the Contract pursuant to paragraph 14.

**ANSWER**:    Command denies the allegations pled in Paragraph 33.

34.    Command's actions constitute a breach of the Contract and were in direct contradiction of its contractual obligation to deal fairly and act in good faith.

**ANSWER**:    Command denies the allegations pled in Paragraph 34.

35.    As a result of Command's actions, Wyndham has suffered significant financial harm which could not be mitigated.

**ANSWER:**   Command denies the allegations pled in Paragraph 35.


## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The claims asserted in Count I of Wyndham's Counterclaim are barred in whole or part because Wyndham failed to mitigate its damages.

### SECOND AFFIRMATIVE DEFENSE

The claims asserted in Count I of Wyndham's Counterclaim are barred in whole or part because Wyndham has received the sums for which it prays.

### THIRD AFFIRMATIVE DEFENSE

The claims asserted in Count I of Wyndham's Counterclaim are barred in whole or part because Wyndham is not entitled to any sum for accommodations not actually used by Command pursuant to the Addendum to Contract.

### FOURTH AFFIRMATIVE DEFENSE

The claims asserted in Count I of Wyndham's Counterclaim must be offset by the claims asserted in Command's Complaint.

### FIFTH AFFIRMATIVE DEFENSE

The claims asserted in Count I of Wyndham's Counterclaim are barred in whole or part because Wyndham terminated the Contract.

### SIXTH AFFIRMATIVE DEFENSE

The claims asserted in Count I of Wyndham's Counterclaim are barred because Wyndham failed to perform its obligations pursuant to the Contract.

WHEREFORE, the plaintiff, Command Management Services, Inc., respectfully requests

that this Honorable Court dismiss the Counterclaim of the defendant, MEHP O'Hare Operating LLC d/b/a Wyndham O'Hare, and for any further relief the Court deems just and appropriate.

## REPLY TO AFFIRMATIVE DEFENSES OF MEHP O'HARE OPERATING LLC

Command Management Services, Inc. ("Command"), by its attorneys, Ronald A. Damashek, Andrew H. Eres, and Jeremy P. Kreger of Stahl Cowen Crowley Addis LLC, for its Reply to the Affirmative Defenses of MEHP O'Hare Operating LLC d/b/a Wyndham O'Hare ("Wyndham"), states as follows:

### AFFIRMATIVE DEFENSES TO COUNT I (BREACH OF CONTRACT) OF COMMAND'S FIRST AMENDED COMPLAINT

### FIRST AFFIRMATIVE DEFENSE (FAILURE TO STATE A CAUSE OF ACTION)

The claims asserted in Count I of Command's First Amended Complaint are barred in whole or part because Command has failed to allege facts sufficient to state a cause of action for breach of contract.

**REPLY:** Command denies the allegations pled in the First Affirmative Defense and affirmatively states that the claimed Affirmative Defense is not a proper affirmative defense.

### SECOND AFFIRMATIVE DEFENSE (ESTOPPEL)

The claims asserted in Count I of Command's First Amended Complaint are barred in whole or part under the doctrine of equitable estoppel / estoppel in pais.

**REPLY:** Command denies the allegations pled in the Second Affirmative Defense.

### THIRD AFFIRMATIVE DEFENSE (UNCLEAN HANDS)

The claims asserted in Count I of Command's First Amended Complaint are barred in whole or part under the doctrine of unclean hands.

**REPLY:** Command denies the allegations pled in the Third Affirmative Defense and affirmatively states that the claimed Affirmative Defense is not a proper affirmative defense.

10

### FOURTH AFFIRMATIVE DEFENSE (OFFSET)

The claims asserted in Count I of Command's First Amended Complaint are offset in whole or part pursuant to Counts I and II of Wyndham's Counterclaim.

**REPLY:**     Command denies the allegations pled in the Fourth Affirmative Defense.

## AFFIRMATIVE DEFENSES TO COUNT II (COONVERSION) OF COMMAND'S FIRST AMENDED COMPLAINT

### FIRST AFFIRMATIVE DEFENSE (ESTOPPEL)

The claims asserted in Count II of Command's First Amended Complaint are barred in whole or part under the doctrine of equitable estoppel / estoppel in pais.

**REPLY:**     Command denies the allegations pled in the First Affirmative Defense.

### SECOND AFFIRMATIVE DEFENSE (UNCLEAN HANDS)

The claims asserted in Count II of Command's First Amended Complaint are barred in whole or part under the doctrine of unclean hands.

**REPLY:**     Command denies the allegations pled in the Second Affirmative Defense

and affirmatively states that the claimed Affirmative Defense is not a proper affirmative defense.

### THIRD AFFIRMATIVE DEFENSE (OFFSET)

The claims asserted in Count II of Command's First Amended Complaint are offset in whole or part pursuant to Counts I and II of Wyndham's Counterclaim.

**REPLY:**     Command denies the allegations pled in the Third Affirmative Defense.

WHEREFORE, the plaintiff, Command Management Services, Inc., respectfully requests that this Honorable Court enter judgment in its favor and against the defendant, MEHP O'Hare Operating LLC d/b/a Wyndham O'Hare, and for any further relief the Court deems just and appropriate.

Respectfully submitted,

COMMAND MANAGEMENT
SERVICES, INC.


By:/s/  Jeremy P. Kreger
              One of its Attorneys

Ronald A. Damashek (ARDC # 6183820)
Andrew H. Eres (ARDC # 6237032)
Jeremy P. Kreger (ARDC # 6280403)
Stahl Cowen Crowley Addis LLC
55 West Monroe Street, Suite 1200
Chicago, Illinois 60603
(312) 641-0060


## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I served the **PLAINTIFF/COUNTER-DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO COUNT I OF THE COUNTERCLAIM AND REPLY TO THE AFFIRMATIVE DEFENSES OF MEHP O'HARE OPERATING LLC,** upon the registered CM/ECF users as reflected on the Notice of Electronic Filing on June 23, 2008.


By:   /s/Jeremy P. Kreger
              One of its attorneys


Ronald A. Damashek (ARDC # 6183820)
Andrew H. Eres (ARDC #6237032)
Jeremy P. Kreger (ARDC # 6280403)
Stahl Cowen Crowley Addis LLC
55 W. Monroe Street, Suite 1200
Chicago, Illinois 60603
Telephone:  (312) 641-0060
Facsimile:   (312) 641-6959